1  SHAUNA ROSSINGTON
2754 Dolphin Bend
2  Chico, CA 95973
(530) 588-5511
3  DrShaunalr@gmail.com

4  SHAUNA ROSSINGTON, IN PRO PER

5  ALEX ROSSINGTON
464 E 6th Ave.,
6  Chico, CA 95926
(530) 375-0441
7

8  ALEX ROSSINGTON, IN PRO PER

9  AIDEN ROSSINGTON
2754 Dolphin Bend
10  Chico, CA 95973
(530) 616-0623
11  Aiden.rossington@gmail.com

12  AIDEN ROSSINGTON, IN PRO PER

13  JOSEPH CODDINGTON
604 E Elm St.
14  Urbana, IL 61802
(828)712-6582
15  josephmcoddington@gmail.com

16  JOSPEH CODDINGTON, IN PRO PER

17  VALERIE PETERS
464 E 6th St.
18  Chico, CA 95926
(530) 249-5993
19

20  VALERIE PETERS, IN PRO PER

21

22                    **UNITED STATES DISTRICT COURT**

23              **FOR THE EASTERN DISTRICT OF CALFIORNIA**

24

25

26

27

28

**FILED**

MAR 29 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

| | |
|---|---|
| 1  SHAUNA ROSSINGTON<br>   ALEX ROSSINGTON<br>2  AIDEN ROSSINGTON<br>   JOSEPH CODDINGTON<br>3  VALERIE PETERS<br><br>4  IN PRO PER<br>                    Plaintiff(s),<br>5<br>6  vs.<br>7  Mountain Circle Family Services, Inc., dba Sierra<br>   Nevada Connections, a California Corporation;<br>8  JUSTIN MILLER, individually;<br>9  PAMELA CRESPIN, individually;<br>10  KATHERINE VAN DOLSEN, individually;<br>11  ANGIE CARPENTER, individually;<br>12  SHANNON DOUNG, individually;<br>13  ROBIN MILLER, individually;<br>14  ROBERT BERRY, individually;<br>15  BILL POWERS, individually;<br>16  KACEY REYNOLDS, individually;<br>17  And DOES 1 through 20, inclusive,<br>18<br>19                    Defendant(s). | )  Case No. 2:23-CV-00423-KJM-DMC<br>)<br>)  **MOTION AND MOTION FOR LEAVE TO**<br>)  **FILE FIRST AMENDED COMPLAINT;**<br>)  **MEMORANDUM OF POINTS AND**<br>)  **AUTHORITIES IN SUPPORT OF**<br>)  **MOTION**<br>)<br>)<br>)<br>)  Hearing: April 19, 2023<br>)  Time:10:00 a.m.<br>)  Room: 304<br>)  Judge: Dennis M. Cota<br>)<br>)  Complaint Filed: February 6, 2023 |

21    TO DEFENDANTS AND THEIR COUNSELS OF RECORD:

22        NOTICE IS HEREBY GIVEN that on April 19, 2023 at 10:00 AM in the U.S. District Court,

23  or as soon thereafter as the matter can be heard in Court Room 304, located at 2986 Bechelli Center,

24  Redding, CA 96002.  Plaintiffs will move the Court for an ORDER granting their leave to file

25  the attached First Amended Complaint, Plaintiffs will move the Court for leave to file a First

26  Amended Complaint, pursuant to California Code of Civil Procedure §§ 473 and 576.

27        As discussed below, the motion will be made on the grounds that good cause exists

28  forgranting Plaintiffs' leave to amend. Plaintiffs sent a formal letter requesting to Meet and Confer

[EXHIBIT A] requesting permission to amend the Original Complaint. However, Defendants' attorney on record declined a meeting to Meet and Confer. Responses are attached as EXHIBIT B. Of special note, only letters of response were sent to Plaintiffs ALEX ROSSINGTON, AIDEN ROSSINGTON, JOSEPH CODDINGTON and VALERIE PETERS from Maire and Deedon's Law firm. SHAUNA ROSSINGTON was left out of this response. This response from Maire and Deedon is a strategic move to divide and conquer the Plaintiffs. This only confirms, which is in furtherance of justice and filing of this amended complaint, is necessitated primarily based on the following:

(1) The Plaintiffs filed their Original Complaint on February 6, 2023 at the Superior Court of North Butte County.

(2) Defendants filed on March 7, 2023 a Notice of Removal of Action Under 28 U.S.C. § 1441(a) [Federal Question] Case No. 2:23-CV-00423-KJM-DMC.

(3) On March 21, 2023, Plaintiffs filed A Notice of Motion and Motion to Remand; Memorandum of Points Thereof. Removing the Federal Questions as Causes of Actions will not immaterialize the Complaint, but will streamline this Complaint for the Courts and for all Parties. However, Plaintiffs, upon further discovery, would like to replace the removal of the Federal Questions with the Cause of Action in violation of Cal Code Regs. Tit 22 § 88063 (10) and Violation of the Corporations By-Laws Article 5, Subsection 8 – President. Requiring that an Executive Director to attend all Board Meetings. Indeed, Plaintiffs remain focused on obtaining wrongful termination under the Brown Act, FEHA and now these two violations in order to obtain punitive and economic damages in this matter. Additionally, the Plaintiffs would also like to add another Cause of Action – Intentional Infliction of Emotional Distress for a total of ten (10) Causes of Actions.

(4) Based on additional facts and information provided by Defendant Robert Berry's own filing, declaration, and exhibits, Plaintiffs seek leave to amend the original Complaint based on this Discovery;

(5) Plaintiffs inadvertently did not attach two Exhibits discussed in the original Complaint and would like to add these Exhibits as well as other Exhibits that are based on further Discovery since the filing of the Original Complaint.

(6) Plaintiffs sent a formal Request to Meet and Confer regarding the above amendments on March 19, 2023 and the Request was rejected by the Defendants and their attorneys on record.

(7) All deletions and additions to Original Complaint are listed as follows:

**Allegation Additions:**

**Shauna Rossington (ROSSINGTON):** Page 5, Paragraph 18 through paragraph 23 is now page 7, paragraph 24, line 12 through page 14, paragraph 43, line 4 – Information was added and amended.

**Alex Rossington (AROSSINGTON):** Page 8 paragraph 24, line 9 through 10, paragraph 29, line 13 is now page 14, paragraph 44, line 6 – page 16, paragraph 49, line 19 - Information was added and amended.

**Aiden Rossington (AIROSSINGTON):** Page 10, paragraph 30, line 15 through page 11, paragraph 31, line 11 is now page 16, paragraph 50, line 21 through page 17, paragraph 52, line 19 - Information was added and amended.

**Joseph Coddington (CODDINGTON):** Page 11, paragraph 32, line 13 through page 12, paragraph 36, line 24 is now page 17, paragraph 53, line 21 through page 19, paragraph 57, line 5 - Information was added and amended.

**Valerie Peter (PETERS):** Page 12, paragraph 37, line 26 through page 13, paragraph 38, line 17 is now page 19, paragraph 58, line 8 through page 20, paragraph 59, line 2 - Information was added and amended.

**Additional Causes of Action Added:**

**Eighth Cause of Action – WRONGFUL TERMINATION IN VIOLATION OF CAL. CODE REGS TIT 22 § 88063 (10) – ACCOUNTABILITY:** Page 26, paragraph 90, line 2 through page 26, paragraph 93, line 12.

**Ninth Cause of Action – VIOLATION OF THE CORPORATIONS BY-LAWS 5.8 – PRESIDENT:** Page 26, paragraph 94, line 19 through page 27, paragraph 99, line 8

**Tenth Cause of Action – ITENTIONAL INFLICTION OF EMOTIONAL DISTRESS** Page 27, paragraph 98, line 11 through page 28, paragraph 103, line 9.

**Amended Praise for Relief and Judgment:** Page 28, line 12 through page 29, line 2.

**Allegations Removed:**

**Removing Defendant Robin Miller:** Page 2, line 12 (Name Removed) and Page 4, paragraph 12, line 15 through line 19 (Removing as Defendant and allegations).

**First Cause of Action**

**FAILURE TO ACCOMMODATE THE FREEDOM OF INFORMATION ACT (FOIA):** Page 13, paragraph 39, line 20 through page 14, paragraph 42, line 10. Has been deleted and replaced by the First Cause of Action:

**FAILURE TO COMPLY WITH EVIDENCE CODE § 945:** Page 20, paragraph 60, line 4 through Page 20, paragraph 63, line 23.

**Second Cause of Action: FAILURE TO COMPLY WITH EVIDENCE CODE § 945 is now the First Cause of Action:** Page 14, paragraph 43, line 13 through Page 14, paragraph 45, line 26 has been amended to become the First Cause of Action, Page 20, paragraph 60, line 4 through Page 20, paragraph 63, line 23.

**Third Cause of Action: FAILURE TO ACCOMMODATE LABOR CODE § 1198.5 is now the Second Cause of Action:** Page 15, paragraph 46, line 3 through page 15, paragraph 48, line 11 has been amended to become the Second Cause of Action, page 20, paragraph 64, line 25 through page 21, paragraph 67, line 9.

**Fourth Cause of Action: FAILURE TO COMPLY WITH BREACH OF CONTRACT CALIFORNIA CIVIL CODE § 3300 is now the Third Cause of Action:** Page 15, paragraph 49, line 15 through page 16, paragraph 51, line 9 has been amended to become the Third Cause of Action, page 21, paragraph 68, line 11 through page 22, paragraph 71, line 12.

**Fifth Cause of Action: RETALIATION IN VIOLATION OF FEHA, GOVERNMENT CODE 12900 ET SEQ is now the Fourth Cause of Action:** Page 16, paragraph 52, line 11 through page 17, paragraph 55, line 6 has been amended to become the Fourth Cause of Action, page 22, paragraph 72, line 14 through page 23, paragraph 76, line 13.

**Sixth Cause of Action: FAILURE TO ENGAGE IN GOOD FAITH AND FAIR DEALING UPON DISMISSAL is now the Fifth Cause of Action:** Page 17, paragraph 56, line 8 through page 17, paragraph 59, line 28 has been amended to become the Fifth Cause of Action, page 23, paragraph 77, line 15 through page 24, paragraph 81, line 14.

**Seventh Cause of Action: FAILURE TO COMPLY WITH THE BROWN ACT is now the Sixth Cause of Action:** Page 18, paragraph 60, line 3 through page 18, paragraph 62, line 15 has been amended to become the Sixth Cause of Action page 24, paragraph 82, line 16 through page 25, paragraph 85, line 6.

**Eighth Cause of Action: FAILURE TO COMPLY AND IN VIOLATION OF 5. U.S.C. § 552a(b),** Page 18, paragraph 63, line 17 through page 19, paragraph 66, line. Has been deleted and replaced by the Seventh Cause of Action: **WRONGFUL TERMINATION IN VIOLATION OF THE BROWN ACT:** Page 25, paragraph 86, line 8 through page 25, paragraph 89, line 26.

**Ninth Cause of Action: WRONGFUL TERMINATION IN VIOLATION OF THE BROWN ACT is now the Seventh Cause of Action:** Page 19, paragraph 67, line 5 through page

19, paragraph 69, line 18 has been amended to be the Seventh Cause of Action, Page 25, paragraph 86, line 8 through page 25, paragraph 89, line 26.

    For all these reasons, and those stated in the attached memorandum in support, Plaintiffs respectfully request that the Court grant Plaintiffs' leave to file the attached First Amended Complaint.

Respectfully Submitted,

Dated: March 27, 2023

SHAUNA ROSSINGTON
In Pro Per

ALEX ROSSINGTON
In Pro Per

AIDEN ROSSINGTON
In Pro Per

By:

JOSEPH CODDINGTON
In Pro Per

VALERIE PETERS
In Pro Per

DocuSign Envelope ID: F29A5019-A7A4-4C9E-830C-B0BF981973F1

1   DATED: March 27, 2023                              Respectfully Submitted,

2

3                                                      _____
                                                       SHAUNA ROSSINGTON
                                                       In Pro Per
4

5                                                      _____
                                                       ALEX ROSSINGTON
                                                       In Pro Per
6

7                                                      _____
                                                       AIDEN ROSSINGTON
                                                       In Pro Per
8
                                        By:
                                             3/28/2023   *Joseph Coddington*
9                                                      _____
                                                       JOSEPH CODDINGTON
                                                       In Pro Per
10                                                     _____
                                                       VALERIE PETERS
11                                                     In Pro Per

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE AND MPA IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT
CASE NO: 2:23-CV-00423-KJM-DMC

1                   **MEMORANDUM OF POINTS AND AUTHORITIES**

2                              **INTRODUCTION**

3        This action arises out of Defendants' past and ongoing unlawful, unfair and

4 misrepresentation of the facts surrounding the Wrongful Termination of Plaintiffs due to a Brown

5 Act violation, FEHA violation and Cal Code Regs. Tit 22 § 88063 (10) and Violation of the

6 Corporations By-Laws Article 5, Subsection 8 – President. Requiring that an Executive Director to

7 attend all Board Meetings. The behavior and treatment of Plaintiffs following their termination has

8 violated the other Causes of Actions.

9        Having asked for Defendants' consent to amend [Exhibit A] their Complaint and having

10 been refused, Plaintiffs now move to file their First Amended Complaint to add additional and

11 address discovery, remove the Federal Questions, attach the right Exhibits and to add other Exhibits

12 found upon Discovery after Original Filing.

13        Upon review of the formal and informal discovery, the challenges of adding the federal

14 questions, and adding the left off exhibits, Plaintiffs' discussed the Complaint amongst themselves

15 and have the attached Declarations in support of the amended complaint [EXHIBIT C]

16                           **LEGAL ARGUMENT**

17    **1. MOTION FOR LEAVE TO AMEND ARE LIBERALLY GANTED BY COURTS**

18        A court may, in the furtherance of justice, allow a party to amend any pleading on any terms

19 as may be proper. Code Civ. Proc. § 473(a) and 576. "This statutory provision giving the courts the

20 power to permit amendments in furtherance of justice has received a very liberal interpretation by

21 the courts of this state." *Klopstock v. superior Ct.* (1941) 17 Cal.2d 13, 19; *see also nestle v. City of*

22 *Santa Monica*(1972) 6 Cal. 3d 920, 939. It is established judicial policy to resolve all disputes

23 between the parties on their merits, and to liberally allow amendments to the pleadings to put all

24 disputes at issue at the time of trial. *See, Vogal v. Thrifty Drugs Co.,* (1954) 43 Cal.2d 184, 188 ("It

25 is a basic rule of pleading in this state that amendments shall be liberally allowed so that all issues

26 material to the just and complete disposition of the a cause may be expeditiously litigated"); *See*

27 *also, Wilson v. Turner Resilient Floors I(1949) 89 Cal.App.2d 589;* "that the trail courts are to

28

1 liberally permit such amendments, at any stage of the proceeding, has ben established policy of this

2 state since 1901." *Hirsa v. superior Ct.* (1981) 188 Cal.App.3d 486-89 (emphasis in original).

3          The judicial policy favoring amendment in the interests of justice is so strong that

4 denial is rarely justified and is an abuse of discretion to deny an amendment unless the adverse

5 party can show meaningful prejudice, such as the running of the state of limitations, trial delay,

6 the loss of critical evidence, or added preparation costs. *Atkinson v. Elk Corp.* (2003) 109

7 Cal.App.4th 739, 761; *Solit v. Taokai Bank, Ltd.* (1999) 68 Cal.App.4th 1435, 1448. Absent a

8 showing of such prejudice, delay alone is not grounds for denial of a motion to amend. See

9 *Kittredge Sports Co. v. Superior Ct.* (1989) 213 Cal.App.3d 1045, 1048; *Higgins v. Del Faro*

10 (1981) 123 Cal.App.3d 558, 563-65.

11                    **II. LEAVE TO AMEND IN THE PRESENT CASE SHOULD BE GRANTED**

12          In the present case, Plaintiffs seek to amend the Original Complaint as follows and

13 as proposed to the opposing council.

14    1.    To Remove the First Cause of Action and the Eighth Cause of Action.

15    2.    To Add the Cause of Action the Violation of Cal Code Regs. Tit 22 § 88063 (10) and

16 Violation of the Corporations By-Laws Article 5, Subsection 8 – President, which require that an

17 Executive Director must attend all Board Meetings and attach the Discovery of such evidence

18    3.    To add the Exhibit of the Meta Data of who created the Board Agenda and the

19 Agenda for the August 4, 2021. Additionally, the Board Contract for SHAUNA ROSSINGTON,

20 which was violated. This evidence was inadvertently left off as an Exhibit.

21    4.    To address more in depth and to the true nature of the Violation of the First Cause of Action

22 and attach the discovery of such evidence.

23    5.    To attach more Exhibits upon Discovery since the filing of the Original Complaint which

24 support the Causes of Actions and Claims.

25                                   **CONCLUSION**
             It is in the interests of justice to permit Plaintiffs to amend the complaint to allege the facts
26
    and legal theories derived from the evidence. Plaintiffs, therefore, respectfully request that the Court
27
    grant their Motion for Leave to File a First Amended Complaint.
28

1 | DATED: March 27, 2023

Respectfully Submitted,

SHAUNA ROSSINGTON
In Pro Per

ALEX ROSSINGTON
In Pro Per

AIDEN ROSSINGTON
In Pro Per

By:

JOSEPH CODDINGTON
In Pro Per

VALERIE PETERS
In Pro Per

NOTICE AND MPA IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT
CASE NO: 2:23-CV-00423-KJM-DMC

DocuSign Envelope ID: F29A5019-A7A4-4C9E-830C-B0BF981973F1

19, paragraph 69, line 18 has been amended to be the Seventh Cause of Action, Page 25, paragraph 86, line 8 through page 25, paragraph 89, line 26.

For all these reasons, and those stated in the attached memorandum in support, Plaintiffs respectfully request that the Court grant Plaintiffs' leave to file the attached First Amended Complaint.

Respectfully Submitted,

Dated: March 27, 2023

SHAUNA ROSSINGTON
In Pro Per

ALEX ROSSINGTON
In Pro Per

AIDEN ROSSINGTON
In Pro Per

By: _____
3/28/2023  *Joseph Coddington*
JOSEPH CODDINGTON
In Pro Per

VALERIE PETERS
In Pro Per

SHAUNA ROSSINGTON
2754 Dolphin Bend
Chico, CA 95973
(530) 588-5511
DrShaunalr@gmail.com

SHAUNA ROSSINGTON, IN PRO PER

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUNA ROSSINGTON <br> ALEX ROSSINGTON <br> AIDEN ROSSINGTON <br> JOSEPH CODDINGTON <br> VALERIE PETERS <br><br> IN PRO PER <br>                 Plaintiff(s), <br><br>     vs. <br><br> Mountain Circle Family Services, Inc., dba Sierra <br> Nevada Connections, a California Corporation; <br><br> JUSTIN MILLER, individually; <br><br> PAMELA CRESPIN, individually; <br><br> KATHERINE VAN DOLSEN, individually; <br><br> ANGIE CARPENTER, individually; <br><br> SHANNON DOUNG, individually; <br><br> ROBIN MILLER, individually; <br><br> ROBERT BERRY, individually; <br><br> BILL POWERS, individually; <br><br> KACEY REYNOLDS, individually; <br><br> And DOES 1 through 7, inclusive, <br>                 Defendant(s). | Case No. 23:23-CV-00423-KJM-DMC <br><br> **DECLARATION OF SHAUNA ROSSINGTON IN SUPPORT OF PLAINTIFFS' MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; MEMORANDUM OF POIINTS AND AUTHORITIES IN SUPPORT OF MOTION** <br><br><br> Hearing: April 19, 2023 <br> Time:10:00 a.m. <br> Room: 304 <br> Judge: Dennis M. Cota |

1

**DECLARATION OF SHAUNA ROSSINGTON**

2    I, Shauna Rossington, declare:

3        1. I am a Plaintiff filing In Pro Per. I have personal knowledge of each matter and the facts

4    stated herein as a result of my employment with Mountain Circle Family Services, Inc., dba Sierra

5    Nevada Connections, and if called upon and sworn as a witness, I could and would testify

6    competently thereto.

7        **I.  Why the Request for Amendment was not made Earlier; and When the Facts Giving**

8                    **Rise to the Amended Allegations were Discovered**

9        2. In the weeks following the filing of the Original Complaint was filed in the Superior

10    Court of Butte County – North Butte County Court on February 6, 2023, additional information and

11    evidence has come to light.

12        3. Defendants filed a Motion to Move based on a federal question and Plaintiffs filed their

13    Motion to Remand with the Eastern District Court on March 28, 2023. During this process, it was

14    realized that by adding  the federal questions to the Cause of Action, this was complicating the

15    Complaint, as the Complaint is based on a Wrongful Termination Suit, which are not based on a

16    Public Policy. The federal questions were added to support the unfair and unprofessional treatment

17    of the Defendants after their wrongful termination. Therefore, amending the complaint to remove

18    the Federal Questions streamlines the complaint for the Courts and all Parties. This Wrongful

19    Termination suit is based on the violation of the Brown Act, FEHA, the Corporations By-Laws and

20    Cal. Code. Regs. Tit § 88063 (10) – ACOUNTABILITY.

21        2. The Cause of Actions for the violation of the Corporation By-Laws 5.8 and Cal. Code.

22    Regs. Tit § 88063 (10) – ACOUNTABILITY, were realized as important Causes to address after

23    the signing and filing of the Original Complaint as well as to add them with the request to remove

24    the federal questions.

25        3. Since the filing of the Original Complaint and the Motion to Move to District Court based

26    on the federal question, Defendant Robert Berry, claimed he was not served correctly and did not

27    join the Motion, but instead filed his Motion to Dismiss and Motion for Anti-SLAPP on March 14,

28    2023. Upon receiving his Motions, new additionally evidence was brought to light. The Plaintiffs,

1   including myself, then sent a Request to Meet and Confer, with all the Defendants Attorneys on

2   Record, stating the Amendments that the Plaintiffs would like to change and delete.  The

3   Defendants did not unanimously agree to these changes.  However, the Attorney on Record, Maire

4   and Deedon, requested that Defendant Robin Miller be removed.  I signed the Motion to Dismiss

5   and remove and is attached to this Motion as evidence.

6        4.      Evidence discovered through Robert Berry's Declaration and Exhibits were:

7        a. Untruthful statements regarding  the actual facts of the Case which must be addressed

8        b. In Robert Berry's Exhibits, he attaches two emails of great importance.

9            1. Email from the Retained Counsel, Bret Cook, Esq, to the Board of Directors

10           outlining and recommending the course of action that should be taken by the Board,

11           of which Robert Berry had zero authority to supersede or intervene Bret Cook's

12           advice and recommendations. Additionally, assuming the Bret Cook, Esq was not a

13           competent attorney and had not been advising the Board correctly since the matter

14           arose, and therefore, taking matters into his own hands to steer the Board correctly.

15           This is Exhibit I.

16           2. Exhibit J of Robert Berry's Exhibits he attaches the email Shauna Rossington,

17           Plaintiff was writing to her retained counsel Eugene Chittock, Esq and Legal Law

18           Clerk, Seth Shepard. Shauna Rossington, cc's other potential Plaintiffs in this email.

19           It was always suspeicious that Robert Berry had possession of this ATTORNEY-

20           CLIENTS privileged communication and now the Plaintiffs had proof.  This is a

21           crucial piece of documentary evidence to explain the abuse of power Robert Berry

22           has asserted in this Wrongful termination suit.

23       c. Other pieces of evidence had come to the attention of the Plaintiffs, which are crucial to

24   the support of this complaint and the violations of the Defendants.  The SAR memo from Shannon

25   Doung, the printed August 6, 2021 email with Angie Carpenter's handwriting as well as the

26   handwriting of Robert Berry on the email.  Also, discovered was copies from Community Care

27   Licensing clearing Shauna Rossington of three of the accusations and yet  Community Care

28   Licensing still moved forward with those same allegations.  Despite Shauna Rossington knowing

1    she had never committed those allegations and accusations, here was proof.  Shauna Rossington did

2    not come into possession of these documents until after the Original filing of the Complaint on

3    February 6, 2021. Additionally, Bret Cook, esq, and Shauna Rossington submitted three separate

4    appeals, moving up the ranks of Community Care Licensing and demonstrating, without a shadow

5    of doubt, these allegations were in fact false and were all made by prior employees who had been

6    fired by Shauna Rossington and who had an "ax to grind."  Community Care Licensing still move

7    forward on filing the allegations.  Bret Cook, Esq, in his July 28, 2021 email to the Board clearly

8    outlines the problems with Community Care licensing and what actions should be taken by the

9    Board, because Bret Cook, Esq, had full knowledge of the events and the facts.  None of which

10   Robert Berry had.

11                    **II. Why the Amendment is Necessary and Proper**

12   4.      After the filing of the Motion to Move and Robert Berry's Motion to Dismiss and Anti-

13   SLAPP Motion, I determined that the Complaint was not as robust as it could have been, and on

14   March 14, 2023 put in an official Meet and Confer Request in order to address the weaknesses of

15   the Original Complaint.

16                         **II. The Effect of the Amendment**

17   5.      Attached hereto as Exhibit C is a Copy of the First Amended Complaint.

18   6.      The effect of the proposed amendment is shown, in detail, on Exhibit D. Generally speaking,

19   the proposed amendments fall into six (6) categories: (1) non-substantive clerical corrections; (2)

20   the dismissal of Defendant Robin Miller, (3) the removal of the Federal Questions (4) the addition

21   of new legal claims and causes of actions to clarify a previously existing case of action – Wrongful

22   Termination (5) new evidence discovered and attached as Exhibits (6) additions to Plaintiffs' prayer

23   based on the newly proposed causes of action.

24   7.      The amendment is necessary and proper because it speaks in good faith to correct errors,

25   address a defendant change, amend and add causes of actions that are consistent with the facts

26   pleaded, but that were not originally pleaded, and failure to plead them now would deprive

27   Plaintiffs of their right to plead meritorious causes of action in this Action

28

1   I declare under penalty of perjury under the laws of California that the foregoing is true and correct,

2   and that this Declaration was executed on March 28, 2023.

3

SHAUNA ROSSINGTON
In Pro Per

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALEX ROSSINGTON
464 E 6th Ave.,
Chico, CA 95926
(530) 375-0441

ALEX ROSSINGTON, IN PRO PER

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAUNA ROSSINGTON                    )    Case No. 23:23-CV-00423-KJM-DMC
ALEX ROSSINGTON                      )
AIDEN ROSSINGTON                     )    **DECLARATION OF ALEX ROSSINGTON**
JOSEPH CODDINGTON                    )    **IN SUPPORT OF PLAINTIFFS' MOTION**
VALERIE PETERS                       )    **AND MOTION FOR LEAVE TO FILE**
                                     )    **FIRST AMENDED COMPLAINT;**
IN PRO PER                           )    **MEMORANDUM OF POIINTS AND**
                    Plaintiff(s),    )    **AUTHORITIES IN SUPPORT OF MOTION**
                                     )
        vs.                          )
                                     )
Mountain Circle Family Services, Inc., dba Sierra )  Hearing: April 19, 2023
Nevada Connections, a California Corporation;     )  Time:10:00 a.m.
                                     )    Room: 304
JUSTIN MILLER, individually;         )    Judge: Dennis M. Cota
                                     )
PAMELA CRESPIN, individually;

KATHERINE VAN DOLSEN, individually;

ANGIE CARPENTER, individually;

SHANNON DOUNG, individually;

ROBIN MILLER, individually;

ROBERT BERRY, individually;

BILL POWERS, individually;

KACEY REYNOLDS, individually;

And DOES 1 through 7, inclusive,
                    Defendant(s).

## DECLARATION OF ALEX ROSSINGTON

I, Alex Rossington, declare:

    1.  I am a Plaintiff filing In Pro Per.  I have personal knowledge of each matter and the facts stated herein as a result of my employment with Mountain Circle Family Services, Inc., dba Sierra Nevada Connections, and if called upon and sworn as a witness, I could and would testify competently thereto.

### I.  Why the Request for Amendment was not made Earlier; and When the Facts Giving Rise to the Amended Allegations were Discovered

    2.  In the weeks following the filing of the Original Complaint was filed in the Superior Court of Butte County – North Butte County Court on February 6, 2023, additional information and evidence has come to light.

    3.  Defendants filed a Motion to Move based on a federal question and Plaintiffs filed their Motion to Remand with the Eastern District Court on March 28, 2023.  During this process, it was realized that by adding  the federal questions to the Cause of Action, this was complicating the Complaint, as the Complaint is based on a Wrongful Termination Suit, which are not based on a Public Policy.  The federal questions were added to support the unfair and unprofessional treatment of the Defendants after their wrongful termination. Therefore, amending the complaint to remove the Federal Questions streamlines the complaint for the Courts and all Parties.  This Wrongful Termination suit is based on the violation of the Brown Act, FEHA, the Corporations By-Laws and Cal. Code. Regs. Tit § 88063 (10) – ACOUNTABILITY.

    2. The Cause of Actions for the violation of the Corporation By-Laws 5.8 and Cal. Code. Regs. Tit § 88063 (10) – ACOUNTABILITY, were realized as important Causes to address after the signing and filing of the Original Complaint as well as to add them with the request to remove the federal questions.

    3. Since the filing of the Original Complaint and the Motion to Move to District Court based on the federal question, Defendant Robert Berry, claimed he was not served correctly and did not join the Motion, but instead filed his Motion to Dismiss and Motion for Anti-SLAPP on March 14, 2023.  Upon receiving his Motions, new additionally evidence was brought to light.  The Plaintiffs,

1   including myself, then sent a Request to Meet and Confer, with all the Defendants Attorneys on

2   Record, stating the Amendments that the Plaintiffs would like to change and delete. The

3   Defendants did not unanimously agree to these changes. However, the Attorney on Record, Maire

4   and Deedon, requested that Defendant Robin Miller be removed. I signed the Motion to Dismiss

5   and remove and is attached to this Motion as evidence.

6       4.      Evidence discovered through Robert Berry's Declaration and Exhibits were:

7       a. Untruthful statements regarding the actual facts of the Case which must be addressed

8       b. In Robert Berry's Exhibits, he attaches two emails of great importance.

9           1. Email from the Retained Counsel, Bret Cook, Esq, to the Board of Directors

10          outlining and recommending the course of action that should be taken by the Board,

11          of which Robert Berry had zero authority to supersede or intervene Bret Cook's

12          advice and recommendations. Additionally, assuming the Bret Cook, Esq was not a

13          competent attorney and had not been advising the Board correctly since the matter

14          arose, and therefore, taking matters into his own hands to steer the Board correctly.

15          This is Exhibit I.

16          2. Exhibit J of Robert Berry's Exhibits he attaches the email Shauna Rossington,

17          Plaintiff was writing to her retained counsel Eugene Chittock, Esq and Legal Law

18          Clerk, Seth Shepard. Shauna Rossington, cc's other potential Plaintiffs in this email.

19          It was always suspeicious that Robert Berry had possession of this ATTORNEY-

20          CLIENTS privileged communication and now the Plaintiffs had proof. This is a

21          crucial piece of documentary evidence to explain the abuse of power Robert Berry

22          has asserted in this Wrongful termination suit.

23      c. Other pieces of evidence had come to the attention of the Plaintiffs, which are crucial to

24   the support of this complaint and the violations of the Defendants. The SAR memo from Shannon

25   Doung, the printed August 6, 2021 email with Angie Carpenter's handwriting as well as the

26   handwriting of Robert Berry on the email. Also, discovered was copies from Community Care

27   Licensing clearing Shauna Rossington of three of the accusations and yet Community Care

28   Licensing still moved forward with those same allegations. Despite Shauna Rossington knowing

1  she had never committed those allegations and accusations, here was proof. Shauna Rossington did

2  not come into possession of these documents until after the Original filing of the Complaint on

3  February 6, 2021. Additionally, Bret Cook, esq, and Shauna Rossington submitted three separate

4  appeals, moving up the ranks of Community Care Licensing and demonstrating, without a shadow

5  of doubt, these allegations were in fact false and were all made by prior employees who had been

6  fired by Shauna Rossington and who had an "ax to grind." Community Care Licensing still move

7  forward on filing the allegations. Bret Cook, Esq, in his July 28, 2021 email to the Board clearly

8  outlines the problems with Community Care licensing and what actions should be taken by the

9  Board, because Bret Cook, Esq, had full knowledge of the events and the facts. None of which

10  Robert Berry had.

11                          **II. Why the Amendment is Necessary and Proper**

12  4.      After the filing of the Motion to Move and Robert Berry's Motion to Dismiss and Anti-

13  SLAPP Motion, I determined that the Complaint was not as robust as it could have been, and on

14  March 14, 2023 put in an official Meet and Confer Request in order to address the weaknesses of

15  the Original Complaint.

16                                  **II. The Effect of the Amendment**

17  5.      Attached hereto as Exhibit C is a Copy of the First Amended Complaint.

18  6.      The effect of the proposed amendment is shown, in detail, on Exhibit D. Generally speaking,

19  the proposed amendments fall into six (6) categories: (1) non-substantive clerical corrections; (2)

20  the dismissal of Defendant Robin Miller, (3) the removal of the Federal Questions (4) the addition

21  of new legal claims and causes of actions to clarify a previously existing case of action – Wrongful

22  Termination (5) new evidence discovered and attached as Exhibits (6) additions to Plaintiffs' prayer

23  based on the newly proposed causes of action.

24  7.      The amendment is necessary and proper because it speaks in good faith to correct errors,

25  address a defendant change, amend and add causes of actions that are consistent with the facts

26  pleaded, but that were not originally pleaded, and failure to plead them now would deprive

27  Plaintiffs of their right to plead meritorious causes of action in this Action

28

1 | I declare under penalty of perjury under the laws of California that the foregoing is true and correct,

2 | and that this Declaration was executed on March 28, 2023.

3 | 

ALEX ROSSINGTON
In Pro Per

4 | 

5 | 

6 | 

7 | 

8 | 

9 | 

10 | 

11 | 

12 | 

13 | 

14 | 

15 | 

16 | 

17 | 

18 | 

19 | 

20 | 

21 | 

22 | 

23 | 

24 | 

25 | 

26 | 

27 | 

28 |

AIDEN ROSSINGTON
2754 Dolphin Bend
Chico, CA 95973
(530) 616-0623
Aiden.rossington@gmail.com

AIDEN ROSSINGTON, IN PRO PER

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAUNA ROSSINGTON<br>ALEX ROSSINGTON<br>AIDEN ROSSINGTON<br>JOSEPH CODDINGTON<br>VALERIE PETERS<br><br>IN PRO PER<br>               Plaintiff(s),<br><br>   vs.<br><br>Mountain Circle Family Services, Inc., dba Sierra<br>Nevada Connections, a California Corporation;<br><br>JUSTIN MILLER, individually;<br><br>PAMELA CRESPIN, individually;<br><br>KATHERINE VAN DOLSEN, individually;<br><br>ANGIE CARPENTER, individually;<br><br>SHANNON DOUNG, individually;<br><br>ROBIN MILLER, individually;<br><br>ROBERT BERRY, individually;<br><br>BILL POWERS, individually;<br><br>KACEY REYNOLDS, individually;<br><br>And DOES 1 through 7, inclusive,<br>               Defendant(s). | Case No. 23:23-CV-00423-KJM-DMC<br><br>**DECLARATION OF AIDEN ROSSINGTON**<br>**IN SUPPORT OF PLAINTIFFS' MOTION**<br>**AND MOTION FOR LEAVE TO FILE**<br>**FIRST AMENDED COMPLAINT;**<br>**MEMORANDUM OF POIINTS AND**<br>**AUTHORITIES IN SUPPORT OF MOTION**<br><br>Hearing: April 19, 2023<br>Time:10:00 a.m.<br>Room: 304<br>Judge: Dennis M. Cota |

# DECLARATION OF AIDEN ROSSINGTON

I, Aiden Rossington, declare:

1. I am a Plaintiff filing In Pro Per. I have personal knowledge of each matter and the facts stated herein as a result of my employment with Mountain Circle Family Services, Inc., dba Sierra Nevada Connections, and if called upon and sworn as a witness, I could and would testify competently thereto.

## I. Why the Request for Amendment was not made Earlier; and When the Facts Giving Rise to the Amended Allegations were Discovered

2. In the weeks following the filing of the Original Complaint was filed in the Superior Court of Butte County – North Butte County Court on February 6, 2023, additional information and evidence has come to light.

3. Defendants filed a Motion to Move based on a federal question and Plaintiffs filed their Motion to Remand with the Eastern District Court on March 28, 2023. During this process, it was realized that by adding the federal questions to the Cause of Action, this was complicating the Complaint, as the Complaint is based on a Wrongful Termination Suit, which are not based on a Public Policy. The federal questions were added to support the unfair and unprofessional treatment of the Defendants after their wrongful termination. Therefore, amending the complaint to remove the Federal Questions streamlines the complaint for the Courts and all Parties. This Wrongful Termination suit is based on the violation of the Brown Act, FEHA, the Corporations By-Laws and Cal. Code. Regs. Tit § 88063 (10) – ACOUNTABILITY.

2. The Cause of Actions for the violation of the Corporation By-Laws 5.8 and Cal. Code. Regs. Tit § 88063 (10) – ACOUNTABILITY, were realized as important Causes to address after the signing and filing of the Original Complaint as well as to add them with the request to remove the federal questions.

3. Since the filing of the Original Complaint and the Motion to Move to District Court based on the federal question, Defendant Robert Berry, claimed he was not served correctly and did not join the Motion, but instead filed his Motion to Dismiss and Motion for Anti-SLAPP on March 14, 2023. Upon receiving his Motions, new additionally evidence was brought to light. The Plaintiffs,

1   including myself, then sent a Request to Meet and Confer, with all the Defendants Attorneys on

2   Record, stating the Amendments that the Plaintiffs would like to change and delete. The

3   Defendants did not unanimously agree to these changes. However, the Attorney on Record, Maire

4   and Deedon, requested that Defendant Robin Miller be removed. I signed the Motion to Dismiss

5   and remove and is attached to this Motion as evidence.

6       4.    Evidence discovered through Robert Berry's Declaration and Exhibits were:

7       a. Untruthful statements regarding  the actual facts of the Case which must be addressed

8       b. In Robert Berry's Exhibits, he attaches two emails of great importance.

9           1. Email from the Retained Counsel, Bret Cook, Esq, to the Board of Directors

10          outlining and recommending the course of action that should be taken by the Board,

11          of which Robert Berry had zero authority to supersede or intervene Bret Cook's

12          advice and recommendations. Additionally, assuming the Bret Cook, Esq was not a

13          competent attorney and had not been advising the Board correctly since the matter

14          arose, and therefore, taking matters into his own hands to steer the Board correctly.

15          This is Exhibit I.

16          2. Exhibit J of Robert Berry's Exhibits he attaches the email Shauna Rossington,

17          Plaintiff was writing to her retained counsel Eugene Chittock, Esq and Legal Law

18          Clerk, Seth Shepard. Shauna Rossington, cc's other potential Plaintiffs in this email.

19          It was always suspeicious that Robert Berry had possession of this ATTORNEY-

20          CLIENTS privileged communication and now the Plaintiffs had proof. This is a

21          crucial piece of documentary evidence to explain the abuse of power Robert Berry

22          has asserted in this Wrongful termination suit.

23      c. Other pieces of evidence had come to the attention of the Plaintiffs, which are crucial to

24  the support of this complaint and the violations of the Defendants.  The SAR memo from Shannon

25  Doung, the printed August 6, 2021 email with Angie Carpenter's handwriting as well as the

26  handwriting of Robert Berry on the email. Also, discovered was copies from Community Care

27  Licensing clearing Shauna Rossington of three of the accusations and yet  Community Care

28  Licensing still moved forward with those same allegations.  Despite Shauna Rossington knowing

1   she had never committed those allegations and accusations, here was proof.  Shauna Rossington did

2   not come into possession of these documents until after the Original filing of the Complaint on

3   February 6, 2021. Additionally, Bret Cook, esq, and Shauna Rossington submitted three separate

4   appeals, moving up the ranks of Community Care Licensing and demonstrating, without a shadow

5   of doubt, these allegations were in fact false and were all made by prior employees who had been

6   fired by Shauna Rossington and who had an "ax to grind."  Community Care Licensing still move

7   forward on filing the allegations.  Bret Cook, Esq, in his July 28, 2021 email to the Board clearly

8   outlines the problems with Community Care licensing and what actions should be taken by the

9   Board, because Bret Cook, Esq, had full knowledge of the events and the facts.  None of which

10  Robert Berry had.

11                    **II. Why the Amendment is Necessary and Proper**

12  4.       After the filing of the Motion to Move and Robert Berry's Motion to Dismiss and Anti-

13  SLAPP Motion, I determined that the Complaint was not as robust as it could have been, and on

14  March 14, 2023 put in an official Meet and Confer Request in order to address the weaknesses of

15  the Original Complaint.

16                         **II. The Effect of the Amendment**

17  5.       Attached hereto as Exhibit C is a Copy of the First Amended Complaint.

18  6.       The effect of the proposed amendment is shown, in detail, on Exhibit D. Generally speaking,

19  the proposed amendments fall into six (6) categories: (1) non-substantive clerical corrections; (2)

20  the dismissal of Defendant Robin Miller, (3) the removal of the Federal Questions (4) the addition

21  of new legal claims and causes of actions to clarify a previously existing case of action – Wrongful

22  Termination (5) new evidence discovered and attached as Exhibits (6) additions to Plaintiffs' prayer

23  based on the newly proposed causes of action.

24  7.       The amendment is necessary and proper because it speaks in good faith to correct errors,

25  address a defendant change, amend and add causes of actions that are consistent with the facts

26  pleaded, but that were not originally pleaded, and failure to plead them now would deprive

27  Plaintiffs of their right to plead meritorious causes of action in this Action

28

1 │ I declare under penalty of perjury under the laws of California that the foregoing is true and correct,

2 │ and that this Declaration was executed on March 28, 2023.

3 │

AIDEN ROSSINGTON
In Pro Per

4 │

5 │

6 │

7 │

8 │

9 │

10 │

11 │

12 │

13 │

14 │

15 │

16 │

17 │

18 │

19 │

20 │

21 │

22 │

23 │

24 │

25 │

26 │

27 │

28 │

1

2  JOSEPH CODDINGTON
   604 E Elm St.
3  Urbana, IL 61802
   (828)712-6582
   josephmcoddington@gmail.com
4
   JOSPEH CODDINGTON, IN PRO PER
5

6

7            **UNITED STATES DISTRICT COURT**
         **FOR THE EASTERN DISTRICT OF CALIFORNIA**
8

9  SHAUNA ROSSINGTON                          )  Case No. 23:23-CV-00423-KJM-DMC
   ALEX ROSSINGTON                            )
10 AIDEN ROSSINGTON                           )  **DECLARATION OF JOSEPH**
   JOSEPH CODDINGTON                          )  **CODDINGTON IN SUPPORT OF**
11 VALERIE PETERS                             )  **PLAINTIFFS' MOTION AND MOTION**
                                              )  **FOR LEAVE TO FILE FIRST AMENDED**
12 IN PRO PER                                 )  **COMPLAINT; MEMORANDUM OF**
                    Plaintiff(s),             )  **POIINTS AND AUTHORITIES IN**
13                                            )  **SUPPORT OF MOTION**
        vs.                                   )
14                                            )
   Mountain Circle Family Services, Inc., dba Sierra )
15 Nevada Connections, a California Corporation; )  Hearing: April 19, 2023
                                              )  Time:10:00 a.m.
16 JUSTIN MILLER, individually;               )  Room: 304
                                              )  Judge: Dennis M. Cota
17 PAMELA CRESPIN, individually;

18 KATHERINE VAN DOLSEN, individually;

19 ANGIE CARPENTER, individually;

20 SHANNON DOUNG, individually;

21 ROBIN MILLER, individually;

22 ROBERT BERRY, individually;

23 BILL POWERS, individually;

24 KACEY REYNOLDS, individually;

25 And DOES 1 through 7, inclusive,
                    Defendant(s).
26

27

28

### <u>DECLARATION OF JOSEPH CODDINGTON</u>

I, Joseph Coddington, declare:

    1. I am a Plaintiff filing In Pro Per. I have personal knowledge of each matter and the facts stated herein as a result of my employment with Mountain Circle Family Services, Inc., dba Sierra Nevada Connections, and if called upon and sworn as a witness, I could and would testify competently thereto.

**I.  Why the Request for Amendment was not made Earlier; and When the Facts Giving Rise to the Amended Allegations were Discovered**

    2. In the weeks following the filing of the Original Complaint was filed in the Superior Court of Butte County – North Butte County Court on February 6, 2023, additional information and evidence has come to light.

    3. Defendants filed a Motion to Move based on a federal question and Plaintiffs filed their Motion to Remand with the Eastern District Court on March 28, 2023. During this process, it was realized that by adding the federal questions to the Cause of Action, this was complicating the Complaint, as the Complaint is based on a Wrongful Termination Suit, which are not based on a Public Policy. The federal questions were added to support the unfair and unprofessional treatment of the Defendants after their wrongful termination. Therefore, amending the complaint to remove the Federal Questions streamlines the complaint for the Courts and all Parties. This Wrongful Termination suit is based on the violation of the Brown Act, FEHA, the Corporations By-Laws and Cal. Code. Regs. Tit § 88063 (10) – ACOUNTABILITY.

    2. The Cause of Actions for the violation of the Corporation By-Laws 5.8 and Cal. Code. Regs. Tit § 88063 (10) – ACOUNTABILITY, were realized as important Causes to address after the signing and filing of the Original Complaint as well as to add them with the request to remove the federal questions.

    3. Since the filing of the Original Complaint and the Motion to Move to District Court based on the federal question, Defendant Robert Berry, claimed he was not served correctly and did not join the Motion, but instead filed his Motion to Dismiss and Motion for Anti-SLAPP on March 14, 2023. Upon receiving his Motions, new additionally evidence was brought to light. The Plaintiffs,

1   including myself, then sent a Request to Meet and Confer, with all the Defendants Attorneys on

2   Record, stating the Amendments that the Plaintiffs would like to change and delete. The

3   Defendants did not unanimously agree to these changes. However, the Attorney on Record, Maire

4   and Deedon, requested that Defendant Robin Miller be removed. I signed the Motion to Dismiss

5   and remove and is attached to this Motion as evidence.

6       4.   Evidence discovered through Robert Berry's Declaration and Exhibits were:

7       a. Untruthful statements regarding  the actual facts of the Case which must be addressed

8       b. In Robert Berry's Exhibits, he attaches two emails of great importance.

9           1. Email from the Retained Counsel, Bret Cook, Esq, to the Board of Directors

10          outlining and recommending the course of action that should be taken by the Board,

11          of which Robert Berry had zero authority to supersede or intervene Bret Cook's

12          advice and recommendations. Additionally, assuming the Bret Cook, Esq was not a

13          competent attorney and had not been advising the Board correctly since the matter

14          arose, and therefore, taking matters into his own hands to steer the Board correctly.

15          This is Exhibit I.

16          2. Exhibit J of Robert Berry's Exhibits he attaches the email Shauna Rossington,

17          Plaintiff was writing to her retained counsel Eugene Chittock, Esq and Legal Law

18          Clerk, Seth Shepard. Shauna Rossington, cc's other potential Plaintiffs in this email.

19          It was always suspeicious that Robert Berry had possession of this ATTORNEY-

20          CLIENTS privileged communication and now the Plaintiffs had proof. This is a

21          crucial piece of documentary evidence to explain the abuse of power Robert Berry

22          has asserted in this Wrongful termination suit.

23      c. Other pieces of evidence had come to the attention of the Plaintiffs, which are crucial to

24  the support of this complaint and the violations of the Defendants. The SAR memo from Shannon

25  Doung, the printed August 6, 2021 email with Angie Carpenter's handwriting as well as the

26  handwriting of Robert Berry on the email. Also, discovered was copies from Community Care

27  Licensing clearing Shauna Rossington of three of the accusations and yet  Community Care

28  Licensing still moved forward with those same allegations. Despite Shauna Rossington knowing

1   she had never committed those allegations and accusations, here was proof. Shauna Rossington did

2   not come into possession of these documents until after the Original filing of the Complaint on

3   February 6, 2021. Additionally, Bret Cook, esq, and Shauna Rossington submitted three separate

4   appeals, moving up the ranks of Community Care Licensing and demonstrating, without a shadow

5   of doubt, these allegations were in fact false and were all made by prior employees who had been

6   fired by Shauna Rossington and who had an "ax to grind." Community Care Licensing still move

7   forward on filing the allegations. Bret Cook, Esq, in his July 28, 2021 email to the Board clearly

8   outlines the problems with Community Care licensing and what actions should be taken by the

9   Board, because Bret Cook, Esq, had full knowledge of the events and the facts. None of which

10  Robert Berry had.

11                    **II. Why the Amendment is Necessary and Proper**

12  4.      After the filing of the Motion to Move and Robert Berry's Motion to Dismiss and Anti-

13  SLAPP Motion, I determined that the Complaint was not as robust as it could have been, and on

14  March 14, 2023 put in an official Meet and Confer Request in order to address the weaknesses of

15  the Original Complaint.

16                          **II. The Effect of the Amendment**

17  5.      Attached hereto as Exhibit C is a Copy of the First Amended Complaint.

18  6.      The effect of the proposed amendment is shown, in detail, on Exhibit D. Generally speaking,

19  the proposed amendments fall into six (6) categories: (1) non-substantive clerical corrections; (2)

20  the dismissal of Defendant Robin Miller, (3) the removal of the Federal Questions (4) the addition

21  of new legal claims and causes of actions to clarify a previously existing case of action – Wrongful

22  Termination (5) new evidence discovered and attached as Exhibits (6) additions to Plaintiffs' prayer

23  based on the newly proposed causes of action.

24  7.      The amendment is necessary and proper because it speaks in good faith to correct errors,

25  address a defendant change, amend and add causes of actions that are consistent with the facts

26  pleaded, but that were not originally pleaded, and failure to plead them now would deprive

27  Plaintiffs of their right to plead meritorious causes of action in this Action

28

DocuSign Envelope ID: BF9C4EE3-8880-4BFC-8572-7A8839B816BC

1   I declare under penalty of perjury under the laws of California that the foregoing is true and correct,

2   and that this Declaration was executed on March 28, 2023.

DocuSigned by:

*Joseph Coddington*

JOSEPH CODDINGTON

In Pro Per

VALERIE PETERS
464 E 6th St.
Chico, CA 95926
(530) 249-5993

VALERIE PETERS, IN PRO PER

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAUNA ROSSINGTON<br>ALEX ROSSINGTON<br>AIDEN ROSSINGTON<br>JOSEPH CODDINGTON<br>VALERIE PETERS<br><br>IN PRO PER<br>                Plaintiff(s),<br><br>vs.<br><br>Mountain Circle Family Services, Inc., dba Sierra Nevada Connections, a California Corporation;<br><br>JUSTIN MILLER, individually;<br><br>PAMELA CRESPIN, individually;<br><br>KATHERINE VAN DOLSEN, individually;<br><br>ANGIE CARPENTER, individually;<br><br>SHANNON DOUNG, individually;<br><br>ROBIN MILLER, individually;<br><br>ROBERT BERRY, individually;<br><br>BILL POWERS, individually;<br><br>KACEY REYNOLDS, individually;<br><br>And DOES 1 through 7, inclusive,<br>                Defendant(s). | Case No. 23:23-CV-00423-KJM-DMC<br><br>**DECLARATION OF VALERIE PETERS IN SUPPORT OF PLAINTIFFS' MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; MEMORANDUM OF POIINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Hearing: April 19, 2023<br>Time:10:00 a.m.<br>Room: 304<br>Judge: Dennis M. Cota |

1                                  **DECLARATION OF VALERIE PETERS**

2   I, Valerie Peters, declare:

3        1.  I am a Plaintiff filing In Pro Per.  I have personal knowledge of each matter and the facts

4 stated herein as a result of my employment with Mountain Circle Family Services, Inc., dba Sierra

5 Nevada Connections, and if called upon and sworn as a witness, I could and would testify

6 competently thereto.

7       **I.  Why the Request for Amendment was not made Earlier; and When the Facts Giving**

8                              **Rise to the Amended Allegations were Discovered**

9        2.  In the weeks following the filing of the Original Complaint was filed in the Superior

10 Court of Butte County – North Butte County Court on February 6, 2023, additional information and

11 evidence has come to light.

12        3.  Defendants filed a Motion to Move based on a federal question and Plaintiffs filed their

13 Motion to Remand with the Eastern District Court on March 28, 2023.  During this process, it was

14 realized that by adding  the federal questions to the Cause of Action, this was complicating the

15 Complaint, as the Complaint is based on a Wrongful Termination Suit, which are not based on a

16 Public Policy.  The federal questions were added to support the unfair and unprofessional treatment

17 of the Defendants after their wrongful termination. Therefore, amending the complaint to remove

18 the Federal Questions streamlines the complaint for the Courts and all Parties.  This Wrongful

19 Termination suit is based on the violation of the Brown Act, FEHA, the Corporations By-Laws and

20 Cal. Code. Regs. Tit § 88063 (10) – ACOUNTABILITY.

21        2. The Cause of Actions for the violation of the Corporation By-Laws 5.8 and Cal. Code.

22 Regs. Tit § 88063 (10) – ACOUNTABILITY, were realized as important Causes to address after

23 the signing and filing of the Original Complaint as well as to add them with the request to remove

24 the federal questions.

25        3. Since the filing of the Original Complaint and the Motion to Move to District Court based

26 on the federal question, Defendant Robert Berry, claimed he was not served correctly and did not

27 join the Motion, but instead filed his Motion to Dismiss and Motion for Anti-SLAPP on March 14,

28 2023.  Upon receiving his Motions, new additionally evidence was brought to light.  The Plaintiffs,

1  including myself, then sent a Request to Meet and Confer, with all the Defendants Attorneys on

2  Record, stating the Amendments that the Plaintiffs would like to change and delete.  The

3  Defendants did not unanimously agree to these changes.  However, the Attorney on Record, Maire

4  and Deedon, requested that Defendant Robin Miller be removed.  I signed the Motion to Dismiss

5  and remove and is attached to this Motion as evidence.

6      4.      Evidence discovered through Robert Berry's Declaration and Exhibits were:

7      a. Untruthful statements regarding  the actual facts of the Case which must be addressed

8      b. In Robert Berry's Exhibits, he attaches two emails of great importance.

9          1. Email from the Retained Counsel, Bret Cook, Esq, to the Board of Directors

10          outlining and recommending the course of action that should be taken by the Board,

11          of which Robert Berry had zero authority to supersede or intervene Bret Cook's

12          advice and recommendations. Additionally, assuming the Bret Cook, Esq was not a

13          competent attorney and had not been advising the Board correctly since the matter

14          arose, and therefore, taking matters into his own hands to steer the Board correctly.

15          This is Exhibit I.

16          2. Exhibit J of Robert Berry's Exhibits he attaches the email Shauna Rossington,

17          Plaintiff was writing to her retained counsel Eugene Chittock, Esq and Legal Law

18          Clerk, Seth Shepard. Shauna Rossington, cc's other potential Plaintiffs in this email.

19          It was always suspeicious that Robert Berry had possession of this ATTORNEY-

20          CLIENTS privileged communication and now the Plaintiffs had proof.  This is a

21          crucial piece of documentary evidence to explain the abuse of power Robert Berry

22          has asserted in this Wrongful termination suit.

23      c. Other pieces of evidence had come to the attention of the Plaintiffs, which are crucial to

24  the support of this complaint and the violations of the Defendants.  The SAR memo from Shannon

25  Doung, the printed August 6, 2021 email with Angie Carpenter's handwriting as well as the

26  handwriting of Robert Berry on the email.  Also, discovered was copies from Community Care

27  Licensing clearing Shauna Rossington of three of the accusations and yet  Community Care

28  Licensing still moved forward with those same allegations.  Despite Shauna Rossington knowing

1    she had never committed those allegations and accusations, here was proof.  Shauna Rossington did

2    not come into possession of these documents until after the Original filing of the Complaint on

3    February 6, 2021. Additionally, Bret Cook, esq, and Shauna Rossington submitted three separate

4    appeals, moving up the ranks of Community Care Licensing and demonstrating, without a shadow

5    of doubt, these allegations were in fact false and were all made by prior employees who had been

6    fired by Shauna Rossington and who had an "ax to grind." Community Care Licensing still move

7    forward on filing the allegations.  Bret Cook, Esq, in his July 28, 2021 email to the Board clearly

8    outlines the problems with Community Care licensing and what actions should be taken by the

9    Board, because Bret Cook, Esq, had full knowledge of the events and the facts.  None of which

10   Robert Berry had.

11                                **II. Why the Amendment is Necessary and Proper**

12   4.        After the filing of the Motion to Move and Robert Berry's Motion to Dismiss and Anti-

13   SLAPP Motion, I determined that the Complaint was not as robust as it could have been, and on

14   March 14, 202\ put in an official Meet and Confer Request in order to address the weaknesses of

15   the Original Complaint.

16                                **II. The Effect of the Amendment**

17   5.        Attached hereto as Exhibit C is a Copy of the First Amended Complaint.

18   6.        The effect of the proposed amendment is shown, in detail, on Exhibit D. Generally speaking,

19   the proposed amendments fall into six (6) categories: (1) non-substantive clerical corrections; (2)

20   the dismissal of Defendant Robin Miller, (3) the removal of the Federal Questions (4) the addition

21   of new legal claims and causes of actions to clarify a previously existing case of action – Wrongful

22   Termination (5) new evidence discovered and attached as Exhibits (6) additions to Plaintiffs' prayer

23   based on the newly proposed causes of action.

24   7.        The amendment is necessary and proper because it speaks in good faith to correct errors,

25   address a defendant change, amend and add causes of actions that are consistent with the facts

26   pleaded, but that were not originally pleaded, and failure to plead them now would deprive

27   Plaintiffs of their right to plead meritorious causes of action in this Action

28

1  I declare under penalty of perjury under the laws of California that the foregoing is true and correct,

2  and that this Declaration was executed on March 28, 2023.

3  _____

Valerie Peters
In Pro Per

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT

# A

SHAUNA ROSSINGTON
2754 Dolphin Bend
Chico, CA 95973
(530) 588-5511
DrShaunalr@gmail.com

SHAUNA ROSSINGTON, IN PRO PER

ALEX ROSSINGTON
464 E 6th Ave.,
Chico, CA 95926
(530) 375-0441


ALEX ROSSINGTON, IN PRO PER

AIDEN ROSSINGTON
2754 Dolphin Bend
Chico, CA 95973
(530) 616-0623
Aiden.rossington@gmail.com

AIDEN ROSSINGTON, IN PRO PER

JOSEPH CODDINGTON
604 E Elm St.
Urbana, IL 61802
(828)712-6582
josephmcoddington@gmail.com

JOSPEH CODDINGTON, IN PRO PER

VALERIE PETERS
464 E 6th St.
Chico, CA 95926
(530) 249-5993


VALERIE PETERS, IN PRO PER

March 18, 2021

To the Defendants, Justin Miller, Pamela Crespin, Kate Van Dolsen, Angie Carpenter, Shannon Doung, Robert Berry, Bill Powers, and Kacey Reynolds and their Attorneys of Record:  Kathleen Carter and Heather Stern, of Messner Reeves LLP, Patrick Deedon and Sonja Dahl, of Maire & Deedon, and Daniel Kohls and Mark Szyntar of Hansen, Kohls, Sommer & Jacob, LLP and Patricia Savage, Esq.:

This is a formal request to meet and confer on Case No; 23CV00288, 22CV02781, and Case No: 2:23-CV00423-KJM-DMC before March 28, 2023.

The above-named Plaintiffs are requesting the Defendants' written consent for the Plaintiffs to amend their original complaint. The Plaintiffs have 21 days to amend this complaint after service of a motion under Rule 15 and must meet and confer 7 days prior.

With or without the consent of the above-named Defendants, the Plaintiffs have prepared a Notice of Motion and Motion for Leave to file for a first amended complaint with the Eastern District Court of California. Federal Rule of Civil Procedure 15 states that plaintiffs are allowed to make one amendment without court permission within 21 days of the defendant moving to dismiss. However, the Plaintiffs respectfully request written consent for this amendment as this is more agreeable with the Courts.

Plaintiffs' filed a Remand Motion on March 15, 2023 and clearly outlined that the First Cause of Action FIOA and the Eighth Cause of Action of 5U.S.C. 552a(b) were not the meat of the wrongful termination suit.

Defendant Robert Berry did not join the defendants' motion to move based on a federal question, however, filed a motion to dismiss as well as an anti-slapp motion on March 14, 2023.

The plaintiffs demonstrated that defendant Robert Berry was properly served in their Remand Motion, however, re-served Robert Berry on March 16, 2023. Proof of service is attached hereto [Exhibit A].

Therefore, amending the complaint and removing the federal questions would streamline these cases. We do not want to waste the Courts time nor engage in legal gamesmanship with parties who seek no fair or comparable resolution.

Removing the federal questions does not immaterialize the complaint. The complaint is a plausible claim for relief on the other Six Causes of Action.

However, since Robert Berry has filed his motion to dismiss, the Plaintiffs' Motion for Leave to File an Amended Complaint will now include and address the issues of the violation of Attorney-Client Privilege. Plaintiffs feel they must address this issue, as Robert Berry attached the August 6, 2023, email as Exhibit J in his motion to dismiss and discusses the email in his declaration, which is now a matter of record. The August 6, 2021, email was copied (cc'd) to Seth Shepard, who is the legal law clerk for Eugene Chittock, Esq, whom the Plaintiffs had retained during this time. Plaintiffs were always suspicious that Robert Berry was in possession of this email but previously had no proof. This is new evidence.

Additionally, since the filing of the original Complaint on February 6, 2021, a SAR memo [Exhibit B] has come into the Plaintiffs' possession written by Shannon Doung. An employee of Mountain Circle Family Services, Inc., dba, Sierra Nevada Connections, Shannon Doung admits to logging into Alex Rossington's personal email after she was fired, printing, and distributing this email. All under the guise that she was seeking passwords and to possible hacking. However, upon a professional and fair exit interview with any fired employee, this information is to be gathered at that point in time. No employer has the right to access a terminated employee's personal email for any reason, specifically regarding communications intended for their attorney.

Employers cannot legally access an employee's private email account without their explicit permission. Alex Rossington will, in a declaration, state that she closed out all her personal accounts, shut down, and turned off the company laptop. Alex Rossington did not leave her personal email up and open. Robert Berry is not truthful in his declaration. Additionally, the attached memo from Shannon Doung is not true or correct.

Alex Rossington did not change her **personal** Google Chrome password immediately after termination, however, a terminated employee should not have to change their password to their **personal** Google Chrome account upon being terminated. An employer does not have the right to enter a terminated employee's personal Google Chrome account that was specifically shut down upon their departure. This is the only way Shannon Doung was able to access Alex Rossington's personal email. It is also known that this email account was monitored for 10 days following the termination of Alex Rossington.

Please see the attached SAR memo [Exhibit B] from Shannon Doung as well as the August 6, 2021, email. The August 6, 2021, email attachment has the handwriting of Angie Carpenter and clearly states this was sent to the Board of Directors and to Robert Berry. In addition, Robert Berry highlights the words "create havoc" as the primary reason for the accused "cyber-hacking." Attorney-Client Privilege is a rule that protects the confidentiality of communications between lawyers and clients for an actual or potential client regarding legal advice; the lawyer is acting in a professional capacity; and the client intended the communications to be private and acted accordingly. California law is clear that inadvertent disclosure does not waive the attorney-client privilege. *McDermott Will & Emery LLP v. Superior Ct.*, 10 Cal. App. 5th 1083, 1101 (2017) (describing longstanding principle that privilege is not waiver in the absence of a manifest intent to waive; collecting authorities). Robert Berry has now attached this email as part of his defense.

Plaintiffs will also seek discovery on the metadata of the SAR from Shannon Doung as it appears to be a justification for the cyber hacking email sent to Plaintiffs on August 9, 2021, from Robert Berry. The plaintiffs will also seek discovery from TriPath and subpoena them for deposition as to the actual cause of why the company's email went down for two hours on August 9, 2021. How this

could have possibly been considered cyber hacking, and warrant sending the Chico Police department to the Rossington residence, is beyond comprehension.

As Exhibit C will demonstrate:

(1) Shauna Rossington sent an email to employees Katherine Van Dolsen and Angie Carpenter on August 9, 2021, at 1:25 pm. This email bounced back stating "Address not found."

(2) At 1:35 pm, Plaintiffs Shauna Rossington, Joseph Coddington, Alex Rossington, Aiden Rossington, and Legal Law Clerk, Seth Shepard were sent the Cyber Hacking email from Robert Berry. The only possible way Robert Berry had Seth Shepard's email was from when the August 6, 2021, email Shauna Rossington sent to Seth Shepard and others was obtained. Also, of note is that Shauna Rossington did not copy (cc) Valerie Peters on the August 6, 2021, email and neither did Robert Berry on his August 9, 2021, cyber hacking email. This was always suspected and has now been proven.

(3) Around 2:30 pm, the Chico Police department arrives at the residence of Shauna Rossington and Aiden Rossington, pounded on the front door for about five minutes, continuously flashed their lights and then left. This is considered emotional swatting and abuse of power. To date, a police report, nor even a police report reference number, has ever been produced for this incident. Despite Robert Berry explicitly referencing said police report within his declaration, he does not attach as an Exhibit. In addition, Plaintiff's previously hired counsel, Eugene Chittock, Esq., attempted to retrieve said police report, but was informed no such report existed.

//

This again begs the question of how police were legally and rightfully dispatched to the Rossington residence. Also, if there was proof of the cyber hacking how come the Plaintiffs have never been charged with this allegation?

(4) At 4:04 pm, Shauna Rossington then re-sent her original email and it was now appropriately delivered. It was a known fact that the company's email servers would go down from time to time primarily based on Comcast and its technical difficulties. Rossington then forwarded her **delivered** email and addressed the Chico Police being sent to her door. The logic of the Plaintiff's inability to cyber hack the company was clearly outlined within the complaint filed on February 6, 2023.

(5) At 5:05 pm, Robert Berry emails Shauna Rossington requesting, for the first time, that all communications go through him. However, states nothing about the cyber hacking allegation as he knows that it was either the defendants who had made a technical error or it was Comcast itself. If the aforementioned police report was in fact not filed, as the evidence would suggest, it can only be assumed that this is gross incompetence or intent of intimidation on Robert Barry's behalf. All has gone quiet on this accusation.

(6) At 7:13 pm, Shauna Rossington replies to Robert Berry and states to contact Gene Chittock, Esq.

(7) On August 11, 2021, Robert Berry emails Eugene Chittock and Seth Shepard requesting information.

Robert Berry's motion to dismiss will in no way meet the requirements for FRCP 12(b)(6). As a practical matter, Rule 12(b)(6) motions are rarely successful,

and the Plaintiff is now free to amend their complaint of all the deficiencies pointed out in the motion.

With this new evidence that Robert Berry indeed violated Attorney-Client Privilege, used it as part of his defense, and the new evidence of the SAR memo, will certainly rise to the level of plausibility and an Order to Amend will be granted by the Courts.

Therefore, we are requesting consent for amendment on these issues.

1. To Remove the First Cause of Action and the Eighth Cause of Action.

2. To add the Cause of Action the Violation of the Manual of Policies and Procedures, Community Care Licensing, Foster Family Agencies, Title 22, Division 6, Chapter 8.8, 88018 a (7).
   "As a requirement for licensure, the chief executive officer or other authorized member of the Board of Directors and the administrator shall attend an orientation given by the licensing agency which outlines the applicable rules and regulations for operation of a foster family agency."

Neither the Board President nor the Administrator attended the August 6, 2021 board meeting. Per the Mountain Circle Family Services, In., dba Sierra Nevada Connections By-Laws, the Chief Executive Officer is the Board President and the Administrator is the Executive Director.

3. To add the Exhibit of the Meta Data of who created the Board Agenda and the Agenda for the August 4, 2021, board meeting which proves that Robert Berry is the author of the Board Agenda two days before the August 4, 2021, Board meeting. This evidence was inadvertently left off as an Exhibit.

4. To add the Board Contract to Exhibit C of the Complaint as it was inadvertently left off. However, Robert Berry attaches a copy of the Board Contract as Exhibit F in his motion to dismiss.

5. To address more in-depth the true nature of the Violation of the Second Cause of Action, and attached as evidence the August 6, 2021, email. In addition, to demonstrate that Robert Berry has attached this email to his motion to dismiss [Exhibit J]. The SAR memo from Shannon Doung and the August 6, 2021, email with Angie Carpenter's note stating that the Board of Directors also read this email. Additionally, to provide a declaration from Alex Rossington stating the true facts of how the company laptop that she used was left when she departed the premises on August 5, 2021.

6. To address more in-depth the Cyber Hacking email and to add as evidence and as an Exhibit the timeline of emails on August 9, 2021.

For these reasons, a motion to dismiss by Robert Berry is not worth the value of the motion and will only weaken the defense's credibility with the Judge.

Additionally, the Plaintiffs' Motion for Leave will be granted and will only strengthen our case. However, we are asking for the consent of the Defendants to amend our complaint.

We are proposing that the Defendants' and their attorneys of record stop the legal maneuvering, admit to gross negligence, and that we are entitled to recompense and relief.

The continued unfair dealings and harassment, specifically in Case No. 22CV02781 regarding the Labor Board award from the Defendants, needs to stop immediately— and these matters should be resolved as quickly as possible. We hope to meet and confer in order to

(1) Gain consent from the Defendants to Amend their complaints; or

(2) Resolve these matters, rather than continue to move forward with amending our original complaint and continue these Court proceedings.

Therefore, we are requesting an immediate meet and confer meeting before April 8, 2023.

Respectfully Submitted,

| Date | Printed Name | Signature |
|------|--------------|-----------|
| 3. 18. 23 | Shauna Rossing | *[signature]* |
| 3/18/23 | Aiden Rossington | *[signature]* |
| 3-18-23 | Joseph Caddington | *[signature]* |
| 3/18/23 | Alex Heth-Rossington | *[signature]* |
| 03/18/23 | Valerie Peters | *[signature]* |

Exhibit A

# EXHIBIT

# B

 **Gmail**               **Shauna Rossington <drshaunalr@gmail.com>**

---

## Rossington v. MCFS

---

**Daniel V. Kohls** <dkohls@hansenkohls.com>             Fri, Mar 24, 2023 at 10:41 AM
To: "drshaunalr@gmail.com" <drshaunalr@gmail.com>, "ahrossington444@gmail.com" <ahrossington444@gmail.com>,
"aiden.rossington@gmail.com" <aiden.rossington@gmail.com>, "josephmcoddington@gmail.com"
<josephmcoddington@gmail.com>, "valerimp0501@gmail.com" <valerimp0501@gmail.com>
Cc: Heather Stern <HStern@messner.com>, Kathleen Carter <KCarter@messner.com>, Patrick Deedon <pdeedon@maire-law.com>, Sonja Dahl <sdahl@maire-law.com>, Mark Szyntar <mszyntar@hansenkohls.com>, Susan Schiele
<sschiele@hansenkohls.com>

Dear Plaintiffs:


This email is sent in response to the "Meet and Confer Request" dated March 18, 2023, which Shauna Rossington
appears to have signed on behalf of Mr. Coddington. As you know, our office represents Robert Berry. To the extent that
your request seeks Mr. Berry's consent to amend the Complaint, please note that we have no objection to your proposal
to dismiss the First Cause of Action and the Eighth Cause of Action. With regard to the second request to add a cause of
action for violation of a manual of policies and procedures, we confess to not understanding this proposal and we do not
see how Mr. Berry could be a defendant as to any such claim. With regard to the remaining four requests, these appear
to be matters that can be developed during discovery and do not appear to us to be appropriate matters for an amended
pleading. Additionally, given your procedural rights, we do not see any need to provide consent or to meet and confer
regarding such consent.


We would like to take this opportunity, however, to make certain that each of you are aware of the exposure you each
already face for Mr. Berry's attorneys' fees and costs incurred in connection with his special motion to strike, and the fact
that those fees will only increase going forward unless all claims against Mr. Berry are dismissed. As unrepresented
parties, you might not be aware of the provision in the anti-SLAPP statute that entitles a prevailing defendant to his
attorneys' fees and costs. Code of Civil Procedure, section 425.16, subsection (c)(1), states in relevant part: "Except as
provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike
shall be entitled to recover that defendant's attorney's fees and costs." This is a mandatory award which the Court has no
discretion to deny when a defendant prevails on an anti-SLAPP motion, so it is my earnest hope that you do not
misunderstand this lawsuit to be a process in which you have "nothing to lose."


Very truly yours,


Dan



**MAIRE & DEEDON**

*A Law Corporation*

2851 PARK MARINA DRIVE, SUITE 300
REDDING, CALIFORNIA 96001-2813

WEBSITE: WWW.MAIRE-LAW.COM

TEL: (530) 246-6050
FAX: (530) 246-6060

PATRICK L. DEEDON
SONJA M. DAHL

March 23, 2023

***Via Email and U.S. Mail:*** josephmcoddington@gmail.com

Joseph Coddington
604 E Elm Street
Urbqna, IL 61802

   Re: *Rossington, et al. vs. Mountain Circle, et al.*

Dear Mr. Coddington:

In lieu of meeting and conferring with you in person or over zoom regarding the amended complaint that we understand is in the works, I would like you to carefully consider the arguments that were made in the motion to dismiss filed on behalf of our clients. Your effort to amend the complaint should take those arguments into account.

In addition, I would like to draw your attention to Federal Rule of Civil Procedure 11, which sets forth the expectations of the federal courts for all litigants, and to Eastern District of California Local Rule 183, which sets forth the expectations of the Eastern District for parties representing themselves:

   **Rule 11— Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions.**

   (a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless

Joseph Coddington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 2

omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated.

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5 but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in

Joseph Coddington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 3

presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

(d) Inapplicability to Discovery. Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37.

**RULE 183 (Fed. R. Civ. P. 83)**
**PERSONS APPEARING IN PROPRIA PERSONA**
(a) Rules Governing Appearance. Any individual who is representing himself or herself without an attorney must appear personally or by courtesy appearance by an attorney admitted to the Bar of this Court and may not delegate that duty to any other individual, including husband or wife, or any other party on the same

Joseph Coddington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 4

side appearing without an attorney. Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in propria persona. Failure to comply therewith may be ground for dismissal, judgment by default, or any other sanction appropriate under these Rules. A corporation or other entity may appear only by an attorney.

(b) Address Changes. A party appearing in propria persona shall keep the Court and opposing parties advised as to his or her current address. If mail directed to a plaintiff in propria persona by the Clerk is returned by the U.S. Postal Service, and if such plaintiff fails to notify the Court and opposing parties within sixty-three (63) days thereafter of a current address, the Court may dismiss the action without prejudice for failure to prosecute.

(c) Pro Se Party Exceptions to Electronic Filing. Pro se parties are exempted from the requirement of filing documents electronically. Pro se parties must file documents conventionally, and any person appearing pro se may use electronic filing only with the permission of the assigned Judge. See L.R. 133.

The policy behind these rules is that each plaintiff representing him or herself is personally responsible for the claims they bring before the court. In preparing the amended complaint, you should be confident that each factual claim in the amended complaint is true (or you have a good faith belief that it's true), and that each claim *that you personally assert on your own behalf* is justified under the facts and the law. You're not required to be perfect, but you're also not allowed to assert claims that you know or believe are bogus. California state courts also have similar rules and policies concerning parties who represent themselves. For example, I can't think of any set of circumstances that would give you a legal remedy against Robin Miller, who was not employed by or a board member of the agency at the time you were let go. If you agree you have no viable legal claim against her, you should dismiss her from your lawsuit.

I would ask you to carefully consider what goes into the amended complaint *concerning you personally.* You are only responsible for litigating the *claims you assert on your own behalf against each defendant.* If you should decide that you no longer wish to be involved in this lawsuit as a plaintiff, or that you wish to dismiss one or more of the defendants, the law gives you the absolute right to file your own Notice of Dismissal under Federal Rule of Civil Procedure 41. This right lasts until one of the defendants files an answer. If you have questions about how to dismiss your case or dismiss any of the defendants from your case, I can help you do that. I cannot give you any advice about how to proceed as a plaintiff.

Joseph Coddington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 5


Thank you for your kind attention.

Regards,

SONJA M. DAHL

SMD/lm



**MAIRE & DEEDON**

*A Law Corporation*

2851 PARK MARINA DRIVE, SUITE 300
REDDING, CALIFORNIA 96001-2813

WEBSITE: WWW.MAIRE-LAW.COM

TEL: (530) 246-6050
FAX: (530) 246-6060

PATRICK L. DEEDON
SONJA M. DAHL

March 23, 2023

***Via Email and U.S. Mail:*** Aiden.rossington@gmail.com

Aiden Rossington
2754 Dolphin Bend
Chico, CA 95973

   Re: *Rossington, et al. vs. Mountain Circle, et al.*

Dear Mr. Rossington:

In lieu of meeting and conferring with you in person or over zoom regarding the amended complaint that we understand is in the works, I would like you to carefully consider the arguments that were made in the motion to dismiss filed on behalf of our clients. Your effort to amend the complaint should take those arguments into account.

In addition, I would like to draw your attention to Federal Rule of Civil Procedure 11, which sets forth the expectations of the federal courts for all litigants, and to Eastern District of California Local Rule 183, which sets forth the expectations of the Eastern District for parties representing themselves:

  **Rule 11— Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions.**

  (a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless

Aiden Rossington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 2

omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated.

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5 but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in

Aiden Rossington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 3

presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

(d) Inapplicability to Discovery. Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37.

**RULE 183 (Fed. R. Civ. P. 83)**
**PERSONS APPEARING IN PROPRIA PERSONA**
(a) Rules Governing Appearance. Any individual who is representing himself or herself without an attorney must appear personally or by courtesy appearance by an attorney admitted to the Bar of this Court and may not delegate that duty to any other individual, including husband or wife, or any other party on the same

Aiden Rossington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 4

side appearing without an attorney. Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in propria persona. Failure to comply therewith may be ground for dismissal, judgment by default, or any other sanction appropriate under these Rules. A corporation or other entity may appear only by an attorney.

(b) Address Changes. A party appearing in propria persona shall keep the Court and opposing parties advised as to his or her current address. If mail directed to a plaintiff in propria persona by the Clerk is returned by the U.S. Postal Service, and if such plaintiff fails to notify the Court and opposing parties within sixty-three (63) days thereafter of a current address, the Court may dismiss the action without prejudice for failure to prosecute.

(c) Pro Se Party Exceptions to Electronic Filing. Pro se parties are exempted from the requirement of filing documents electronically. Pro se parties must file documents conventionally, and any person appearing pro se may use electronic filing only with the permission of the assigned Judge. See L.R. 133.

The policy behind these rules is that each plaintiff representing him or herself is personally responsible for the claims they bring before the court. In preparing the amended complaint, you should be confident that each factual claim in the amended complaint is true (or you have a good faith belief that it's true), and that each claim *that you personally assert on your own behalf* is justified under the facts and the law. You're not required to be perfect, but you're also not allowed to assert claims that you know or believe are bogus. California state courts also have similar rules and policies concerning parties who represent themselves. For example, I can't think of any set of circumstances that would give you a legal remedy against Robin Miller, who was not employed by or a board member of the agency at the time you were let go. If you agree you have no viable legal claim against her, you should dismiss her from your lawsuit.

I would ask you to carefully consider what goes into the amended complaint *concerning you personally.* You are only responsible for litigating the *claims you assert on your own behalf against each defendant.* If you should decide that you no longer wish to be involved in this lawsuit as a plaintiff, or that you wish to dismiss one or more of the defendants, the law gives you the absolute right to file your own Notice of Dismissal under Federal Rule of Civil Procedure 41. This right lasts until one of the defendants files an answer. If you have questions about how to dismiss your case or dismiss any of the defendants from your case, I can help you do that. I cannot give you any advice about how to proceed as a plaintiff.

Aiden Rossington
Re:  *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 5


Thank you for your kind attention.

Regards,

SONJA M. DAHL

SMD/lm



# MAIRE & DEEDON
## *A Law Corporation*

2851 PARK MARINA DRIVE, SUITE 300
REDDING, CALIFORNIA 96001-2813

WEBSITE: WWW.MAIRE-LAW.COM

TEL: (530) 246-6050
FAX: (530) 246-6060

PATRICK L. DEEDON
SONJA M. DAHL

March 23, 2023

***Via Email and U.S. Mail:*** Valeriemp0501@gmail.com

Valerie Peters
464 E 6th Avenue
Chico, CA 95926

      Re:    *Rossington, et al. vs. Mountain Circle, et al.*

Dear Ms. Peters:

In lieu of meeting and conferring with you in person or over zoom regarding the amended complaint that we understand is in the works, I would like you to carefully consider the arguments that were made in the motion to dismiss filed on behalf of our clients. Your effort to amend the complaint should take those arguments into account.

In addition, I would like to draw your attention to Federal Rule of Civil Procedure 11, which sets forth the expectations of the federal courts for all litigants, and to Eastern District of California Local Rule 183, which sets forth the expectations of the Eastern District for parties representing themselves:

      **Rule 11— Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions.**

      (a) Signature. Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless

Valerie Peters
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 2

omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated.

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5 but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in

Valerie Peters
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 3

presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

(d) Inapplicability to Discovery. Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37.

## RULE 183 (Fed. R. Civ. P. 83)
## PERSONS APPEARING IN PROPRIA PERSONA

(a) Rules Governing Appearance. Any individual who is representing himself or herself without an attorney must appear personally or by courtesy appearance by an attorney admitted to the Bar of this Court and may not delegate that duty to any other individual, including husband or wife, or any other party on the same

Valerie Peters
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 4

side appearing without an attorney. Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in propria persona. Failure to comply therewith may be ground for dismissal, judgment by default, or any other sanction appropriate under these Rules. A corporation or other entity may appear only by an attorney.

(b) Address Changes. A party appearing in propria persona shall keep the Court and opposing parties advised as to his or her current address. If mail directed to a plaintiff in propria persona by the Clerk is returned by the U.S. Postal Service, and if such plaintiff fails to notify the Court and opposing parties within sixty-three (63) days thereafter of a current address, the Court may dismiss the action without prejudice for failure to prosecute.

(c) Pro Se Party Exceptions to Electronic Filing. Pro se parties are exempted from the requirement of filing documents electronically. Pro se parties must file documents conventionally, and any person appearing pro se may use electronic filing only with the permission of the assigned Judge. See L.R. 133.

The policy behind these rules is that each plaintiff representing him or herself is personally responsible for the claims they bring before the court. In preparing the amended complaint, you should be confident that each factual claim in the amended complaint is true (or you have a good faith belief that it's true), and that each claim *that you personally assert on your own behalf* is justified under the facts and the law. You're not required to be perfect, but you're also not allowed to assert claims that you know or believe are bogus. California state courts also have similar rules and policies concerning parties who represent themselves. For example, I can't think of any set of circumstances that would give you a legal remedy against Robin Miller, who was not employed by or a board member of the agency at the time you were let go. If you agree you have no viable legal claim against her, you should dismiss her from your lawsuit.

I would ask you to carefully consider what goes into the amended complaint *concerning you personally.* You are only responsible for litigating the *claims you assert on your own behalf against each defendant.* If you should decide that you no longer wish to be involved in this lawsuit as a plaintiff, or that you wish to dismiss one or more of the defendants, the law gives you the absolute right to file your own Notice of Dismissal under Federal Rule of Civil Procedure 41. This right lasts until one of the defendants files an answer. If you have questions about how to dismiss your case or dismiss any of the defendants from your case, I can help you do that. I cannot give you any advice about how to proceed as a plaintiff.

Valerie Peters
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 5

Thank you for your kind attention.

Regards,

SONJA M. DAHL

SMD/lm



**MAIRE & DEEDON**
*A Law Corporation*

2851 PARK MARINA DRIVE, SUITE 300
REDDING, CALIFORNIA 96001-2813

WEBSITE: WWW.MAIRE-LAW.COM

TEL: (530) 246-6050
FAX: (530) 246-6060

PATRICK L. DEEDON
SONJA M. DAHL

March 23, 2023

***Via Email and U.S. Mail:* Ahrossingto444@gmail.com**

Alex Rossington
464 E 6th Avenue
Chico, CA 95926

   Re: *Rossington, et al. vs. Mountain Circle, et al.*

Dear Mr. Rossington:

In lieu of meeting and conferring with you in person or over zoom regarding the amended complaint that we understand is in the works, I would like you to carefully consider the arguments that were made in the motion to dismiss filed on behalf of our clients. Your effort to amend the complaint should take those arguments into account.

In addition, I would like to draw your attention to Federal Rule of Civil Procedure 11, which sets forth the expectations of the federal courts for all litigants, and to Eastern District of California Local Rule 183, which sets forth the expectations of the Eastern District for parties representing themselves:

   **Rule 11— Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions.**

   **(a) Signature.** Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless

Alex Rossington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 2

omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated.

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5 but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in

Alex Rossington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 3

presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

(3) Order. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

(d) Inapplicability to Discovery. Subdivisions (a) through (c) of this rule do not apply to disclosures and discovery requests, responses, objections, and motions that are subject to the provisions of Rules 26 through 37.

## RULE 183 (Fed. R. Civ. P. 83)
## PERSONS APPEARING IN PROPRIA PERSONA

(a) Rules Governing Appearance. Any individual who is representing himself or herself without an attorney must appear personally or by courtesy appearance by an attorney admitted to the Bar of this Court and may not delegate that duty to any other individual, including husband or wife, or any other party on the same

Alex Rossington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 4

side appearing without an attorney. Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil or Criminal Procedure, these Rules, and all other applicable law. All obligations placed on "counsel" by these Rules apply to individuals appearing in propria persona. Failure to comply therewith may be ground for dismissal, judgment by default, or any other sanction appropriate under these Rules. A corporation or other entity may appear only by an attorney.

(b) Address Changes. A party appearing in propria persona shall keep the Court and opposing parties advised as to his or her current address. If mail directed to a plaintiff in propria persona by the Clerk is returned by the U.S. Postal Service, and if such plaintiff fails to notify the Court and opposing parties within sixty-three (63) days thereafter of a current address, the Court may dismiss the action without prejudice for failure to prosecute.

(c) Pro Se Party Exceptions to Electronic Filing. Pro se parties are exempted from the requirement of filing documents electronically. Pro se parties must file documents conventionally, and any person appearing pro se may use electronic filing only with the permission of the assigned Judge. See L.R. 133.

The policy behind these rules is that each plaintiff representing him or herself is personally responsible for the claims they bring before the court. In preparing the amended complaint, you should be confident that each factual claim in the amended complaint is true (or you have a good faith belief that it's true), and that each claim *that you personally assert on your own behalf* is justified under the facts and the law. You're not required to be perfect, but you're also not allowed to assert claims that you know or believe are bogus. California state courts also have similar rules and policies concerning parties who represent themselves. For example, I can't think of any set of circumstances that would give you a legal remedy against Robin Miller, who was not employed by or a board member of the agency at the time you were let go. If you agree you have no viable legal claim against her, you should dismiss her from your lawsuit.

I would ask you to carefully consider what goes into the amended complaint *concerning you personally.* You are only responsible for litigating the *claims you assert on your own behalf against each defendant.* If you should decide that you no longer wish to be involved in this lawsuit as a plaintiff, or that you wish to dismiss one or more of the defendants, the law gives you the absolute right to file your own Notice of Dismissal under Federal Rule of Civil Procedure 41. This right lasts until one of the defendants files an answer. If you have questions about how to dismiss your case or dismiss any of the defendants from your case, I can help you do that. I cannot give you any advice about how to proceed as a plaintiff.

Alex Rossington
Re: *Rossington, et al vs. Mountain Circle, et al.*
March 23, 2023
Page 5


Thank you for your kind attention.

Regards,

SONJA M. DAHL

SMD/lm

# EXHIBIT

# C

1    Shauna Rossington
     2754 Dolphin Bend
2    Chico, CA 95973
     (530) 588-5511
3    DrShaunalr@gmail.com

4    SHAUNA ROSSINGTON, IN PRO PER

5    ALEX ROSSINGTON
     464 E 6th Ave.,
6    Chico, CA 95926
     (530) 375-0441
7    Ahrossington444@gmail.com

8    ALEX ROSSINGTON, IN PRO PER

9    AIDEN ROSSINGTON
     2754 Dolphin Bend
10   Chico, CA 95973
     (530) 616-0623
11   Aiden.rossington@gmail.com

12   AIDEN ROSSINGTON, IN PRO PER

13   JOSEPH CODDINGTON
     604 E Elm St.
14   Urbana, IL 61802
     (828)712-6582
15   josephmcoddington@gmail.com

16   JOSPEH CODDINGTON, IN PRO PER

17   VALERIE PETERS
     464 E 6th St.
18   Chico, CA 95926
     (530) 249-5993
19   Valeriemp0501@gmail.com

20   VALERIE PETERS, IN PRO PER

21

22

23                    **UNITED STATES DISTRICT COURT**

24          **FOR THE EASTERN DISTRICT COURT OF CALIFORNIA**

25

26

27

28

COMPLAINT FOR DAMAGES: Case No: 2:23-CV-00423-KJM-DMC

| | |
|---|---|
| 1  SHAUNA ROSSINGTON | )  Case No.: 2:23-CV- 00423-KJM-DMC |
| ALEX ROSSINGTON | ) |
| 2  AIDEN ROSSINGTON | )  **FIRST AMENDED COMPLAINT FOR** |
| JOSEPH CODDINGTON | )  **DAMAGES FOR:** |
| 3  VALERIE PETERS | ) |

1   SHAUNA ROSSINGTON
  ALEX ROSSINGTON
2   AIDEN ROSSINGTON
  JOSEPH CODDINGTON
3   VALERIE PETERS

4            Plaintiff(s),

5    vs.

6   Mountain Circle Family Services, Inc., dba Sierra
7   Nevada Connections, a California Corporation;

8   JUSTIN MILLER, individually;

9   PAMELA CRESPIN, individually;

10   KATHERINE VAN DOLSEN, individually;

11   ANGIE CARPENTER, individually;

12   SHANNON DOUNG, individually;

13   ROBERT BERRY, individually;

14   BILL POWERS, individually;

15   KACEY REYNOLDS, individually;

16

17   And DOES 1 through 103, inclusive,
            Defendant(s).

Case No.: 2:23-CV- 00423-KJM-DMC

**FIRST AMENDED COMPLAINT FOR DAMAGES FOR:**

1. **FAILURE TO COMPLY WITH EVIDENCE CODE § 945 – ATTORNEY -CLIENT PRIVILEGE.**
2. **FAILURE TO ACCOMMODATE LABOR CODE § 1198.5;**
3. **FAILURE TO COMPLY WITH TERMS OF CONTRACT;**
4. **RETALIATION IN VIOLATION OF FEHA, GOV CODE § 12900 et seq;**
5. **FAILURE TO ENGAGE IN GOOD FAITH AND FAIR DEALING UPON DISMISSAL;**
6. **FAILURE TO COMPLY WITH THE BROWN ACT;**
7. **WRONGFUL TERMINATION IN VIOLATION OF THE BROWN ACT;**
8. **WRONGFUL TERMINATION IN VIOLTATION OF CAL. CODE REGS. TIT 22 § 88063 (10) - ACOUNTABILITY; and**
9. **VIOLATION OF THE CORPORATIONS BY-LAWS 5.8 - PRESIDENT**
10. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**DEMAND FOR A JURY TRIAL**

18

19

20       NOTICE IS HEREBY GIVEN that on April 19, 2023 at 10:00 AM in the U.S. District

21 Court, or as soon thereafter as the matter can be heard in Court Room 304, located at 2986 Bechelli

22 Center, Redding, CA 96002COMES NOW Plaintiffs, SHAUNA ROSSINGTON, ALEX

23 ROSSINGTON, AIDEN ROSSINGTON, JOSEPH CODDINGTON, and VALERIE PETERS,

24 who, and by and through filing IN PRO PER, hereby files this First Amended Complaint under the

25 Code Civ. Proc. § 473(a) and 576. Further, there would be no substantial or undue prejudice, bad

26 faith, undue delay, or futility.

27       Through this Amended Complaint, Plaintiffs seek and agree to remove one Defendant,

28 ROBIN MILLER, as her importance to the case is immaterial. Additionally, Plaintiffs seek to

remove and agree to remove the First Cause of Action and the Eighth Cause of Action, which are federal questions and are not the core regulations to this Wrongful Termination Complaint. These federal regulations were violations after the wrongful termination took place. Therefore, the Plaintiffs now bring claims and Causes of Actions for: Evidence Code § 945; violation of Labor Code § 1198.5; violation of California Civil Code Sections 3300-3302 and 3353-3360; violation of FEHA, Gov Code § 12900 et seq; Failure to Engage in Good Faith and Fair Dealings upon Dismissal, failure to comply with the Brown Act, Wrongful Termination in violation of the Brown Act., Wrongful Termination in violation of Cal. Code Regs. Tit 22 § 880063 (10), Violation of the Corporations By-Laws Article 5.8 – President, and Intentional Infliction of Emotional Distress Plaintiffs thereby allege as follows.

## I.
## PARTIES TO THE CIVIL ACTION

1.      Plaintiff SHAUNA ROSSINGTON (hereinafter referred to as "ROSSINGTON") is over the age of eighteen (18) and is a resident of the State of California.  At all times herein relevant, ROSSINGTON was an employee and Executive Director at MOUNTAIN CIRCLE FAMILY SERVICES, INC., DBA SIERRA NEVADA CONNECTIONS.

2.      Plaintiff ALEX ROSSINGTON (hereinafter referred to as "AROSSINGTON") is over the age of eighteen (18) and is a resident of the State of California.  At all times herein relevant, AROSSINGTON was an employee and the Fundraiser Assistant and Events Coordinator at MOUNTAIN CIRCLE FAMILY SERVICES, INC., DBA SIERRA NEVADA CONNECTIONS.

3.      Plaintiff AIDEN ROSSINGTON (hereinafter referred to as "AIROSSINGTON") is over the age of eighteen (18) and is a resident of the State of California.  At all times herein relevant, AIROSSINGTON was an employee and the IT Manager at MOUNTAIN CIRCLE FAMILY SERVICES, INC., DBA SIERRA NEVADA CONNECTIONS.

4.      Plaintiff JOSEPH CODDINGTON (hereinafter referred to as "CODDINGTON") is over the age of eighteen (18) and was a resident of the State of California on August 4, 2021.  At all times herein relevant, CODDINGTON was an employee and the Fundraiser and Events Director at MOUNTAIN CIRCLE FAMILY SERVICES, INC., DBA SIERRA NEVADA CONNECTIONS.

5.      Plaintiff VALERIE PETERS (hereinafter referred to as "PETERS") is over the

age of eighteen (18) and is a resident of the State of California. At all times herein relevant, PETERS was an employee as the Records Manager Supervisor and General Office Manager the at MOUNTAIN CIRCLE FAMILY SERVICES, INC., DBA SIERRA NEVADA CONNECTIONS. (Hereinafter collectively referred to as "Plaintiffs.")

6.    Defendant MOUNTAIN CIRCLE FAMILY SERVICES, INC., DBA SIERRA NEVADA CONNECTIONS (hereinafter referred to as "MCFS")., is a California Corporation. MCFS is a private nonprofit foster placement agency, which is licensed in California and was dually licensed in the State of Nevada on August 4, 2021, to place foster children into foster homes and provide for their supervision and oversight. Plaintiffs are informed and believe, and thereupon allege, now, and at all times mentioned in this Complaint, MCFS was a California Corporation and the owner and operator of an industry, business, or facility doing business in the State of California and the State of Nevada.

7.    Plaintiffs are informed and believe and thereon allege that defendant, JUSTIN MILLER (Hereinafter collectively referred to "MILLER"), was at all relevant times to this action as a member of the Board of Directors for MCFS, which operated both in California and Nevada. MILLER also represents on the MCFS website as Board of Directors -Treasurer and is recorded with the Secretary of State Statement of Information as the Chief Financial Officer [EXHIBIT C].

8.    Plaintiffs are informed and believe and thereon allege that defendant, PAMELA CRESPIN (Hereinafter collectively referred to "CRESPIN"), was at all relevant times to this action as a member of the Board of Directors for MCFS, which operated both in California and Nevada.

9.    Plaintiffs are informed and believe and thereon allege that defendant, KATHERINE VAN DOLSEN (Hereinafter collectively referred to "VAN DOLSEN"), was at all relevant times to this action as Program Director and interim Executive Director for the State of California and State of Nevada programs for MCFS, which operated both in California and Nevada.

10.    Plaintiffs are informed and believe and thereon allege that defendant, ANGIE CARPENTER (Hereinafter collectively referred to "CARPENTER"), was at all relevant times to this action as the Financial Manager for the State of California and State of Nevada programs for MCFS, which operated both in California and Nevada. CARPENTER is also the cousin to MILLER.

- 4 -

1
2
CARPENTER represents herself as agent for the Corporation as of November 11, 2022

[EXHIBIT C].

3
4
11.     Plaintiffs are informed and believe and thereon allege that defendant, SHANNON DOUNG

(Hereinafter collectively referred to "DOUNG"), was at all relevant times to this action as the

5
6
Financial Assistant to CARPENTER for the State of California and State of Nevada programs for

MCFS.

7
8
12.     Plaintiffs are informed and believe and thereon allege that defendant, ROBERT BERRY

(Hereinafter collectively referred to "BERRY"), was at all relevant times to this action as an

9
10
unauthorized individual who created a Board Agenda on August 2, 2021, as a private citizen and

without proper authority and giving advice to the Board of Directors at the illegal and unauthorized

11
12
Board of Director's meeting of MCFS on August 4, 2021. BERRY was then retained as new

counsel for the Board of Directors sometime during this Board meeting. BERRY does not represent

13
14
as an agent for the Corporation until November 29, 2022 [EXHIBIT C].

15
16
13.     Additionally, the Board Agenda authored by BERRY clearly demonstrates the decisions to

be voted on at the August 4, 2021, were already predetermined and a violation of governing rules

for Board of Directors meetings. BERRY violated attorney-client privileges and violated Rule 3.10.

17
18
14.     Plaintiffs are informed and believe and thereon allege that defendant, BILL POWERS

(Hereinafter collectively referred to "POWERS"), was at all relevant times to this action as a

19
20
member of the Board of Directors for MCFS, which operated both in California and Nevada.

21
22
15.     Plaintiffs are informed and believe and thereon allege that defendant, KACEY REYNOLDS

(Hereinafter collectively referred to "REYNOLDS"), was at all relevant times to this action as a

individual who presented unauthorized and illegally obtained documents regarding ROSSINGTON

23
24
to BERRY, as a private citizen on August 1, 2021. REYNOLDS now represents herself on

MCFS website as Chairperson of the Board and is recorded with the Secretary of State Statement of

25
26
Information as Chief Executive Officer for MCFS [EXHIBIT C]. (Hereinafter collectively referred

to as "defendants.")

27
28
16.     Defendants, and each of them, are now and/or at all times mentioned in this Complaint, were

members of and/or engaged in a joint venture, joint employment, partnership, hostile takeover,

1

2

3

4

common enterprise, and/or attended the unauthorized and illegal Board of Directors Meeting on

August 4, 2021, and whose conduct and unfair dealings have been malicious and wanton since the

constructive termination of all Plaintiffs.

17.    Plaintiffs are informed and believe and thereon alleges that at all times mentioned in this

5

6

7

8

9

10

11

12

13

Complaint, Defendants were initially private citizens who became either the Principle, Board of

Directors, General Counsel/agent and/or employees of their co-Defendants, and in doing the

things alleged in this Complaint were acting within the course and scope of such agency and

employment and acted in such a manner as to ratify the collective conduct of their co-Defendants.

Plaintiffs are informed and believe and thereon allege that each Defendant aided and abetted each

other such that the principal is liable for the acts of each Defendant. Additionally, that the agents are

vicariously liable to the principal because an agent is obligated to provide protection to or care for

another and the failure to do so results in liability.

14

## II.
## JURISDICTION AND VENUE

15

16

17

18.    The Superior Court of the State of California has jurisdiction over this action pursuant to

California Constitution Article VI, section 10, which grants the Superior Court "original jurisdiction

in all cases except those given by statute to other trial courts."

18

19

19.    Jurisdiction is proper because Plaintiffs worked for the Defendants in the State of California,

and all actions relevant to this Complaint occurred in the State of California.

20

21

22

23

24

20.    Venue is proper because Plaintiffs are informed and believe and thereon alleges, and/or

DOES 1- 102, were doing business in the County of Butte, State of California. Plaintiffs worked in

the County of Butte, the relevant actions set forth herein occurred in the County of Butte, and that

the County of Butte is where Defendants' records relevant to the alleged unlawful practices are

maintained and administered.

25

26

21.    Subject matter in this action is properly heard in this Court, as the action incorporates an

amount in controversy as set forth in the Complaint, which exceeds $25,000.

27

28

22.    Prior to filing this action, Plaintiffs timely exhausted their administrative remedies, by

timely filing an administrative complaint with the Department of Fair Employment and Housing

1  ("DFEH") and receiving a DFEH right to sue letter on August 5, 2022 [EXHIBIT D] and an

2  amended right to sue letter [EXHIBIT E]

3  23.  Plaintiffs' bring claims for violations of  Evidence Code § 945; violation of Labor Code §

4  1198.5; violation of California Civil Code Sections 3300-3302 and 3353-3360; violation of FEHA,

5  Gov Code § 12900 et seq; Failure to Engage in Good Faith and Fair Dealings upon Dismissal,

6  failure to comply with the Brown Act, Wrongful Termination in violation of the Brown Act.,

7  Wrongful Termination in violation of Cal. Code Regs. Tit 22 § 880063 (10), Violation of the

8  Corporations By-Laws Article 5.8 – President, and Intentional Infliction of Emotional Distress

9
## III.
## FACTUAL ALLEGATIONS
10

11    **A.    ROSSINGTON**

12  24.  Rossington was hired on January 8, 2001, as the Executive Director for the Defendant

13  MCFS and was hired by the Board of Directors.  Upon immediate employment, ROSSINGTON

14  discovered that the Corporation was running on a negative cash flow of $90,000 a day.

15  ROSSINGTON did not take a paycheck the first ninety (90) days due to this financial discovery.

16  Over her years of service, she directed and grew MCFS into a company that grossed over 4.5

17  million. She was able to pay its employees a living wage and accomplish the family services for

18  which it was designed.

19  25.    On or around August 1, 2021, a private citizen/City Council member REYNOLDS,

20  (BERRY testified under oath at the Labor hearing on October 21, 2022 that in fact he was brought

21  the document by REYNOLDS) BERRY is not truthful in his declaration about page 2, para. 2, line

22  6 [EXHIBIT F]. Either CARPENTER and/or VAN DOLSEN, who were subordinates of

23  ROSSINGTON took this document from the desk of ROSSINGTON and gave to REYNOLDS,

24  who had zero authority to distribute the document, and have BERRY, a private citizen, review,

25  consult or contact the Board on what actions should be taken on August 1, 2021, which was a

26  Sunday.

27  26.    This document alleged accusations from Community Care Licensing (hereinafter CCL).

28  However, these accusations had been in appeal for a year with CCL, who refused to follow their

own policies regarding their appeal process.  Attached hereto are letters of clearances from CCL, clearing ROSSINGTON of removing files, malfeasance and misappropriation of funds [EXHIBIT G] and yet CCL still moved against ROSSINGTON as an individual on July 28, 2021those specific allegations.  Additionally, most of the allegations were made by previous employees, who had been terminated by ROSSINGTON and then proceeded to file a lawsuit against MCFS, which was settled in July of 2019. The allegations to CCL were then made in September of 2019, however, those employees had signed an NDA of which was not upheld.  CCL violated the terms of that NDA, and reference Patrick Deedon as the attorney who sealed the file, and went ahead and took the "testimony" of those employees, Michelle Noonberg, Jamilyn Purvis, and Sandra Jersey, who broke the stipulations of the NDA [EXHIBIT H].

27.     The CCL allegations were then amended to include MCFS, the Corporation, on August 11, 2021, after ROSSINGTON's constructive termination. See BERRY's Declaration page 2, para. 2, lines 6 through 12 [EXHIBIT F].  Before the amendment on August 11, 2021, the private citizen REYNOLDS, VAN DOLSEN, CARPENTER or BERRY, had **zero** authority to obtain, read, create an action, or create the agenda on August 2, 2021, on behalf of ROSSINGTON.

28.     BERRY then proceeds, on his own accord and not due to a constitutional right for free speech, but misuses his standing as an attorney, to contact Board members to discuss the actions the Board of Directors should take. On August 2, 2021, BERRY creates an Agenda for a Board meeting to be held on August 4, 2021 [EXHIBIT I]. BERRY had zero authority to contact Board members and to create an agenda.  This is a violation of the Brown Act and the By-Laws for MCFS. Additionally, the Agenda created for the August 4, 2021, Board meeting clearly demonstrates decisions were made before the Board meeting which was held on August 4, 2021, and was distributed forty-five (45) minutes after the Board meeting commenced on August 4, 2021 via email from BERRY to the Board members.   Another violation of the Brown Act.  Additionally, in a declaration by Joy Amaro, Executive Director hired in January of 2022, stated to the Unemployment Board during the appeal process,

> "Ms. Rossington stated this was premeditated since she was locked out of her email and the locks were changed.  The Judge asked me why this would habe ben done before the board vote.  I stated that the agenda stated some sort of action was going to be taken, and what

ever that action would be, **the results would be the same** with the email and the locks to safeguard the information and property of SNC [EXHIBIT J]

ROSSINGTON won the unemployment appeal because the Unemployment Judge agreed that this was in fact a forced resignation or constructive termination.

29.     During June of 2021, the President of the Board of Directors resigned. The Board appointed no interim President, yet on August 4, 2021, several members of the Board convened without a Board President or the Executive Director to legally call the meeting to order, however, BERRY, a private citizen calls the meeting to order.  A clear violation of the By-Laws [EXHIBIT K] for the Corporation

MCFS; 5.8 – President:

> "The President shall be the Chief Executive Officer of the corporation and shall subject to the control of the Board of Directors,.....In the absence of the Chair of the Board or if there is none, the President shall preside at all meetings of the Board of Directors......"

As well as Cal. Code Regs. Tit 22 §88063 (10) - Accountability, which states:

> "Require that the chief executive officer, administrator, or designee be present at all board of directors meetings during which the operation or the policies of the foster family agency are discussed."

The Brown Act requires agendas to be posted at least seventy-two (72) hours in advance of the meeting (Section 54954.2).  The Defendants violated the Brown Act by meeting unofficially on or before August 2, 2021 and making decisions to retain BERRY during the August 4, 2021 meeting, per the agenda, item 10, as council for MCFS, Inc., **despite retained counsel still being in effect.** For BERRY, as a private citizen abusing his position as an attorney, to create an unauthorized agenda, which outlined the strategic and constructive termination of Executive Director ROSSINGTON and clearly instructed CARPENTER, Agenda, item 7 (e) as what to do, and the termination of AROSSINGTON, AIROSSINGTON, CODDINGTON and PETERS.

30.     BERRY took roll call and ensured there was a quorum, without a Board Resolution for this authorization and since there was not the President, the Executive Director  or the Administrator (all refers to Executive Director) in attendance, a Board resolution would not have been impossible.  BERRY calling this meeting to order, per his declaration, page 2, paragraph 3,

- 9 -

1  line 22, was not in accordance with any law or regulation. Attorney on retainer,

2  BRET COOK (herein after "COOK") who was an authorized agent for the MCFS Corporation

3  since 2010, see Board Resolution [EXHIBIT L]was then asked to leave the meeting, preplanned per

4  the Agenda, item 3 (e). However, COOK had previously emailed the Board about the legal

5  direction the Board of Directors should take on July 28, 2021 [EXHIBIT M].

6  31.     BERRY then enters into a closed session, which per the Brown Act, the Agenda must

7  include a brief description of the closed session on the agenda, there is no mention of a closed

8  session on the agenda. However, per the Brown Act, retained counsel can enter a closed session.

9  BERRY was not retained as counsel, per the redacted minutes, page 3 line 4, therefore he entered

10 the closed session as public member, which discussed actions to take against ROSSINGTON

11 [EXHIBIT N].

12 32.     While in closed session, Miller becomes Board President and BERRY now becomes

13 retained counsel. Therefore, everything BERRY authored, initiated, acted upon, stated, or advised

14 prior this he is liable for as he was a private citizen but is not protected by any constitutional rights

15 of free speech. It is a thin argument that anything BERRY did after this is protected as he was

16 retained unlawfully.

17 33.     Additionally, on August 6, 2021, the Board held another meeting and BERRY states in his

18 declaration page 2, para. 2 line 24, that "he confirmed a quorum was present and that the minutes

19 were properly recorded and executed." However, per these redacted minutes  there were

20 only two board members who attended and per the By-Laws of the Corporation, a full Board is five

21 (5) members and three (3) members must be present for a quorum, Article 4, 4.2 and 4.11. Again,

22 this was an illegal and unethical board meeting and any decisions made or acted upon were not

23 legal.

24 34.     Around 9:00 pm on the evening of August 4, 2021, ROSSINGTON discovered that she was

25 locked out of her email and then learned of the intent of the Board of Directors to terminate her

26 employment. However, a Board member who resigned during the Board meeting on August 4, 2021

27 stated that what the Board was doing was unethical. Resigned Board member then called

28 ROSSINGTON and stated that they would be terminating ROSSINGTON but not until her Board

- 10 -

contract had been nullified and her vacation hours removed. Upon discovery before trial, of the Plaintiffs obtaining the un redacted minutes from the August 4, 202, Board meeting, this would be revealed.

35.    ROSSINGTON then went to the office space at 2550 Floral Ave, Suite 20, Chico, CA 95973 around 10:00 pm on August 4, 2021, and found that the locks had been physically removed and completely new locks had been installed. However, if the Board meeting did not adjourn till 9:02 PM that evening, how could the locks possibly be physically changed out in less than one hour. To call a locksmith, have them arrive and have the locks changed would have been physically impossible, these locks were pre-arranged to be changed sometime between 6:00 PM and 10:00PM. Upon discovery these facts would be revealed. Again, another fact verifying that decisions had been made before the Board convened on August 4, 2021. Due to this learned information, around 1:00 am on the morning of August 5, 2021, ROSSINGTON tendered her immediate forced resignation in order to memorialize her employment contract and her accrued vacation of over 20 years.

36.    On August 6, 2021, ROSSINGTON wrote an email to retained council. Eugene Chittock, Esq., et al., and legal assistant Seth Shepard by Plaintiffs and copied all Plaintiff's on their personal emails. Defendant DOUNG and CARPENTER intercepted this email by breaking into AROSSINGTON's personal Email. See SAR memo [EXHIBIT O]. DOUNG and CARPENTER printed this email out and made notes on this email and provided a copy of this attorney-client confidential email to BERRY. Of note, BERRY writes a note on the SAR memo, "Hack event SAR", then writes on the email "Threat to "create Havoc", and then on his email "My Letter Warning about Hacking." During trial, a handwriting specialist would confirm that these notes are in fact written by the same person. DOUNG creating a SAR memo on August 6, 2021, and stating "called Tripath to come in and help us prevent them from hacking our computers." Is a definite cover up to BERRY accusing Plaintiffs of hacking, because their email server went down for two hours on August 9, 2021, and trying to cover up his mistake with justification. See timeline of emails sent on August 9, 2021 [EXHIBIT P].

37.    On August 8, 2021, BERRY left a voicemail message on ROSSINGTON's cell phone using threats and intimidation tactics and demanding that ROSSINGTON call him back [EXHIBIT

- 11 -

Q]. At this point, ROSSINGTON had no idea who BERRY was and this was the first contact from BERRY.   BERRY claims that he tried reaching ROSSINGTON several times, declaration page 3, para 11, line 24 and 25, this is factually untrue.  Additionally, BERRY states in his declaration, "to prevent them from interfering with MCFS's administrative system any further" page 3, para 11, line 25 and 26.  How is the Defendants breaking into the Plaintiff's, AROSSINGTON personal email any demonstration that Plaintiffs were interfering with MCFS's administrative system, when in fact the Defendants hacked the Plaintiffs' email.  This line of logic is preposterous.  Additionally, BERRY states he made a police report "regarding Shauna Rossington's conduct because she refused to return any of my calls or emails" page 3, para 11, line 26 and 27.  How is not returning BERRY's calls criminal?  Again, a police report is not presented as evidence along with BERRY's declaration.

38.    On August 9, 2021, BERRY then sent an email to all Plaintiffs accusing them of cyber hacking and stated, "You will all be listed as co-conspirators in this criminal activity, and will be subject to enforcement action. This is a promise." [EXHIBIT R].

> Rule 3.10 Threatening Criminal, Administrative, or Disciplinary Charges, states:
> a) A lawyer shall not threaten to present criminal, administrative, or disciplinary charges to obtain an advantage in a civil dispute.
> (b) As used in paragraph (a) of this rule, the term "administrative charges" means the filing or lodging of a complaint with any governmental organization that may order or recommend the loss or suspension of a license, or may impose or recommend the imposition of a fine, pecuniary sanction, or other sanction of a quasi-criminal nature but does not include filing charges with an administrative entity required by law as a condition precedent to maintaining a civil action.
> (c) As used in this rule, the term "civil dispute" means a controversy or potential controversy over the rights and duties of two or more persons* under civil law, whether or not an action has been commenced, and includes an administrative proceeding of a quasi-civil nature pending before a federal, state, or local governmental entity.

Forty-five (45) minutes after receiving this email, the Chico Police Department was at the door of ROSSINGTON and AIROSSINGTON.  There is no possible way a police report was filed and acted upon within forty-five (45) minutes of BERRY sending that email.  ROSSINGTON and AIROSSINGTON were so terrified that they ran and hid in the closet.  The two police officers had their lights flashing. and were pounding on the door demanding the door be opened.  After about five minutes the police officers left.  Of note, DOUNG was dating the son of the ex-chief of police for the City of Chico at the time of her employment and when the police were sent to

1
2
3   ROSSINGTON and AIROSSINGTON's residence. To date, both ROSSINGTON and
    AIROSSINGTON experience Post Traumatic Stress Disorder (PTSD) when there is an unknown
4   knock on their front door.

5   39.   ROSSINGTON, along with Plaintiffs requested copies of their personnel file, (August 6,
6   2021) which Labor Code 1198.5 clearly outlines an employer must honor this request within thirty
7   (30) days. However, personnel files were not made available to Plaintiffs from defendants until
    ninety (90) days later.
8
9   40.   Additionally, ROSSINGTON made many requests to obtain her personal belongings from
    the Chico, Greenville, CA, and Reno, Nevada offices many times, however, her belongings
10  were not made available to her until six (6) months later. ROSSINGTON is still missing personal
11  items and has put in many requests for these items to be returned and to date those communications
12  have not been answered or honored.
13
14  41.   ROSSINGTON on September 28, 2022 and October 5, 2022 requested Board minutes for the
    June 28, 2021 meeting in order to defend her position for vacation accrued. ROSSINGTON had
15  discussed the amount of vacation time at this Board meeting. BERRY responded stating, "MCFS is
16  under no obligation to release..Board minutes."[EXHIBIT S] To date, ROSSINGTON has not been
17  paid her vacation pay, which the Labor Board awarded a judgment of $87,222.40 on November 4,
18  2022. Defendants continue to appeal this decision. Defendants' attorney for the Labor suit (Case
19  No: 22CV02781), Patricia Savage, (hereinafter "SAVAGE") has sent intimidating emails,
20  threatening to file a cross complaint unless ROSSINGTON settles for half the awarded amount.
21
22  42.   Defendant's attorney of record, SAVAGE sent ROSSINGTON a copy of the cross
    complaint that the Defendants' threaten to file with the Superior Court of Butte County, but to date
23  have not filed the cross complaint [EXHIBIT T]. SAVAGE indicates that she **did not** author the
24  cross complaint. ROSSINGTON subpoenaed SAVAGE on who authored this cross complaint as it
25  is supposition it was BERRY who authored this document. Only to validate the continued
26  harassment form BERRY and his continued malicious and wanton acts and dealings with
27  ROSSINGTON.
28
    43.   Additionally, per ROSSINGTON'S employment contract, which was ratified by the Board of

Directors on November 9, 2011, which clearly outlined if ROSSINGTON was terminated a year

salary plus health benefits were due. These wages or benefits have not been paid or honored

[EXHIBIT U]. Per the redacted minutes from August 4, 2021, a permanent administrative leave is

termination. It is just a matter of **when** the termination is going to happen.

**B.    AROSSINGTON**

44.    AROSSINGTON had been surrounded by all things MCFS since she was two (2) years old.

Her mother, ROSSINGTON, being the Executive Director for almost twenty-one (21) years, as a

child AROSSINGTON only experienced her mother's dedication, loyalty, and sacrifice to a mission

she had always been called to uphold. The mission of connecting kids with families and making a

difference, no matter how small or large, in peoples' lives. AROSSINGTON experienced many

times how the work of the organization, MCFS, would spill over into their family life.

AROSSINGTON never experienced ROSSINGTON having a day off or a true vacation as

ROSSINGTON was always answering emails, texts and cell calls. AROSSINGTON, since she can

remember, spent the majority of her childhood in the MCFS office(s). AROSSNGTON can recall

playing "office" before she played "house." As soon as she was able, AROSSINGTON began

assisting the secretaries and social workers with mundane tasks such as filing random notes or

assisting in cleaning around the office. Eventually, when the creation of the International Marathon

fundraising event "Running with the Bears tm (hereinafter referred to RWTB) happened in 2012,

AROSSINGTON became the volunteered Bear Mascot. She was the mascot at this event for many

years and many other events which were held to promote RWTB, to include the California

International Marathon (hereinafter referred to as CIM).

45.    AROSSINGTON was eventually hired on June 6, 2015, and ratified by the Board of

Directors on June 6, 2015, as an employee. AROSSINGTON performed many duties throughout the

years with complete dedication, loyalty, and passion. These duties included janitorial,

administrative assistant, and eventually became the assistant to the Director of Fundraising,

1  CODDINGTON.

2  46.    AROSSINGTON had worked late, without clocking in overtime, on August 4, 2021,

3  approximately 6:00 PM that evening. When AROSSINGTON had left, the locks to the office at

4  2550 Floral Ave, Suite 20, Chico, CA 95973 had not been physically removed or changed.

5  However, around 9 pm on the night of August 4, 2021, AROSSINGTON discovered she had been

6  locked out of her business email. On the morning of August 5, 2021, AROSSINGTON arrived at

7  the office located at 2550 Floral Ave, Suite 20, Chico, CA 95973 at 8:00 am and was not able to

8
9  enter because the locks had physically removed and changed to new locks, however, CARPENTER

10  arrived and let AROSSINGTON, along with PETERS into the building. AROSSINGTON, along

11  with PETERS were asked by DOUNG to go to the conference room, where CARPENTER and

12  DOUNG gave AROSSINGTON and PETERS their AT-WILL termination notices. CARPENTER

13  then requested that AROSSINGTON and PETERS go clean out their desks and remove their

14  personal items. Both AROSSINGTON and PETERS were immediately treated like they were

15  enemies of the company as though they were criminals. AROSSOINGTON became quite

16  emotional as she tried to remove twenty (20) years of her life., including some flowers given to her

17  only weeks prior for the celebration of her six official years with the company. Around 9:30 am,

18  CARPENTER entered and stated to AROSSINGTON that her crying was distracting and disturbing

19
20  others and that she would have to come back after normal work hours to continue clearing off her

21  desk, of which AROSSINGTON did. However, again was watched like a criminal and accused of

22  deleting important information. However, all company computers were backed-up daily into the

23  cloud through the program called Carbonite. CARPENTER also offered to write both

24  AROSSINGTON and PETERS letters of recommendation and cried the entire time. Yet, per the

25  board agenda and BERRY's declaration, these employees were considered to be a liability to

26  MCFS.

27  47.    At around 7:30 pm, VAN DOLSEN, the new interim Executive Director who had not shown

28  her presence all day, called DOUNG and loudly displayed disgust that AROSSINGTON was still

1  there. AROSSINGTON then finished, politely thanked CARPENTER and left the premises. All

2  computers were shut off and AROSSINGTON ensured she had logged out of all personal accounts

3  to include her personal email. Additionally, when AROSSINGTON and PETERS went to clear out

4  their desks and computers the administrative passwords for their computers had already been

5  changed and DOUNG had to log them in. Therefore, in BERRY's declaration page 4, para 13, line

6  6 is factually untrue. DOUNG then on August 6, 2021, without permission or authority, hacked

7  AROSSINGTON'S personal email on a MCFS computer at the premises of 2550 Floral Ave, Suite

8
9  20, Chico, CA 95973 and intercepted attorney-client privileged communications, printed the email

10 and gave to CARPENTER and was read by BERRY.

11 48.    AROSSINGTON on August 9, 2021 received an email from BERRY accusing all Plaintiffs

12 of cyber-hacking and used the email that had been intercepted on August 6, 2021 by DOUNG from

13 AROSSINGTON'S personal email as evidence for his accusation of cyber hacking, per the hand-

14 written note in CARPENTER'S handwriting on the email.

15 49.    ARSSOINGTON'S termination was illegal and unauthorized at the board meeting on August

16 4, 2021, which was in violation of the Brown Act. Wherein this decision granted authority to

17 interim Executive Director, VAN DOLSEN to terminate employees on the basis of their

18 relationship with ROSSINGTON. In addition, knowing that AIROSSINGTON would not defame

19 or disparage the character or reputation of ROSSINGTON and would defend her name.

20
       **B.    AIROSSINGTON**

21
22 50.    AIROSSINGTON was born on November 2, 2002 and six (6) weeks later he was at the office

23 with his mother ROSSINGTON. AIROSSINGTON lived his younger years growing, playing and

24 volunteering for MCFS. MCFS was his home away from home and was a second family. There are

25 many pictures of him playing and assisting around the office as a young child. AIROSSINGTON'S

26 loyalty and dedication to the mission of the organization was part of his inner being. When

27 AIROSSINGTON was old enough, he was hired to work the point-of-sale machine when selling

28 merchandise for the International Marathon, RWTB. AIROSSINGTON also volunteered his time

   when MCFS hosted a booth at CIM in Sacramento, CA for many years.

51.    AIROSSINGTON was then hired by ROSSINGTON and ratified by the Board of Directors on January 5, 2021. AIROSSINGTON was employed to provide services as an IT Manager. In doing the work that he was hired to do, AIROSSINGTON performed his duties beyond expectations with complete dedication and with great benefit to the MCFS corporation and Defendants. On the night of August 4, 2021, AIROSSINGTON discovered he had been locked out of his business email. At the commencement of normal business hours on August 5, 2021, AROSSINGTON brought AIROSSINGTON his final check to his residence of 2754 Dolphin Bend, Chico, CA 95973, however, there was no AT-WILL termination letter which accompanied AIROSSINGTON's final check. However, AIROSSINGTON had been terminated according to AROSSINGTON who verbally told AIROSSINGTON that he had been terminated. CODDINGTON had been terminated, and PETERS had been terminated.  To date there has never been an official letter or verbal communication stating that MCFS and/or Defendants exercised their AT-WILL policy and terminated AIROSSINGTON's employment.

52.    However, AIROSSINGTON's termination was illegal and unauthorized at the Board meeting on August 4, 2021, was unauthorized, illegal and in violation of the Brown Act, where this decision granting authority to interim Executive Director, VAN DOLSEN to terminate employees on the basis of their relationship with ROSSINGTON.  In addition, knowing that AIROSSINGTON would not defame or disparage the character or reputation of ROSSINGTON and would defend her name.

### C.    CODDINGTON

53.    CODDINGTON was hired by ROSSINGTON and ratified by the Board of Directors on January 1, 2021.  CODDINGTON was hired to perform the duties of Director of Fundraiser and successfully completed his first fundraiser, the Bear Growl Gravel Grinder, for MCFS on July 9, 2021, which grossed over $35, 000.  However, in January of 2021, a dinner meeting was held at UnWined restaurant, Chico, CA which REYNOLDS attended, as a member of City Council. ROSSINGTON and CODDINGTON pitched to City Council member REYNOLDS the idea of moving the International Marathon, RWTB to Chico, CA and how this would greatly benefit the town of Chico and MCFS. On the night of August 4, 2021, CODDINGTON discovered that he had

- 17 -

been locked out of his business email account.

54.   On August 5, 2021, CODDINGTON was informed over the phone, by CARPENTER, that he was being terminated At-Will and without cause. According to CARPENTER, she stated, "You are friends with Shauna." However, on August 7, 2021, via a phone conversation, CARPENTER also stated that the Defendants wanted to re-hire CODDINGTON, "That they had made a mistake in firing him and would he write a proposal?" CODDINGTON set out to write his proposal for a re-hire, but then was accused of cyber-hacking by BERRY on August 9, 2021 and threatened with criminal charges.

55.   REYNOLDS and BERRY have a known personal and professional relationship. See Facebook post about the true nature of their relationship [EXHIBIT V]. CODDINGTON was terminated from his employment because REYNOLDS and BERRY (now Agent and Chief Executive Officer) wanted him gone in order to further their political aspirations by being the individuals who would bring the  RWTB events to Butte County and the town of Chico, CA.  and because CODDINGTON spoke affirmatively and in favor of said Executive Director, ROSSINGTON, and refused to defame her name, character and reputation.

56.   As a job requirement CODDINGTON had moved to Greenville, CA and had significant personnel property at all the offices. It took six (6) months for his property to be returned. However, upon receipt CODDINGTON was aware of specific items that were left in the console of the company truck, a United States Marine Corps graduation Ring and a Bontrager wrench, the truck was now being driven by VAN DOLSEN.  Despite many requests for these specific sentimental items from the date of termination CODDINGTON was informed that MCFS had returned all property and that MCFS did not have the items.  CODDINGTON visited the MCFS Chico office on or about June of 2022 to ask one last time if he could look in the company truck in hopes to locate the missing USMC Ring and wrench. Upon asking the front desk employee about the USMC Ring the employee immediately opened the desk drawer produced the items that MCFS claimed to not have possession of. This clearly indicated that they had known about the items and refused to return the items to CODDINGTON out of malice

57.   In doing the work that CODDINGTON was hired to do, CODDINGTON performed his

- 18 -

1
2  duties beyond expectations and with complete dedication and with great benefit to the Defendants,
3  foster families, foster children and the mission of MCFS.  However, CODDINGTON was given the
4  reason of his supposed "friendship" with ROSSINGTON, who herself was unlawfully terminated.
5  ROSSINGTON had never met CODDINGTON before his interview process and his hiring of
   January 1, 2021.
6

7        **D.   PETERS**

8  58.  PETERS was hired on January 8, 2019, however, PETERS had volunteered many hours prior
9  to her hiring assisting the RWTB event. PETERS was ratified by the Board of Directors.  PETERS
10 had various jobs to include visit coordinator, which included supervising birth parents having visits
11 with their children placed in foster care, assisting with monitoring a college grant which MCFS had
12 been awarded, which was directed by CRESPIN at Feather River College, and finally as the
13 Supervisor of Records.  In all duties, PETERS went above and beyond the job requirements and
14 volunteered many unpaid hours to the mission of the organization.

15 59.  On August 4, 2021, around 9:00 PM, PETERS was locked out of her work email and on the
16 morning of August 5, 2021, DOUNG and CARPENTER informed her via the AT-WILL policy of
17 MCFS, that her employment was terminated without cause.  PETERS was locked out of her
18 company computer because the administrative passwords had been changed and DOUNG had to log
19 PETERS in so she could clear her personal information off of the computer. PETERS ensured her
20 computer was shut-off when she left and no personal information was left up. However, on August
21 7, 2021, during the phone call that CARPENTER had with CODDINGTON, CARPENTER stated
22 that PETERS was terminated because of her personal relationship with ROSSINGTON and that
23 PETERS' mother had been fired two (2) years prior from MCFS and PETERS should have been
24 fired then.  However, PETERS in the two years following remained loyal and dedicated to her job
25 duties.  However, PETERS' termination was illegal and unauthorized as the board meeting on
26 August 4, 2021 was unauthorized, illegal, and in violation of the Brown Act, where this decision
27 granting authority to interim Executive Director, VAN DOLSEN to terminate employees on the
28 basis of their "relationship" with ROSSINGTON. However, VAN DOLSEN made this decision

1  knowing that PETERS would not defame or disparage the character or reputation of ROSSINGTON
2  and would defend ROSSINGTON's name.

3                                   **I. FIRST CAUSE OF ACTION**

4                    **FAILURE TO COMPLY WITH EVIDENCE CODE § 945**

5  60.    Plaintiffs restates and incorporates by this reference as if fully set forth herein paragraphs 1
6  through 59 of this Complaint.

7  61.    At all times herein mentioned the Evidence Code § 945 was in full force and effect and was
8  binding on Defendants, as Defendants are either Board of Directors, Agents, Employees of MCFS,
9  a nonprofit organization.

10  62.    United States v. Maxwell, 45 M.J. 406, 417-19 (C.A.A.F. 1996) ("The fact that an
11  unauthorized 'hacker' might intercept an email message does not diminish the legitimate
12  expectation of privacy in any way."). DOUNG hacked AROSSINGTON'S personal email, read
13  and printed out the confidential email between Plaintiffs and their retained council, Eugene
14  Chittock, Esq. et al., and legal assistant, Seth Shepard, which was then presented to CARPENTER
15  BERRY and the Board of Directors. BERRY was ethically bound to tell Defendants to destroy the
16  email, however, BERRY used information in the email to accuse Plaintiffs of cyber-hacking and
17  then sent Chico Police, to ROSSINGTON and AIROSSINGTON'S residence as well as used the
18  email as part of his defense, exhibit J in Case No: 2:23-CV-00423-KJM-DMC [EXHIBIT W].

19  63.    As a result of the conduct of Defendants, Plaintiffs, ROSSINGTON, AROSSINGTON,
20  AIROSSINGTON and CODDINGTON only (PETERS was inadvertently left off of this email)
21  have suffered emotional distress, humiliation, intimidation, violation of privacy. Defendants acted
22  in conscious disregard of Plaintiffs' rights. Plaintiff is thus entitled to recovery punitive damages
23  from defendants in an amount as set forth below.

24                                **II. SECOND CAUSE OF ACTION**

25                   **FAILURE TO ACCOMMODATE LABOR CODE § 1198.5**

26  64.    Plaintiffs restates and incorporates by this reference as if fully set forth herein paragraphs 1
27  through 63 of this Complaint.

28

1  65.    At all times herein mentioned the Labor Code § 1198.5 was in full force and effect and was

2  binding on Defendants, as Defendants are either Board of Directors, Agents, Employees of MCFS,

3  a nonprofit organization.

4  66.    Labor Code § 1198.5(k) state, "The employer must make the personnel file/performance

5  documents available to the worker or his representative within 30 days from the date it receives a

6  written request. If the employer fails to comply, the employee can recover a $750 penalty from the

7  employer."

8  67.    As a result of the conduct of Defendants, Plaintiffs seek the reasonable fines be applied and

9  costs incurred in this litigation in the an amount according to proof.

10  ### III. THIRD CAUSE OF ACTION

11  ### FAILURE TO COMPY WITH BREACH OF CONTRACT

12  ### CALIFORNIA CIVIL CODE§ 3300

13  68.    Plaintiffs restates and incorporates by this reference as if fully set forth herein paragraphs 1

14  through 67 of this Complaint.

15  69.    At all times herein mentioned the California Civil Code § 3300 was in full force and effect

16  and was binding on Defendants, as Defendants are either Board of Directors, Agents, Employees of

17  MCFS, a nonprofit organization.

18  70.    On November 11, 2011, an employment contract was entered into by the Board of Directors

19  and ROSSINGTON.  Page five (5), Section Ten (10) (B) states.

20  "Termination Without Cause: Termination Payment.  EMPLOYEE's employment with

21  Employer shall be "at-will." No cause shall be required to terminate EMPLOYEE.

22  However, Employer shall give EMPLOYEE 90 days' prior written notice of termination.  If

23  EMPLOYEE's employment is terminated under this Paragraph, Employee shall receive

24  payment for all accrued salary, vacation time, and benefits under benefit plans of Employer

25  through the Termination Date, which for purposes of this Paragraph shall be the date

26  specified in the notice from Employer. Provided that Employee executes a general release in

27  favor of Employer in a form acceptable to Employer prior to the Termination Date,

28  Employer shall also pay to Employee as severance pay an amount equal to 12 months of her

- 21 -

1  then base salary, less standard withholdings for tax and Social Security, Medicare, and state

2  disability tax purposes, payable over a 12-month term in monthly prorate payments

3  commencing after the effective date of the release. To the extent Employer's group health

4  policy allows, EMPLOYEE's health insurance shall be paid during the time severance pay is

5  paid to EMPOYEE. Except as otherwise provided in this paragraph, all benefits provided

6  by Employer to EMPLOEE under this Agreement or otherwise shall cease as of the

7  Termination Date.

8  71.    As a result of the conduct of Defendants, Plaintiff, ROSSINGTON only has suffered

9  emotional distress, humiliation, and intimidation. As a direct and proximate result of the unlawful

10 conduct of Defendants and each of them, Plaintiff has suffered special damages including but not

11 omitted to past and future loss of income, benefits, medical expenses, mental health expenses

12 (PTSD), and other damages to be proven at the time of trial.

13                                      **IV. FOURTH CAUSE OF ACTION**

14        **RETALIATION IN VIOLATION OF FEHA, GOVERNMENT CODE §12900 ET SEQ**

15 72.    Plaintiffs restates and incorporates by this reference as if fully set forth herein paragraphs 1

16 through 71 of this Complaint.

17 73.    At all times herein mentioned the FEHA, Government Code §12900 et seq. was in full force

18 and effect and was binding on Defendants, as Defendants are either Board of Directors, Agents,

19 Employees of MCFS, a nonprofit organization.

20 74.    The California Fair Employment and Housing Act ("FEHA") [Gov. Code § 12900, et seq.]

21 prohibits discrimination and harassment against an employee based on age (among other things).

22 As a matter of public policy, the FEHA recognizes the need to protect and safeguard the right and

23 opportunity of all persons to seek and hold employment free from discrimination, harassment, and

24 retaliation. [Gov. Code § 12920.] The California state legislature has directed that the FEHA be

25 construed liberally so as to accomplish its purposes. [Gov. Code § 12993.] Moreover, the

26 California Supreme Court has specifically held that one's right to be free from discrimination and

27 harassment in the workplace is "fundamental." [Brown v. Superior Court (1984) 37 Cal.3d 477,

28 485.].

75.     Plaintiffs, AROSSINGTON, AIROSSINGTON, CODDINGTON, and PETERS only were clearly discriminated and retaliated against their mere either assumed relationship or genetic relationship with ROSSINGTON.  Additionally, it was clear that for continued employment at MCFS, Plaintiffs, AROSSINGTON, AIROSSINGTON, CODDINGTON, and PETERS would need to support disparaging and tarnishing ROSSINGTON'S name and reputation.  Therefore, were terminated with known knowledge that indeed AROSSINGTON, AIROSSINGTON, CODDINGTON and PETERS would not take part or support any efforts to disparage or tarnish the name or reputation of ROSSINGTON. Therefore, Plaintiffs AROSSINGTON, AIROSSINGTON, CODDINGTON and PETERS were retaliated and discriminated against.

76.     As a direct and proximate result of the unlawful conduct of Defendants and each of them, Plaintiffs have suffered special damages including but not omitted to past and future loss of income, benefits, medical expenses, mental health expenses (PTSD), and other damages to be proven at the time of trial.

## V. FIFTH CAUSE OF ACTION

### FAILURE TO ENGAGE IN GOOD FAITH AND FAIR DEALING UPON DISMISSAL

77.     Plaintiffs restates and incorporates by this reference as if fully set forth herein paragraphs 1 through 76 of this Complaint.

78.     At all times herein mentioned the Good Faith and Fair Dealings Upon Dismissal rule was in full force and effect and was binding on Defendants, as Defendants are either Board of Directors, Agents, Employees of MCFS, a nonprofit organization.

79.     *Wallace v. United Corn Growers Ltd.*, 1997 CanLII 332 (SCC), [1997] 3 S.C.R. 701, at para. 95; *Honda v Keays*, 2008 SCC 39, 2 S.C.R. 39, at para. 60; *Doyle v Zochem*, 2017 ONCA 130, at para. 13., states that employers have an obligation of good faith and fair dealing in the manner of dismissal and also that an employers' pre and post termination conduct may be relevant to the moral damage analysis if such conduct is a component of the manner of dismissal: see Reasons for Judgment at para. 145. Additionally, the implied an employer typically may not terminate an employee in bad faith or terminate an employee when the termination is motivated by malice.

1  Plaintiffs after years of dedicated services were locked out of emails and offices without cause,

2  notice, or respect.  Plaintiffs were accused of "criminal activity" and police sent to their residence.

3  80.    Plaintiffs were intimidated and threatened by BERRY after dismissal and attorney-client

4  confidentiality violated.  Plaintiffs' requests for personal items/belongings and personnel files were

5  ignored, or not allowed to be obtained.  Plaintiffs, AROSSINGTON, AIROSSINGTON,

6  CODDINGTON, and PETERS were terminated out of malice.  ROSSINGTON was terminated out

7  of professional advancement for BERRY and REYNOLDS and should be considered a hostile take-

8  over.  Defendants still refuse to pay ROSSINGTON her award Labor Board Award on November 4,

9  2022 and continue to threaten and intimidate ROSSINGTON about this award.

10  81.    Defendants committed these acts alleged in this Complaint malicious, fraudulently, and with

11  wrongful intention of injuring Plaintiffs, from an improper and evil motive amounting to malice,

12  and in conscious disregard of Plaintiffs' rights.  Plaintiffs are thus entitled to recover punitive

13  damages from the Defendants in the amount to be proven at trial.

14        WHEREFORE, Plaintiffs prays for judgment as set forth below.

15                    **VI. SIXTH CAUSE OF ACTION**

16              **FAILURE TO COMPLY WITH THE BROWN ACT**

17  82.    Plaintiffs restates and incorporates by this reference as if fully set forth herein paragraphs 1

18  through 81 of this Complaint.

19  83.    At all times herein mentioned the Brown Act was in full force and effect and was binding on

20  Defendants, as Defendants are either Board of Directors, Agents, Employees of MCFS, a nonprofit

21  organization responsible to the public.

22  84.    The Brown Act requires agendas to be posted at least Seventy-two (72) hours in advance of

23  the meeting (Section 54954.2).  The Defendants violated the Brown Act by meeting unofficially on

24  or before August 2, 2021, and making decisions to retain BERRY, per the agenda, as council for

25  MCFS, Inc., despite retained council still being in effect. For BERRY, as a private citizen, to create

26  an unauthorized agenda, which outlined the strategic termination of executive Director

27  ROSSINGTON and clear termination of AROSSINGTON, AIROSSINGTON, CODDINGTON

28  and PETERS, and for BERRY to email the Agenda for the August 4, 2021, unauthorized and

- 24 -

1 | illegal, board meeting forty-five (45) minutes into the meeting where decisions were made. For

2 | BERRY to be retained as counsel in a closed session hours after the meeting had started.

3 | 85.     As a direct and proximate result of the unlawful conduct of Defendants and each of them,

4 | Plaintiffs have suffered special damages including but not omitted to past and future loss of income,

5 | benefits, medical expenses, mental health expenses (PTSD), and other damages to be proven at the

6 | time of trial.

7 | ### VII. SEVENTH CAUSE OF ACTION

8 | ### WRONGFUL TERMINATION IN VIOLATION OF THE BROWN ACT

9 | 86.     Plaintiffs restates and incorporates by this reference as if fully set forth herein paragraphs 1

10 | through 85 of this Complaint.

11 | 87.     At all times herein mentioned the Brown Act was in full force and effect and was binding on

12 | Defendants, as Defendants are either Board of Directors, Agents, Employees of MCFS, a nonprofit

13 | organization.

14 | 88.     The Brown Act requires agendas to be posted at least Seventy-two (72) hours in advance of

15 | the meeting (Section 54954.2).  The Defendants violated the Brown Act by meeting unofficially on

16 | or before August 2, 2021, and making decisions to authorize BERRY to create the Agenda for the

17 | unauthorized August 4, 2021, meeting.  This unauthorized agenda outlined the strategic and

18 | constructive termination of executive Director ROSSINGTON and clear termination of

19 | AROSSINGTON, AIROSSINGTON, CODDINGTON and PETERS, for BERRY to email the

20 | Agenda for the August 4, 2021, unauthorized and illegal, board meeting forty-five (45) minutes into

21 | the meeting where decisions were made to terminated all Plaintiffs, as well as retain BERRY as

22 | counsel during the "closed session."

23 | 89.     As a direct and proximate result of the unlawful conduct of Defendants and each of them,

24 | Plaintiffs have suffered special damages including but not omitted to past and future loss of income,

25 | benefits, medical expenses, mental health expenses (PTSD), and other damages to be proven at the

26 | time of trial.

27 | //

28 | //

## IIX. EIGHTH CAUSE OF ACTION

### WRONGFUL TERMINATION IN VIOLTATION OF CAL. CODE REGS. TIT 22 § 88063 (10) – ACCOUNTABILITY

90.     Plaintiffs restates and incorporates by this reference as if fully set forth herein paragraphs 1 through 86 of this Complaint.

91.     At all times herein mentioned the Cal. Code Regs. Tit 22 § 88063 (10) - Accountability was in full force and effect and was binding on Defendants, as Defendants are either Board of Directors, Agents, Employees of MCFS, a nonprofit organization.

92.     Cal. Code Regs. Tit 22 §88018 a(7), which govern all Foster Family Agencies, states: "Require that the chief executive officer, administrator, or designee be present at all board of directors meetings during which the operation or the policies of the foster family agency are discussed. The Executive Director was never invited  nor was present during the August 4, 2021 meeting.

93.     As a direct and proximate result of the unlawful conduct of Defendants and each of them, Plaintiffs have suffered special damages including but not omitted to past and future loss of income, benefits, medical expenses, mental health expenses (PTSD), and other damages to be proven at the time of trial.

## IX. NINETH CAUSE OF ACTION

### VIOLATION OF THE CORPORATIONS BY-LAWS 5.8 - PRESIDENT

94.     Plaintiffs restates and incorporates by this reference as if fully set forth herein paragraphs 1 through 93 of this Complaint.

95.     At all times herein mentioned the Corporation's By-Laws were in full force and effect and was binding on Defendants, as Defendants are either Board of Directors, Agents, Employees of MCFS, a nonprofit organization.

96.     The Corporations By-Laws, which are submitted to the Secretary of State for approval states In Article V. Officers 5.8:

"The President shall be the Chief Executive Officer of the corporation and shall subject to the control of the Board of Directors,.....In the absence of the Chair of the Board or if there

- 26 -

1    is none, the President shall preside at all meetings of the Board of Directors......"

2    ROSSINGTON was not in attendance of this meeting and where for the first forty-five minutes,

3    BERRY, a private citizen and public member at that time was clearly in charge and directing the

4    August 4, 2021, meeting.  ROSSINGTON ever invited to this meeting.

5    97.    As a direct and proximate result of the unlawful conduct of Defendants and each of them,

6    Plaintiffs have suffered special damages including but not omitted to past and future loss of income,

7    benefits, medical expenses, mental health expenses (PTSD), and other damages to be proven at the

8    time of trial.

## X. TENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

12    98.    Plaintiffs restates and incorporates by this reference as if fully set forth herein paragraphs 1

13    through 97 of this Complaint.

14    99.    Defendants engaged in outrageous conduct towards the Plaintiffs so extreme that it went

15    beyond all possible bounds of decency and that a reasonable person would regard as intolerable in a

16    civilized community.  Defendants engaged in such outrageous conduct towards Plaintiffs with the

17    intention to case – or with reckless disregard for the probability of causing – Plaintiffs to suffer

18    severe emotional distress.

19    100.    To the extent that such outrageous conduct was perpetrated by certain defendants, the

20    remaining Defendants adopted and ratified the conduct with a wanton and reckless disregard of the

21    deleterious consequences to Plaintiffs.

22    101.    As a direct and proximate result of the unlawful conduct of Defendants and each of them,

23    Plaintiffs have suffered special damages including but not omitted to past and future loss of income,

24    benefits, medical expenses, mental health expenses (PTSD), and other damages to be proven at the

25    time of trial.

26    102.    As a direct and proximate result of the unlawful conduct of Defendants and each of them,

27    Plaintiffs have suffered general damages including but not limited to shock, embarrassment,

28

1    physical distress and emotional injury, humiliation, emotional distress, stress and other damages to
2    be proven at the time of trial.

3    103.    Defendants' conduct described herein was undertaken, authorized, directed and/or ratified
4    by the Defendants' officers, director, and/or managing agents and individuals as therefore
5    undertaken on behalf of Defendants.  Defendants committed the acts alleged in this Complaint
6    maliciously, fraudulently, and to intimate, terrorize, frighten and scare with the wrongful intention
7    of injuring Plaintiffs, from an improper and evil motive amount to malice, and in conscious
8    disregard of the Plaintiffs' rights.  Plaintiffs are thus entitled to recover punitive damages from
9    defendants in an amount to be proven at trial.

10    WEHREFORE, Plaintiffs pray for judgment as set forth below.

11    **WHEREFORE, Plaintiffs prays for Relief and Judgment as follows:**

12    **As to the First through Tenth Cause of Action set forth herein, Plaintiffs prays:**

13    a)  That process be issued and served as provided by law, requiring Defendants to
14         appear and answer or face judgment.

15    b)  That Plaintiffs have and recover judgment against Defendants in an amount to be
16         determined at trial as special, actual, compensatory and/or nominal damages for the
17         wrongful and malicious conduct of the Defendants

18    c)  That Plaintiffs have and recover judgment against Defendants in an amount to be
19         determined at a trial as general damages for their wrongful and malicious conduct;

20    d)  That Plaintiffs have and recover a judgment against Defendants for punitive damages
21         in an amount to be determined at trial sufficient to punish, penalize and/or deter
22         Defendants;

23    e)  That Plaintiffs have and recover a judgment against Defendants in an amount to be
24         determined at a trial for expenses of this litigation.

25    f)  That Plaintiff have such other relief as provided for by law and/or this Court deems
26         just and proper.

27    g)  That Plaintiffs have and recover a judgment against Defendants for invasion of
28         privacy, emotional swatting.

1    h) That Plaintiffs are granted injunctive relief from Defendants and their continued

2       malicious conduct.

3                              **DEMAND FOR A JURY TRIAL**

4

5       Plaintiffs hereby demands a trial by jury.

6    DATED: March 27, 2023

7                                                    SHAUNA ROSSINGTON
                                                     In Pro Per
8

9                                                    ALEX ROSSINGTON
                                                     In Pro Per
10

11                                                   AIDEN ROSSINGTON
                                                     In Pro Per
12
                              By:
13                                                   JOSEPH CODDINGTON
                                                     In Pro Per
14
                                                     VALERIE PETERS
15                                                   In Pro Per

16

17

18

19

20

21

22

23

24

25

26

27

28

DocuSign Envelope ID: F29A5019-A7A4-4C9E-830C-B0BF981973F1

1   h) That Plaintiffs are granted injunctive relief from Defendants and their continued

2   malicious conduct.

3   **DEMAND FOR A JURY TRIAL**

4

5   Plaintiffs hereby demands a trial by jury.

6   DATED: March 27, 2023

7   SHAUNA ROSSINGTON
    In Pro Per

8

9   ALEX ROSSINGTON
    In Pro Per

10

11  AIDEN ROSSINGTON
    In Pro Per

12  By:
    3/28/2023

13  JOSEPH CODDINGTON
    In Pro Per

14  VALERIE PETERS
    In Pro Per

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 29 -

# EXHIBIT

# A

1  **MESSNER REEVES LLP**
   Kathleen Carter (SBN 157790)
2  Heather E. Stern (SBN 217447)
   650 Town Center Drive, Suite 700
3  Costa Mesa, California 92626
   Telephone:   (949) 612-9128
4  Facsimile:   (949) 438-2304
   Email:       kcarter@messner.com
5                hstern@messner.com

6  Attorneys for defendants Mountain Circle Family
   Service, Inc., d/b/a Sierra Nevada Connections,
7  Justin Miller, Pamela Crespin, Katherine Van
   Dolsen, Angie Carpenter, Shannan Duong, Bill
8  Powers, and Kacey Reynolds, with respect to the
   claims of Shauna Rossington
9
   **MAIRE & DEEDON**
10 Patrick L. Deedon (SBN 245490)
   Sonja M. Dahl (SBN 130971)
11 2851 Park Marina Drive, Suite 300
   Redding, CA 96001-2813
12 (530) 246-6050 / 246-6060 Fax
13 pdeedon@maire-law.com
   sdahl@maire-law.com
14
   Attorneys for Defendants
15 Mountain Circle Family Service, Inc., d/b/a Sierra
   Nevada Connections, Justin Miller, Pamela
16 Crespin, Katherine Van Dolsen, Angie Carpenter,
   Shannan Duong, Bill Powers, Kacey Reynolds,
17 and Robin Miller, with respect to the claims of
   Alex Rossington, Aiden Rossington, Joseph
18 Coddington, and Valerie Peters

19                    **UNITED STATES DISTRICT COURT**

20        **EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

21

22 | SHAUNA ROSSINGTON | Case No. |
23 | ALEX ROSSINGTON | |
   | AIDEN ROSSINGTON | **DEFENDANTS' NOTICE OF REMOVAL** |
24 | JOSEPH CODDINGTON | **OF ACTION UNDER 28 U.S.C. § 1441(a)** |
   | VALERIE PETERS, | **[FEDERAL QUESTION]** |
25 | | |
   |        Plaintiffs, | Butte County Superior Court |
26 | | Case No. 23CV00288 |
   |     v. | |
27 | | |
   | MOUNTAIN CIRCLE FAMILY SERVICE, | |
28 | INC., d/b/a SIERRA NEVADA | |
   | CONNECTIONS, a California Corporation; | |

{07148627 / 1}

**NOTICE OF REMOVAL**

1  JUSTIN MILLER, individually; PAMELA
   CRESPIN, individually; KATHERINE VAN
2  DOLSEN, individually; ANGIE
   CARPENTER, individually; ROBIN
3  MILLER, individually; SHANNON DOUNG,
   individually; ROBERT BERRY, individually;
4  BILL POWERS, individually; KACEY
   REYNOLDS, individually; And DOES 1
5  through 69, inclusive,

6          Defendants.

7

8          **TO THE CLERK OF THE COURT:**

9          **PLEASE TAKE NOTICE** that defendants Mountain Circle Family Service, Inc., d/b/a

10  Sierra Nevada Connections, Justin Miller, Pamela Crespin, Katherine Van Dolsen, Angie

11  Carpenter, Shannan Duong, Bill Powers, Robin Miller, and Kacey Reynolds (collectively,

12  "Removing Defendants") hereby remove this action from the Superior Court for the State of

13  California, County of Butte, styled *Shauna Rossington v. Mountain Circle Family Service, Inc.*,

14  Case No. 23CV00288 ("State Court Action") to the United States District Court for the Eastern

15  District of California.  In support of removal, Removing Defendants state:

16          1.      On February 6, 2023, Plaintiffs Shauna Rossington, Alex Rossington, Aiden

17  Rossington, Joseph Coddington, and Valerie Peters (collectively, "Plaintiffs") filed a complaint

18  against Removing Defendants and defendant Robert Berry ("Berry"), for: (1) Failure to

19  Accommodate FOIA Rights; (2) Failure to Comply with Evidence Code § 945 – Attorney-Client

20  Privilege; (3) Failure to Accommodate Labor Code § 1198.5; (4) Failure to Comply with Terms of

21  Contract; (5) Retaliation in Violation of FEHA, Gov. Code § 12900 et seq.; (6) Failure to Engage

22  in Good Faith and Fair Dealing Upon Dismissal; (7) Failure to Comply with the Brown Act; (8)

23  Failure to Comply and in Violation of 5 U.S.C. § 552a(b); and (9) Wrongful Termination in

24  Violation of the Brown Act.

25          2.      Defendants Mountain Circle Family Service, Inc. and Angie Carpenter were served

26  with the summons and complaint on February 6, 2023.  Accordingly, Removing Defendants

27  timely file this Notice within the 30-day limit established by 28 U.S.C. § 1446(b).  *See also*

28  *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 355 (1999) (noting that the

{07148627 / 1}                          2

1   removal time frame is triggered by the receipt of formal service, not receipt of the complaint).

2   True and correct copies of the summons, complaint, civil case cover sheet, notice of related case,

3   notice of assignment and case management conference, and proofs of service, on file with the

4   Butte County Superior Court as of this removal, are attached hereto as Exhibit A.

5       3.     Removing Defendants are informed and believe that all defendants, including

6   defendant Robert Berry, have consented to removal. 28 U.S.C. § 1446(a). Removing Defendants

7   are informed and believe that defendant Robert Berry does not intend to file a formal notice of

8   joinder at this time because he contends that he has not been properly served with the summons

9   and complaint. *Destfino v. Reiswig* (9th Cir. 2011) 630 F.3d 952, 955 (codefendants not properly

10   served need not join).

11       4.     Venue is proper because this Court is part of the district encompassing the place

12   where the lawsuit was filed – Butte County Superior Court. *See* 28 U.S.C. § 1446(a).

13       5.     Removal jurisdiction is proper because Plaintiffs' claims involve questions of

14   federal law. Specifically, Plaintiffs' First Cause of Action is for "Failure to Accommodate FOIA

15   Rights", *i.e.*, it purports to allege a violation of the federal Freedom of Information Act, 5 U.S.C. §

16   552. Additionally, Plaintiffs' Eighth Cause of Action is for "Failure to Comply and In Violation

17   of 5 U.S.C. § 552a(b)", *i.e.*, it purports to allege a violation of a federal statute, namely 5 U.S.C. §

18   552a(b).

19       6.     Contemporaneous with the filing of this Notice of Removal with the District Court,

20   the undersigned will serve on Plaintiffs and file a Notice of Filing Notice of Removal, as required

21   by 28 U.S.C. § 1446(d).

22       WHEREFORE, Removing Defendants remove this action to the United States District

23   Court for the Eastern District of California.

24

25

26

27

28

1  DATED: March 7, 2023                    **MESSNER REEVES LLP**

2

3

4                                         _____/s/ Heather E. Stern_____
                                          Kathleen Carter
5                                         Heather E. Stern
                                          Attorneys for defendants Mountain Circle
6                                         Family Service, Inc., d/b/a Sierra Nevada
                                          Connections, Justin Miller, Pamela Crespin,
7                                         Katherine Van Dolsen, Angie Carpenter,
                                          Shannan Duong, Bill Powers, and Kacey
8                                         Reynolds, with respect to the claims of Shauna
                                          Rossingto
9

10

11

12  Dated:  March 7, 2023                 **MAIRE & DEEDON**

13

14
                                          _____/s/ Patrick L. Deedon_____
15                                        PATRICK L. DEEDON
                                          SONJA M. DAHL
16                                        Attorneys for Defendants Mountain Circle
                                          Family Service, Inc., d/b/a Sierra Nevada
17                                        Connections, Justin Miller, Pamela Crespin,
                                          Katherine Van Dolsen, Angie Carpenter,
18                                        Shannan Duong, Bill Powers, Kacey Reynolds,
                                          and Robin Miller, with respect to the claims of
19                                        Alex Rossington, Aiden Rossington, Joseph
                                          Coddington, and Valerie Peters
20

21

22

23

24

25

26

27

28

{07148627 / 1}                               4

# EXHIBIT

# B

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Shauna Rossington<br>2754 Dolphin Bend<br>Chico, CA 95973<br>In Pro Per | |

TELEPHONE NO.: 530 588 5511　　　　FAX NO. *(Optional):*

E-MAIL ADDRESS *(Optional):* DrShaunalr@gmail.com

ATTORNEY FOR *(Name):* In Pro Per

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF Butte**

STREET ADDRESS: 1775 Concord Ave

MAILING ADDRESS: 1775 Concord Ave

CITY AND ZIP CODE: Chico, CA 95928

BRANCH NAME: North County - Butte

PLAINTIFF/PETITIONER: Shauna Rossington, Alex Rossington, Aiden Rossington, Joseph

DEFENDANT/RESPONDENT: Mountain Circle Family Services, Inc., dba Sierra Nevada Connecti

| | CASE NUMBER:<br>23CV00288 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [ ] other *(specify documents):*

3. a. Party served *(specify name of party as shown on documents served):*
      Robert Berry

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served: Hansen, Kohls, Sommer + Jacob, LLP
   1520 Eureka Rd Suite 100
   Roseville, CA 95661

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party　(1) on *(date):*　　　　(2) at *(time):*

   b. [ ] **by substituted service.** On *(date):*　　at *(time):*　　I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*　　from *(city):*　　or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

5. c. [x] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):* 3/16/23          (2) from *(city):* Chico, CA

    (3) [x] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) [ ] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. [ ] **by other means** *(specify means of service and authorizing code section):*

    [ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. [x] as an individual defendant.

  b. [ ] as the person sued under the fictitious name of *(specify):*

  c. [ ] as occupant.

  d. [ ] On behalf of *(specify):* Mountain Circle Family Services, Inc., dba Sierra Nevada Connections

    under the following Code of Civil Procedure section:

| | |
|---|---|
| [x] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
| | [ ] other: |

7. **Person who served papers**

  a. Name:

  b. Address:

  c. Telephone number:

  d. **The fee** for service was: $

  e. I am:

    (1) [ ] not a registered California process server.

    (2) [ ] exempt from registration under Business and Professions Code section 22350(b).

    (3) [ ] a registered California process server:

      (i) [ ] owner [ ] employee [ ] independent contractor.

      (ii) Registration No.:

      (iii) County:

8. [x] **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9. [ ] **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date:

_____          ▶ _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)              (SIGNATURE)

For your protection and privacy, please press the Clear This Form button after you have printed the form.    [Print this form] [Save this form]    [Clear this form]

# EXHIBIT

# C

BA20221155326

B1266-2507 11/21/2022 2:40 PM Received by California Secretary of State



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION**
**CA NONPROFIT CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
|---|
| **-FILED-** |
| File No.: BA20221155326 |
| Date Filed: 11/21/2022 |

### Entity Details

| | |
|---|---|
| Corporation Name | MOUNTAIN CIRCLE FAMILY SERVICES, INC. |
| Entity No. | 1280259 |
| Formed In | CALIFORNIA |

### Street Address of California Principal Office of Corporation

| | |
|---|---|
| Street Address of California Office | 2550 FLORAL AVE. SUITE 20 CHICO, CA 95973 |

### Mailing Address of Corporation

| | |
|---|---|
| Mailing Address | 2550 FLORAL AVE., SUITE 20 CHICO, CA 95973 |
| Attention | |

### Officers

| Officer Name | Officer Address | Position(s) |
|---|---|---|
| ~~JOY AMARO~~ | ~~2550 FLORAL AVE., SUITE 20 CHICO, CA 95973~~ | ~~Chief Executive Officer~~ |
| Angela Carpenter | 2550 FLORAL AVE., SUITE 20 Chico, CA 95973 | Chief Financial Officer |
| Kasey Reynolds | 2550 FLORAL AVE. SUITE 20 CHICO, CA 95973 | Chief Executive Officer |
| Charlene Durkin | 2550 FLORAL AVE. SUITE 20 CHICO, CA 95973 | Secretary |

### Additional Officers

| Officer Name | Officer Address | Position | Stated Position |
|---|---|---|---|
| Kasey Reynolds | 2550 FLORAL AVE. SUITE 20 CHICO, CA 95973 | Chairperson of Board | |
| Justin Miller | 2550 FLORAL AVE. SUITE 20 CHICO, CA 95973 | Other | Board Treasurer |

### Agent for Service of Process

| | |
|---|---|
| Agent Name | Angie Carpenter |
| Agent Address | 2550 FLORAL AVE., SUITE 20 CHICO, CA 95973 |

### Email Notifications

| | |
|---|---|
| Opt-in Email Notifications | No, I do NOT want to receive entity notifications via email. I prefer notifications by USPS mail. |

B1266-2508 11/21/2022 2:40 PM Received by California Secretary of State

**Electronic Signature**

☒  By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

*Angie Carpenter*                                                    *11/21/2022*

Signature                                                               Date



B1281-4768 11/29/2022 BA20221179790 2:05 PM Received by California Secretary of State



## STATE OF CALIFORNIA
*Office of the Secretary of State*
## STATEMENT OF INFORMATION
## CA NONPROFIT CORPORATION
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
|---|
| **-FILED-** |
| File No.: BA20221179790 |
| Date Filed: 11/29/2022 |

---

**Entity Details**

| | |
|---|---|
| Corporation Name | MOUNTAIN CIRCLE FAMILY SERVICES, INC. |
| Entity No. | 1280259 |
| Formed In | CALIFORNIA |

**Street Address of California Principal Office of Corporation**

| | |
|---|---|
| Street Address of California Office | None |

**Mailing Address of Corporation**

| | |
|---|---|
| Mailing Address | 2550 FLORAL AVE., SUITE 20 CHICO, CA 95973 |

Attention

**Officers**

| Officer Name | Officer Address | Position(s) |
|---|---|---|
| Kasey Reynolds | 2550 FLORAL AVE. SUITE 20 CHICO, CA 95973 | Chief Executive Officer |
| Charlene Durkin | 2550 FLORAL AVE. SUITE 20 CHICO, CA 95973 | Secretary |
| ~~Angela Carpenter~~ | ~~2550 Floral Ave., Suite 20 Chico, CA 95973~~ | ~~Chief Financial Officer~~ |
| Justin Miller | 2550 FLORAL AVE SUITE 20 CHICO, CA 95973 | Chief Financial Officer |

**Additional Officers**

| Officer Name | Officer Address | Position | Stated Position |
|---|---|---|---|
| Kasey Reynolds | 2550 FLORAL AVE. SUITE 20 CHICO, CA 95973 | Chairperson of Board | |
| Justin Miller | 2550 FLORAL AVE. SUITE 20 CHICO, CA 95973 | Other | Board Treasurer |

---

**Agent for Service of Process**

| | |
|---|---|
| Agent Name | Robert L Berry |
| Agent Address | 2550 FLORAL AVE., SUITE SUITE 20 CHICO, CA 95973 |

**Email Notifications**

| | |
|---|---|
| Opt-in Email Notifications | No, I do NOT want to receive entity notifications via email. I prefer notifications by USPS mail. |

B1281-4769 11/29/2022 2:05 PM Received by California Secretary of State

**Electronic Signature**

☒ By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

*Robert Berry*                                                    *11/29/2022*

Signature                                                        Date

# EXHIBIT

# D

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

August 5, 2022

Larry Baumbach
2531 Forest Ave, Suite 100
Chico, CA 95928

RE: **Notice to Complainant's Attorney**
DFEH Matter Number: 202208-17807704
Right to Sue: Rossington / Mountain Circle Family Services, Inc., dba Sierra
Nevada Connections et al.

Dear Larry Baumbach:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

August 5, 2022

RE:   **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 202208-17807704
Right to Sue: Rossington / Mountain Circle Family Services, Inc., dba Sierra
Nevada Connections et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code
section 12945.21, a small employer with 5 -19 employees, charged with violation
of the California Family Rights Act, Government Code section 12945.2, has the
right to participate in DFEH's free mediation program. Under this program both
the employee requesting an immediate right to sue and the employer charged
with the violation may request that all parties participate in DFEH's free
mediation program. The employee is required to contact the Department's
Dispute Resolution Division prior to filing a civil action and must also indicate
whether they are requesting mediation. The employee is prohibited from filing a
civil action unless the Department does not initiate mediation within the time
period specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. You may
contact DFEH's Small Employer Family Leave Mediation Pilot Program by
emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter
number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

KEVIN KISH, DIRECTOR

August 5, 2022

Shauna Rossington
2754 Dolphin Bnd
Chico, CA 95973

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 202208-17807704
      Right to Sue: Rossington / Mountain Circle Family Services, Inc., dba Sierra
      Nevada Connections et al.

Dear Shauna Rossington:

This letter informs you that the above-referenced complaint filed with the Department of
Fair Employment and Housing (DFEH) has been closed effective August 5, 2022
because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Government Code section 12945.2, has the right to
participate in DFEH's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in DFEH's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
DFEH's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number
indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency   GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**   KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

1

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
## DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

**In the Matter of the Complaint of**

Shauna Rossington

DFEH No. 202208-17807704

Complainant,

vs.

Mountain Circle Family Services, Inc., dba Sierra
Nevada Connections
2550 Floral Ave Ste.#20
Chico, CA 95973

Justin Miller
2550 Floral Ave Ste #20
Chico, CA 95973

Pamela Crespin
2550 Floral Ave Ste #20
Chico, CA 95973

Katherine Van Dolsen
2550 Floral Ave Ste #20
Chico, CA 95973

Angie Carpenter
2550 Floral Ave Ste #20
Chico, CA 95973

Shannon Doung
2550 Floral Ave Ste #20
Chico, CA 95973

Robin Miller
2550 Floral Ave Ste #20
Chico, CA 95973

Robert Berry
448 W 2nd Ave
Chico, CA 95926

-1-
*Complaint – DFEH No. 202208-17807704*

Date Filed: August 5, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

1  Bill Powers
   2550 Floral Ave Ste #20
2  Chico, CA 95973

3                              Respondents

4  _____

5

6

7  **1.** Respondent **Mountain Circle Family Services, Inc., dba Sierra Nevada Connections** is an
   **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov.
8  Code, § 12900 et seq.).

9  **2.**Complainant is naming **Justin Miller** individual as Co-Respondent(s).
   Complainant is naming **Pamela Crespin** individual as Co-Respondent(s).
10 Complainant is naming **Katherine Van Dolsen** individual as Co-Respondent(s).
   Complainant is naming **Angie Carpenter** individual as Co-Respondent(s).
11 Complainant is naming **Shannon Doung** individual as Co-Respondent(s).
   Complainant is naming **Robin Miller** individual as Co-Respondent(s).
12 Complainant is naming **Robert Berry** individual as Co-Respondent(s).
   Complainant is naming **Bill Powers** individual as Co-Respondent(s).
13

14 **3.** Complainant **Shauna Rossington**, resides in the City of **Chico**, State of **CA.**

15
   **4.** Complainant alleges that on or about **August 4, 2021**, respondent took the
16 following adverse actions:

17 **Complainant experienced retaliation** because complainant reported or resisted any form
   of discrimination or harassment and as a result was forced to quit.
18

19 **Additional Complaint Details:** Claimant Shauna Rossington was hired on January 8, 2001,
   as the Executive Director for Respondent Mountain Circle Family Services Inc., dba Sierra
20 Nevada Connections (hereinafter "MCFS"). The Board of Directors hired her. Over her years
   of service, she directed and grew MCFS into a company that was able to pay its employees
21 a living wage and accomplish the family services for which it was designed. In June 2021,
   the President of the MCFS resigned. The Board appointed no interim President, yet on
22 August 4, 2021, several members of the Board convened without participation from the
   Executive Director, Shauna Rossington. While the Board illegally convened and in violation
23 of the Brown Act, it obtained advice from attorney Robert L. Berry and created an agenda
   item without giving proper notice. The agenda item was to terminate the services of
24 Executive Director Shauna Rossington, Claimant, herein. In achieving the unlawful activities
   of the Board, attorney Berry engaged in conduct that falsely accused the Claimant of
25

26                              -2-
                  *Complaint – DFEH No. 202208-17807704*
27
   Date Filed: August 5, 2022
28
                              Form DFEH-ENF 80 RS (Revised 02/22)

1 | committing crimes and all of which accusations were false and deliberately intended to undermine the effective administration of the Claimant.

2 | Having been made aware of the illegal activities of the Board members Claimant resigned pursuant to a letter of resignation. While engaging in the unlawful activities, the MCFS

3 | intercepted private emails from employees that it had terminated intercepted correspondence between individual employees and the employee's attorney. MCFS

4 | unlawfully followed instructions by attorney Berry to invade privileged attorney-client correspondence. Berry, in turn, published deliberately false reports in an attempt to carry out

5 | the false arrest of Claimant and engaged in law enforcement intimidation of Claimant and her son at their residence. The MCFS refused to comply with the Freedom of Information

6 | Act (FOIA) demand. Refused to provide terminated employees access to their personal files

7 | as provided in Labor Code § 1198.5. In addition, the Respondent's refused to pay Claimant Rossington for over 200 hours of vacation pay and a minimum of $80,000.00 in severance

8 | pay that was contractually agreed to by MCFS. In doing the foregoing, the Respondents were guilty of violating California Penal Code § 496, which provides in signification part that

9 | any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages if any sustained by the Plaintiff, cost of suit

10 | and reasonable attorney fees. In doing the aforesaid acts, the respondents deprived the Claimant of her livelihood, wrongfully terminated her employment in violation of the Fair

11 | Employment Housing Act, and deprived her of a meaningful transition into other employment because of their conduct. Therefore, the Claimant is entitled to loss of

12 | severance pay and vacation pay in excess of $300,000.00, which is subject to triple damages under California Penal Code § 496. The Claimant is also entitled to damages for

13 | lost wages, vacation pay, emotional pain and suffering, and damages for failure to pay wages, all in excess of the sum of $750,000.00.

14 |

-3-
*Complaint – DFEH No. 202208-17807704*

Date Filed: August 5, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

VERIFICATION

I, **Larry L. Baumbach**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On August 5, 2022, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Chico, CA**

-4-
*Complaint – DFEH No. 202208-17807704*

Date Filed: August 5, 2022

Form DFEH-ENF 80 RS (Revised 02/22)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

August 5, 2022

Alex Heth-Rossington
464 E. 6th Ave
Chico, CA 95926

RE:    **Notice of Case Closure and Right to Sue**
       DFEH Matter Number: 202208-17811205
       Right to Sue: Heth-Rossington / Mountain Circle Family Services, Inc., dba Sierra
       Nevada Connections et al.

Dear Alex Heth-Rossington:

This letter informs you that the above-referenced complaint filed with the Department of
Fair Employment and Housing (DFEH) has been closed effective August 5, 2022
because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Government Code section 12945.2, has the right to
participate in DFEH's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in DFEH's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
DFEH's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number
indicated on the Right to Sue notice.

Form DFEH-ENF 80 RS (Revised 02/22)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

Form DFEH-ENF 80 RS (Revised 02/22)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of

Alex Heth-Rossington                                         DFEH No. 202208-17811205

Complainant,

vs.

Mountain Circle Family Services, Inc., dba Sierra
Nevada Connections
2550 Floral Ave Ste #20
Chico, CA 95973

Robert Berry
448 W 2nd Ave
Chico, CA 95926

Justin Miller
2550 Floral Ave Ste #20
Chico, CA 95973

Pamela Crespin
2550 Floral Ave Ste #20
Chico, CA 95973

Angie Carpenter
2550 Floral Ave Ste #20
Chico, CA 95973

Bill Powers
2550 Floral Ave Ste #20
Chico, CA 95973

Katherine Van Dolsen
2550 Floral Ave Ste #20
Chico, CA 95973

Shannon Doung
2550 Floral Ave Ste #20
Chico, CA 95973

-1-
*Complaint – DFEH No. 202208-17811205*

Date Filed: August 5, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

1  Robin Miller
   2550 Floral Ave Ste #20
2  Chico, CA 95973

3                              Respondents

4  _____

5

6

7  **1.** Respondent **Mountain Circle Family Services, Inc., dba Sierra Nevada Connections** is an
   **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov.
8  Code, § 12900 et seq.).

9  **2.**Complainant is naming **Robert Berry** individual as Co-Respondent(s).
   Complainant is naming **Justin Miller** individual as Co-Respondent(s).
10 Complainant is naming **Pamela Crespin** individual as Co-Respondent(s).
   Complainant is naming **Angie Carpenter** individual as Co-Respondent(s).
11 Complainant is naming **Bill Powers** individual as Co-Respondent(s).
   Complainant is naming **Katherine Van Dolsen** individual as Co-Respondent(s).
12 Complainant is naming **Shannon Doung** individual as Co-Respondent(s).
   Complainant is naming **Robin Miller** individual as Co-Respondent(s).
13

14 **3.** Complainant **Alex Heth-Rossington**, resides in the City of **Chico**, State of **CA.**

15
   **4.** Complainant alleges that on or about **August 5, 2022**, respondent took the
16 following adverse actions:

17 **Complainant experienced retaliation** because complainant reported or resisted any form
   of discrimination or harassment and as a result was terminated.
18

19 **Additional Complaint Details:** The claimant, Alex Heth-Rossington, was hired by
20 Respondent Mountain Circle Family Services Inc., dba Sierra Nevada Connections
   (hereinafter "MCFS") on June 12, 2015. At the commencement of normal business hours on
21 August 5, 2021, Claimant was informed that she was being terminated at will and without
   cause. The true reason why she was terminated from her employment was she was being
22 retaliated against by the Respondent due to her relationship with Shauna Rossington, the
   Executive Director of Respondent MCFS, and, for whom she was employed, provided
23 services as administrative assistant, fundraiser, and community outreach person. In doing
   the work that she was hired to do, she performed her duties beyond expectations with
24 complete dedication and with great benefit to the Respondent. The only reason Alex Heth-
   Rossington was terminated was her relationship with the Executive Director, who herself
25 was unlawfully terminated, and because Ms. Heth-Rossington spoke affirmatively in favor of

26                              -2-
   *Complaint – DFEH No. 202208-17811205*
27
   Date Filed: August 5, 2022
28
                              Form DFEH-ENF 80 RS (Revised 02/22)

1    the Executive Director. In addition, thereto, the Respondent intercepted an email account
2    that belonged to Claimant Heth-Rossington and which she used to communicate with her
     attorney, which Respondent intercepted and used to justify its retaliation and termination of
3    Claimant. The claimant's rights under the California Fair Employment Housing Act were
     thereby violated by the conduct of Respondent, and she, therefore, is entitled to damages
4    accordingly and as provided by law.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26                                                    -3-
                              *Complaint – DFEH No. 202208-17811205*
27   Date Filed: August 5, 2022
28
                                                            Form DFEH-ENF 80 RS (Revised 02/22)

1  VERIFICATION

2  I, **Larry L. Baumbach**, am the **Attorney** in the above-entitled complaint. I have read
3  the foregoing complaint and know the contents thereof. The matters alleged are
   based on information and belief, which I believe to be true.

4
   On August 5, 2022, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                              **Chico CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                            -4-
                                *Complaint – DFEH No. 202208-17811205*
27
   Date Filed: August 5, 2022
28
                                              Form DFEH-ENF 80 RS (Revised 02/22)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                              GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

August 5, 2022

Aiden Rossington
2754 Dolphin Bnd
Chico, CA 95973

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 202208-17811305
      Right to Sue: Rossington / Mountain Circle Family Services, Inc., dba Sierra
      Nevada Connections et al.

Dear Aiden Rossington:

This letter informs you that the above-referenced complaint filed with the Department of
Fair Employment and Housing (DFEH) has been closed effective August 5, 2022
because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Government Code section 12945.2, has the right to
participate in DFEH's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in DFEH's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
DFEH's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number
indicated on the Right to Sue notice.



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                        GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

Form DFEH-ENF 80 RS (Revised 02/22)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Aiden Rossington

DFEH No. 202208-17811305

Complainant,

vs.

Mountain Circle Family Services, Inc., dba Sierra
Nevada Connections
2550 Floral Ave. Ste #20
Chico, CA 95973

Robert Berry
448 W 2nd Ave
Chico, CA 95926

Justin Miller
2550 Floral Ave Ste #20
Chico, CA 95973

Pamela Crespin
2550 Floral Ave Ste #20
Chico, CA 95973

Bill Powers
2550 Floral Ave Ste #20
Chico, CA 95973

Katherine Van Dolsen
2550 Floral Ave Ste #20
Chico, CA 95973

Angie Carpenter
2550 Floral Ave Ste #20
Chico, CA 95973

Shannon Doung
2550 Floral Ave Ste #20
Chico, CA 95973

-1-
*Complaint – DFEH No. 202208-17811305*

Date Filed: August 5, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

1    Robin Miller
      2550 Floral Ave Ste #20
2    Chico, CA 95973

3                    Respondents

4    _____

5

6

7    **1.** Respondent **Mountain Circle Family Services, Inc., dba Sierra Nevada Connections** is an
      **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov.
8    Code, § 12900 et seq.).

9    **2.**Complainant is naming **Robert Berry** individual as Co-Respondent(s).
      Complainant is naming **Justin Miller** individual as Co-Respondent(s).
10    Complainant is naming **Pamela Crespin** individual as Co-Respondent(s).
      Complainant is naming **Bill Powers** individual as Co-Respondent(s).
11    Complainant is naming **Katherine Van Dolsen** individual as Co-Respondent(s).
      Complainant is naming **Angie Carpenter** individual as Co-Respondent(s).
12    Complainant is naming **Shannon Doung** individual as Co-Respondent(s).
13    Complainant is naming **Robin Miller** individual as Co-Respondent(s).

14    **3.** Complainant **Aiden Rossington**, resides in the City of **Chico**, State of **CA**.

15
      **4.** Complainant alleges that on or about **August 5, 2021**, respondent took the
16    following adverse actions:

17    **Complainant experienced retaliation** because complainant reported or resisted any form
      of discrimination or harassment and as a result was terminated.
18

19    **Additional Complaint Details:** Claimant, Aiden Rossington, was hired by Respondent
20    Mountain Circle Family Services Inc., dba Sierra Nevada Connections (hereinafter "MCFS")
      on January 5, 2021. At the commencement of normal business hours on August 5, 2021,
21    Claimant was informed that he was being terminated at will and without cause. The true
      reason he was terminated from his employment was that he was being retaliated against by
22    the Respondent due to his relationship with Shauna Rossington, the Executive Director of
      Respondent MCFS. He was employed to provide services as an IT Manager. In doing the
23    work that he was hired to do, he performed his duties beyond expectations with complete
      dedication and with great benefit to the Respondent. The only reason Aiden Rossington was
24    terminated was his relationship with the Executive Director, who herself was unlawfully
      terminated, and because Claimant Aiden Rossington spoke affirmatively in favor of said
25    Executive Director. In addition, thereto, the Respondent intercepted an email account that

26                               -2-
                      *Complaint – DFEH No. 202208-17811305*
27
   Date Filed: August 5, 2022
28

                                     Form DFEH-ENF 80 RS (Revised 02/22)

1  belonged to Claimant Aiden Rossington and which he used to communicate with his
   attorney, which Respondent intercepted and used to justify its retaliation and termination of
2  Claimant. The claimant's rights under the California Fair Employment Housing Act were
   thereby violated by the conduct of Respondent, and he, therefore, is entitled to damages
3  accordingly and as provided by law.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                          -3-
                            *Complaint – DFEH No. 202208-17811305*
27
   Date Filed: August 5, 2022
28
                                                    Form DFEH-ENF 80 RS (Revised 02/22)

1  VERIFICATION

2  I, **Larry L. Baumbach**, am the **Attorney** in the above-entitled complaint. I have read
3  the foregoing complaint and know the contents thereof. The matters alleged are
   based on information and belief, which I believe to be true.

4  On August 5, 2022, I declare under penalty of perjury under the laws of the State of
5  California that the foregoing is true and correct.

6                                                                          **Chico, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                          -4-
                        *Complaint – DFEH No. 202208-17811305*
27
   Date Filed: August 5, 2022
28
                                              Form DFEH-ENF 80 RS (Revised 02/22)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

KEVIN KISH, DIRECTOR

August 5, 2022

Joseph Coddington
604 E Elm St
Urbana, IL 61802

RE:  **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 202208-17812305
Right to Sue: Coddington / Mountain Circle Family Services, Inc., dba Sierra
Nevada Connections et al.

Dear Joseph Coddington:

This letter informs you that the above-referenced complaint filed with the Department of
Fair Employment and Housing (DFEH) has been closed effective August 5, 2022
because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Government Code section 12945.2, has the right to
participate in DFEH's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in DFEH's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
DFEH's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number
indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
## DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

In the Matter of the Complaint of

Joseph Coddington                                     DFEH No. 202208-17812305

                        Complainant,

vs.

Mountain Circle Family Services, Inc., dba Sierra
Nevada Connections
2550 Floral Ave Ste #20
Chico, CA 95973

Pamela Crespin
2550 Floral Ave Ste #20
Chico, CA 95973

Justin Miller
2550 Floral Ave Ste #20
Chico, CA 95973

Bill Powers
2550 Floral Ave Ste #20
Chico, CA 95973

Katherine Van Dolsen
2550 Floral Ave Ste #20
Chico, CA 95973

Angie Carpenter
2550 Floral Ave Ste #20
Chico, CA 95973

Shannon Doung
2550 Floral Ave Ste #20
Chico, CA 95973

Robin Miller
2550 Floral Ave Ste #20
Chico, CA 95973

-1-
*Complaint – DFEH No. 202208-17812305*

Date Filed: August 5, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

1  Robert Berry
   448 W 2nd Ave
2  Chico, CA 95926

3                        Respondents

4  ─────────────────────────────────

5

6

7  **1.** Respondent **Mountain Circle Family Services, Inc., dba Sierra Nevada Connections** is an
   **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov.
8  Code, § 12900 et seq.).

9  **2.**Complainant is naming **Pamela Crespin** individual as Co-Respondent(s).
   Complainant is naming **Justin Miller** individual as Co-Respondent(s).
10 Complainant is naming **Bill Powers** individual as Co-Respondent(s).
   Complainant is naming **Katherine Van Dolsen** individual as Co-Respondent(s).
11 Complainant is naming **Angie Carpenter** individual as Co-Respondent(s).
   Complainant is naming **Shannon Doung** individual as Co-Respondent(s).
12 Complainant is naming **Robin Miller** individual as Co-Respondent(s).
13 Complainant is naming **Robert Berry** individual as Co-Respondent(s).

14 **3.** Complainant **Joseph Coddington**, resides in the City of **Urbana**, State of **IL.**

15 **4.** Complainant alleges that on or about **August 5, 2022**, respondent took the
16 following adverse actions:

17 **Complainant experienced retaliation** because complainant reported or resisted any form
   of discrimination or harassment and as a result was terminated.
18

19 **Additional Complaint Details:** Claimant, Joseph Coddington, was hired by Respondent
20 Mountain Circle Family Services Inc., dba Sierra Nevada Connections (hereinafter "MCFS")
   on January 1, 2021. At the commencement of normal business hours on August 5, 2021,
21 Claimant was informed that he was being terminated at will and without cause. The true
   reason why he was terminated from his employment was he was being retaliated against by
22 the Respondent due to his relationship with Shauna Rossington, the Executive Director of
   Respondent MCFS. He was employed to provide services as an Event Director. In doing the
23 work that he was hired to do, he performed her duties beyond expectations and with
   complete dedication and with great benefit to the Respondent. The only reason Joseph
24 Coddington was terminated was his relationship with the Executive Director, who herself
   was unlawfully terminated, and because Claimant Joseph Coddington spoke affirmatively in
25 favor of said Executive Director. In addition, thereto, the Respondent intercepted an email

26                         -2-
27 Date Filed: August 5, 2022

28                                        Form DFEH-ENF 80 RS (Revised 02/22)

1  account that belonged to Claimant Joseph Coddington and which he used to communicate
   with his attorney, which Respondent intercepted and used to justify its retaliation and
2  termination of Claimant. The claimant's rights under the California Fair Employment Housing
   Act were thereby violated by the conduct of Respondent, and she, therefore, is entitled to
3  damages accordingly and as provided by law.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                              -3-
                          *Complaint – DFEH No. 202208-17812305*
27  Date Filed: August 5, 2022

28
                                                      Form DFEH-ENF 80 RS (Revised 02/22)

1 | VERIFICATION

2 | I, **Larry L. Baumbach**, am the **Attorney** in the above-entitled complaint.  I have read
3 | the foregoing complaint and know the contents thereof.   The matters alleged are based on information and belief, which I believe to be true.

4 | On August 5, 2022, I declare under penalty of perjury under the laws of the State of
5 | California that the foregoing is true and correct.

6 | **Chico CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26 | -4-
*Complaint – DFEH No. 202208-17812305*

27 | Date Filed: August 5, 2022

28

Form DFEH-ENF 80 RS (Revised 02/22)

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

KEVIN KISH, DIRECTOR

August 5, 2022

Valerie Peters
464 E 6th Ave
CHICO, CA 95926

RE:   **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 202208-17812005
Right to Sue: Peters / Mountain Circle Family Services, Inc., dba Sierra Nevada
Connections et al.

Dear Valerie Peters:

This letter informs you that the above-referenced complaint filed with the Department of
Fair Employment and Housing (DFEH) has been closed effective August 5, 2022
because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Government Code section 12945.2, has the right to
participate in DFEH's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in DFEH's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
DFEH's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number
indicated on the Right to Sue notice.

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

# COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
## DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

In the Matter of the Complaint of

Valerie Peters                                    DFEH No. 202208-17812005

                        Complainant,

vs.

Mountain Circle Family Services, Inc., dba Sierra
Nevada Connections
2550 Floral Ave, Ste #20
Chico, CA 95973

Justin Miller
2550 Floral Ave, Ste #20
Chico, CA 95973

Pamela Crespin
2550 Floral Ave, Ste #20
Chico, CA 95973

Bill Powers
2550 Floral Ave, Ste #20
Chico, CA 95973

Katherine Van Dolsen
2550 Floral Ave, Ste #20
Chico, CA 95973

Angie Carpenter
2550 Floral Ave, Ste #20
Chico, CA 95973

Shannon Doung
2550 Floral Ave, Ste #20
Chico, CA 95973

Robin Miller
2550 Floral Ave, Ste #20
Chico, CA 95973

-1-
*Complaint – DFEH No. 202208-17812005*

Date Filed: August 5, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

1  Robert Berry
   448 W 2nd Ave
2  Chico, CA 95926

3                          Respondents

4  _____

5

6

7  **1.** Respondent **Mountain Circle Family Services, Inc., dba Sierra Nevada Connections** is an
   **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov.
8  Code, § 12900 et seq.).

9  **2.**Complainant is naming **Justin Miller** individual as Co-Respondent(s).
   Complainant is naming **Pamela Crespin** individual as Co-Respondent(s).
10 Complainant is naming **Bill Powers** individual as Co-Respondent(s).
   Complainant is naming **Katherine Van Dolsen** individual as Co-Respondent(s).
11 Complainant is naming **Angie Carpenter** individual as Co-Respondent(s).
   Complainant is naming **Shannon Doung** individual as Co-Respondent(s).
12 Complainant is naming **Robin Miller** individual as Co-Respondent(s).
   Complainant is naming **Robert Berry** individual as Co-Respondent(s).
13

14 **3.** Complainant **Valerie Peters**, resides in the City of **CHICO**, State of **CA.**

15
   **4.** Complainant alleges that on or about **August 5, 2021**, respondent took the
16 following adverse actions:

17 **Complainant experienced retaliation** because complainant reported or resisted any form
   of discrimination or harassment and as a result was terminated.
18

19 **Additional Complaint Details:** Claimant, Valerie Peters, was hired by Respondent
   Mountain Circle Family Services Inc., dba Sierra Nevada Connections (hereinafter "MCFS")
20 on January 8, 2019. At the commencement of normal business hours on August 5, 2021,
   Claimant was informed that she was being terminated at will and without cause. The true
21 reason why she was terminated from her employment was she was being retaliated against
   by the Respondent due to her relationship with Shauna Rossington, the Executive Director
22 of Respondent MCFS. She was employed in a position of Visit Coordinator, requiring that
   she drive foster youth, and often their biological parents, to visitations to monitor and
23 supervise. In doing the work that she was hired to do, she performed her duties beyond
   expectations with complete dedication and with great benefit to the Respondent. The only
24 reason Valerie Peters was terminated was her relationship with the Executive Director, who
   herself was unlawfully terminated, and because Ms. Peters spoke affirmatively in favor of
25

26                          -2-
                  *Complaint – DFEH No. 202208-17812005*
27 Date Filed: August 5, 2022

28
                              Form DFEH-ENF 80 RS (Revised 02/22)

1  said Executive Director. In addition, thereto, the Respondent intercepted an email account
   that belonged to Claimant Peters and which she used to communicate with her attorney,
2  which Respondent intercepted and used to justify its retaliation and termination of Claimant.
   The claimant's rights under the California Fair Employment Housing Act were thereby
3  violated by the conduct of Respondent, and she, therefore, is entitled to damages
   accordingly and as provided by law.
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-3-
*Complaint – DFEH No. 202208-17812005*

Date Filed: August 5, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

VERIFICATION

I, **Larry L. Baumbach**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On August 5, 2022, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Chico CA**

-4-
*Complaint – DFEH No. 202208-17812005*

Date Filed: August 5, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

# EXHIBIT

# E

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

## Civil Rights Department                                        KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 (voice) | 800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@dfeh.ca.gov

November 7, 2022

Larry Baumbach
2531 Forest Ave, Suite 100
Chico, CA 95928

RE:    **Notice to Complainant's Attorney**
       CRD Matter Number: 202208-17807704
       Right to Sue: Rossington / Mountain Circle Family Services, Inc., dba Sierra
       Nevada Connections et al.

Dear
Larry Baumbach

Attached is a copy of your **amended** complaint of discrimination filed with the Civil
Rights Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq.

Pursuant to Government Code section 12962, CRD will not serve these documents on
the employer. You or your client must serve the complaint.

The amended complaint is deemed to have the same filing date of the original
complaint. This is not a new Right to Sue letter. The original Notice of Case Closure
and Right to Sue issued in this case remains the only such notice provided by the CRD.
(Cal. Code Regs., tit. 2, § 10022.)

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA**
**Civil Rights Department**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Shauna Rossington                                               CRD No. 202208-17807704

                                    Complainant,

vs.

Mountain Circle Family Services, Inc., dba Sierra
Nevada Connections
2550 Floral Ave, Ste #20
Chico, CA 95973

Justin Miller
2550 Floral Ave Ste #20
Chico, CA 95973

Pamela Crespin
2550 Floral Ave Ste #20
Chico, CA 95973

Katherine Van Dolsen
2550 Floral Ave Ste #20
Chico, CA 95973

Angie Carpenter
2550 Floral Ave Ste #20
Chico, CA 95973

Shannon Doung
2550 Floral Ave Ste #20
Chico, CA 95973

Robin Miller
2550 Floral Ave Ste #20
Chico, CA 95973

Robert Berry
448 W 2nd Ave
Chico, CA 95926

-1-
*Complaint – CRD No. 202208-17807704*

Date Filed: August 5, 2022
Date Amended: November 7, 2022

CRD-ENF 80 RS (Revised 10/22)

1  Bill Powers
   2550 Floral Ave Ste #20
2  Chico, CA 95973

3  Kacey Reynolds
   PO Box 3420
4  Chico, CA 95927

5                              Respondents

6  ──────────────────────────────────────────

7
   **1.** Respondent **Mountain Circle Family Services, Inc., dba Sierra Nevada Connections** is an
8  **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov.
   Code, § 12900 et seq.).
9
   2.Complainant is naming **Justin Miller** individual as Co-Respondent(s).
10 Complainant is naming **Pamela Crespin** individual as Co-Respondent(s).
   Complainant is naming **Katherine Van Dolsen** individual as Co-Respondent(s).
11 Complainant is naming **Angie Carpenter** individual as Co-Respondent(s).
   Complainant is naming **Shannon Doung** individual as Co-Respondent(s).
12 Complainant is naming **Robin Miller** individual as Co-Respondent(s).
   Complainant is naming **Robert Berry** individual as Co-Respondent(s).
13 Complainant is naming **Bill Powers** individual as Co-Respondent(s).
   Complainant is naming **Kacey Reynolds** individual as Co-Respondent(s).
14
15 **3.** Complainant **Shauna Rossington**, resides in the City of **Chico**, State of **CA**.

16
   **4.** Complainant alleges that on or about **August 4, 2021**, respondent took the
17 following adverse actions:

18 **Complainant experienced retaliation** because complainant reported or resisted any form
   of discrimination or harassment and as a result was forced to quit.
19

20 **Additional Complaint Details:** Claimant Shauna Rossington was hired on January 8, 2001,
21 as the Executive Director for Respondent Mountain Circle Family Services Inc., dba Sierra
   Nevada Connections (hereinafter "MCFS"). The Board of Directors hired her. Over her years
22 of service, she directed and grew MCFS into a company that was able to pay its employees
   a living wage and accomplish the family services for which it was designed. In June 2021,
23 the President of the MCFS resigned. The Board appointed no interim President, yet on
   August 4, 2021, several members of the Board convened without participation from the
24 Executive Director, Shauna Rossington. While the Board illegally convened and in violation
   of the Brown Act, it obtained advice from attorney Robert L. Berry and created an agenda
25 item without giving proper notice. The agenda item was to terminate the services of

26                              -2-
27
   Date Filed: August 5, 2022
28 Date Amended: November 7, 2022

                                        CRD-ENF 80 RS (Revised 10/22)

Executive Director Shauna Rossington, Claimant, herein. In achieving the unlawful activities of the Board, attorney Berry engaged in conduct that falsely accused the Claimant of committing crimes and all of which accusations were false and deliberately intended to undermine the effective administration of the Claimant.

Having been made aware of the illegal activities of the Board members Claimant resigned pursuant to a letter of resignation. While engaging in the unlawful activities, the MCFS intercepted private emails from employees that it had terminated intercepted correspondence between individual employees and the employee's attorney. MCFS unlawfully followed instructions by attorney Berry to invade privileged attorney-client correspondence. Berry, in turn, published deliberately false reports in an attempt to carry out the false arrest of Claimant and engaged in law enforcement intimidation of Claimant and her son at their residence. The MCFS refused to comply with the Freedom of Information Act (FOIA) demand. Refused to provide terminated employees access to their personal files as provided in Labor Code § 1198.5. In addition, the Respondent's refused to pay Claimant Rossington for over 200 hours of vacation pay and a minimum of $80,000.00 in severance pay that was contractually agreed to by MCFS. In doing the foregoing, the Respondents were guilty of violating California Penal Code § 496, which provides in signification part that any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages if any sustained by the Plaintiff, cost of suit and reasonable attorney fees. In doing the aforesaid acts, the respondents deprived the Claimant of her livelihood, wrongfully terminated her employment in violation of the Fair Employment Housing Act, and deprived her of a meaningful transition into other employment because of their conduct. Therefore, the Claimant is entitled to loss of severance pay and vacation pay in excess of $300,000.00, which is subject to triple damages under California Penal Code § 496. The Claimant is also entitled to damages for lost wages, vacation pay, emotional pain and suffering, and damages for failure to pay wages, all in excess of the sum of $750,000.00.

-3-
*Complaint – CRD No. 202208-17807704*

Date Filed: August 5, 2022
Date Amended: November 7, 2022

CRD-ENF 80 RS (Revised 10/22)

VERIFICATION

I, **Larry L. Baumbach**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On August 5, 2022, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Chico CA**

*Complaint – CRD No. 202208-17807704*

Date Filed: August 5, 2022
Date Amended: November 7, 2022

CRD-ENF 80 RS (Revised 10/22)

# EXHIBIT

# F

1  DANIEL V. KOHLS (SBN 167987)
   MARK D. SZYNTAR (SBN 316170) (Admission
2  Pending)
   HANSEN, KOHLS, SOMMER & JACOB, LLP
3  1520 Eureka Road, Suite 100
   Roseville, California 95661
4  Telephone: (916) 781-2550
   Facsimile: (916) 781-5339
5  Email: dkohls@hansenkohls.com
          mzyntar@hansenkohls.com
6
   Attorneys for Defendant ROBERT BERRY
7
                    UNITED STATES DISTRICT COURT
8
                   EASTERN DISTRICT OF CALIFORNIA
9

10

11  SHAUNA ROSSINGTON              Case No. 2:23-CV-00423-KJM-DMC
    ALEX ROSSINGTON
12  AIDEN ROSSINGTON
    JOSEPH CODDINGTON
13  VALERIE PETERS,
                                   **DECLARATION OF ROBERT BERRY**
14            Plaintiffs,          **IN SUPPORT OF DEFENDANT'S**
                                   **ANTI-SLAPP SPECIAL MOTION TO**
15       v.                        **STRIKE PLAINTIFFS' COMPLAINT**

16
    MOUNTAIN CIRCLE FAMILY SERVICES,   **Date:  April 19, 2023**
17  INC., dba Sierra Nevada Connections, a  **Time:  10:00 a.m.**
    California Corporation;            **Crtrm: 304**
18  JUSTIN MILLER, individually;      **Judge: Dennis M. Cota (Magistrate)**
    PAMELA CRESPIN, individually;
19  KATHERINE VAN DOLSEN, individually;  Complaint Filed:  February 6, 2023
20  ANGIE CARPENTER, individually;    Trial Date:       None Set
    ROBIN MILLER, individually;
21  SHANNON DOUNG, individually;
    ROBERT BERRY, individually;
22  BILL POWERS, individually;
    KACEY REYNOLDS, individually;
23  And DOES 1 through 69, inclusive

24
              Defendants.
25

26       I, Robert Berry, declare,

27       1.     I am an attorney licensed to practice law in the courts of the State of California.  I

28  am over the age of 18, a defendant in this lawsuit and the General Counsel for defendant
    00029308.1

1  Mountain Circle Family Services, Inc., dba Sierra Nevada Connections, a California Corporation

2  (hereafter "MCFS"). The following is true of my own personal knowledge and if called as a

3  witness I could and would competently testify to the truth of these matters. I am filing this

4  declaration in support of the Special Motion to Strike plaintiffs' Complaint pursuant to California

5  Code of Civil Procedure § 425.16.

6      2.    On or about August 1, 2021, I was contacted by MCFS to discuss the potential

7  courses of action that MCFS could take in light of the Exclusion Action the California

8  Department of Social Services filed against MCFS's Executive Director, Shauna Rossington.

9  The California Department of Social Services filed an amended Exclusion Action on August 11,

10  2021, which added MCFS as a respondent. Attached to the Table of Exhibits as Exhibit A is a

11  true and correct copy of the amended Exclusion Action that was filed against Shauna Rossington

12  and MCFS.

13      3.    On August 4, 2021, I attended a special meeting of the Board of Directors of

14  MCFS ("the Board") upon request of MCFS Director, Justin Miller. The special meeting was

15  held to discuss the Exclusion Action against MCFS Executive Director, Shauna Rossington. I

16  discussed the duties the Board owed to MCFS in light of the Exclusion Action and I advised

17  MCFS of its options regarding Shauna Rossington's employment status with MCFS. The Board

18  placed Shauna Rossington on administrative leave, indefinitely, and with pay. The Board

19  dismissed Bret Cook as its General Counsel at this meeting and retained me to be MCFS's

20  General Counsel. The Board dismissed several at-will employees at this meeting who were

21  considered to be a liability to MCFS. I have been MCFS's General Counsel from this time on.

22  The Board gave notice of the August 4, 2021, special meeting. I confirmed that a quorum was

23  present at this meeting and that the meeting minutes were properly recorded and executed. The

24  Board held a follow-up meeting on August 6, 2021. The Board gave notice of the August 6,

25  2021, meeting and I confirmed that a quorum was present and that the meeting minutes were

26  properly recorded and executed. Attached to the Table of Exhibits as Exhibit B are true and

27  correct copies of the above-mentioned Board meeting minutes from August 4, 2021, and August

28  6, 2021.

HANSEN, KOHLS, SOMMER & JACOB, LLP

00029308.1    - 2 -

4.      On August 9, 2021, I sent an email to the plaintiffs to address the cybercrimes they were committing against MCFS, and I informed them that I intended to pursue remedies and take legal action against them for the harm they caused MCFS. Attached to the Table of Exhibits as Exhibit C is a true and correct copy of the above-mentioned email exchange.

5.      On August 9, 2021, I sent a second email to Shauna Rossington demanding her to cease and desist from contact with MCFS and for her to direct any contact or communications to myself. On August 9, 2021, Shauna Rossington responded to my email and told me that she retained attorney Eugene Chittock to represent her. Attached to the Table of Exhibits as Exhibit D is a true and correct copy of the above-mentioned email exchange.

6.      All of my communications were directed to Eugene Chittock after I learned he was the plaintiffs' counsel. I received an employee record request for MCFS documents from Eugene Chittock on or about September 2021. I was significantly involved in this process and I can state that MCFS produced all non-privileged documents responsive to the employee record request in October 2021.

7.      Attached to the Table of Exhibits as Exhibit E is a true and correct copy of MCFS's Bylaws.

8.      Attached to the Table of Exhibits as Exhibit F is a true and correct copy Shauna Rossington's employment contract with MCFS.

9.      Attached to the Table of Exhibits as Exhibit G is a true and correct copy of Shauna Rossington's August 5, 2021, resignation letter to the Board.

10.     Attached to the Table of Exhibits as Exhibit H is a true and correct copy of email exchanges in MCFS's custody that involve the plaintiffs, from July 26, 2021, to August 9, 2021.

11.     By August 6, 2021, I knew the plaintiffs were intending to file several claims and lawsuits against MCFS. I attempted to contact the plaintiffs directly, from August 6, 2021, through August 9, 2021, to prevent them from interfering with MCFS's administrative system any further. I filed a police report regarding Shauna Rossington's conduct because she refused to return any of my calls or emails. The plaintiffs had control of MCFS's administrative system at the point in time I filed the police report.

00029308.1                          - 3 -

1    12.    Attached to the Table of Exhibits as Exhibit I is a true and correct copy of an

2    MCFS email acknowledging the Exclusion Action complaint against Shauna Rossington.

3    13.    On August 6, 2021, MCFS came into possession of an email that Shauna

4    Rossington had sent to several other former MCFS employees, and plaintiffs, on August 6, 2021.

5    Shauna Rossington openly discussed her plan to file several complaints and lawsuits against

6    MCFS in her August 6, 2021, email. MCFS discovered the email was open on a MCFS laptop

7    that was issued to a former employee. Attached to the Table of Exhibits as Exhibit J is a true and

8    correct copy of Shauna Rossington's August 6, 2021, email that was in MCFS's possession.

9    14.    Shauna Rossington filed a complaint against me with the State Bar of California

10    on January 14, 2022. I responded to the State Bar's inquiry on April 5, 2022, and I received a

11    letter from the State Bar confirming that the State Bar was closing its file and was not undertaking

12    any disciplinary action against me on April 29, 2022.

13    I declare under penalty of perjury under the laws of the State of California that the

14    foregoing is true and correct and that this declaration was executed on March __/4__, 2023, at

15    _Chico_____, California.

16

17

18

19    ROBERT BERRY

20

21

22

23

24

25

26

27

28

00029308.1                                    - 4 -

HANSEN, KOHLS, SOMMER & JACOB, LLP

1                               **PROOF OF SERVICE**

2    STATE OF CALIFORNIA        )

                                     ) ss.

3    COUNTY OF PLACER         )

4

5        I am a citizen of the United States and am employed within the county aforesaid; I am over the age of eighteen years and not a party to the within action; my business address is 1520 Eureka Road, Suite 100, Roseville, California 95661.

6

7        On the date indicated below, I caused to be served the within copy (or copies) of:

8    **DECLARATION OF ROBERT BERRY IN SUPPORT OF DEFENDANT ROBERT BERRY'S ANTI-SLAPP SPECIAL MOTION TO STRIKE PLAINTIFFS'**

9                                          **COMPLAINT**

10    ***Plaintiffs Pro Per***

11

12    Shauna ROSSINGTON
   2754 Dolphin Bend
   Chico, CA 95973

13    (530) 588-5511
   DrShaunalr@gmail.com

14

15    Alex ROSSINGTON
   464 E 6th Ave.,

16    Chico, CA 95926
   (530) 375-0441

17    Ahrossingto444@gmail.com

18    Aiden ROSSINGTON

19    2754 Dolphin Bend
   Chico, CA 95973

20    (530) 616-0623
   Aiden.ROSSINGTON@gmail.com

21

22    Joseph Coddington
   604 E Elm St.

23    Urbqna, IL 61802
   (828)712-6582

24    josephmcoddington@gmail.com

25    Valerie Peters

26    464 E 6th St.
   Chico, CA 95926

27    (530) 249-5993
   Valeriemp0501@gmail.com

28

HANSEN, KOHLS, SOMMER & JACOB, LLP

1    ▸    ( XX ) **BY MAIL** -- by placing a true copy thereof enclosed in an envelope addressed as
2         set forth above.  I am readily familiar with this office's practice whereby the mail
         is sealed, given the appropriate postage and placed in a designated mail collection
3         area.  Each day's mail is collected and deposited in a United States mailbox after
         the close of each day's business.
4

5    ***Counsel for Defendants Mountain Circle Family Service, Inc., d/b/a Sierra Nevada Connections,***
     ***Justin Miller, Pamela Crespin, Katherine Van Dolsen, Angie Carpenter, Shannan Duong, Bill***
6    ***Powers, and Kacey Reynolds, with respect to the claims of Shauna Rossington***

7    Kathleen Carter
     Heather E. Stern
8    650 Town Center Drive, Suite 700
     MESSNER REEVES LLP
9    Costa Mesa, California 92626
     Tel: (949) 612-9128
10   Facsimile: (949) 438-2304
11   kcarter@messner.com
     hstern@messner.com
12

13   ***Counsel for Defendant Mountain Circle Family Service, Inc., d/b/a Sierra Nevada Connections,***
     ***Justin Miller, Pamela Crespin, Katherine Van Dolsen, Angie Carpenter, Shannan Duong, Bill***
14   ***Powers, Kacey Reynolds, and Robin Miller, with respect to the claims of Alex Rossington, Aiden***
     ***Rossington, Joseph Coddington, and Valerie Peterss***
15

16   Patrick L. Deedon
     Sonja M. Dahl
17   MAIRE & DEEDON
     2851 Park Marina Drive, Suite 300
18   Redding, CA 96001-2813
     Tel:  (530) 246-6050
19   Facsimile (530) 246-6060
     pdeedon@maire-law.com
20   sdahl@maire-law.com

21

22   ▸    ( XX ) **BY EMAIL** -- by emailing a true copy thereof to the email addresses set forth
23        above.  I did not receive, within a reasonable time after transmission, any
         electronic message or other indication that the transmission was unsuccessful.
24
         I declare under penalty of perjury under the laws of the State of California that the
25   foregoing is true and correct.  Executed on March 14, 2023, at Roseville, California.
26
                                                        _Susie Schiele_
27

28

00029308.1                              - 6 -

Declaration in Support of Def Robert Berry's Anti-SLAPP Special Motion To Strike Pltfs' Complaint

# EXHIBIT

# G



STATE OF CALIFORNIA—HEALTH AND HUMAN SERVICES AGENCY
# DEPARTMENT OF SOCIAL SERVICES
### COMMUNITY CARE LICENSING DIVISION
CCLD Regional Office
520 COHASSET RD., SUITE 170
CHICO, CA 95926

KIM JOHNSON
DIRECTOR



GAVIN NEWSOM
GOVERNOR

January 29, 2020

MOUNTAIN CIRCLE FAMILY SERVICES, INC.
MOUNTAIN CIRCLE - SUSANVILLE – ~~195002229~~   195 09009
44 N. LASSEN STREET
SUSANVILLE, CA 96130

## THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION

DEAR SHAUNA ROSSINGTON:

RE: DEFICIENCY AND/OR PENALTY REVIEW

This letter is in response to your correspondence received December 19, 2019 in which you are appealing substantiated findings on complaint number 25-CR-20190905163925 alleging that:

Foster Family Agency removed home files from facility in anticipation of licensing inspections.

- Deficiency: California Code of Regulations (CCR) Section 80044(c)(1) Inspection Authority...The licensee shall ensure that provisions are made for the examination of all records relating to the operation of the facility.

- In your appeal, you state Licensing Program Analyst (LPA) Deaton did not request the archived files, there are no regulations about storage of archived files, and you have not had an audit for archived files.

Upon review of the appeal, I identified that several interviews corroborated the allegation occurred on multiple occasions, many of which referenced the Harris file as an example. LPA Deaton thoroughly documented her attempts to locate the Harris file. When LPA Deaton directly asked for the file from the Records Manager after being assured multiple times no other files were in the facility, it was retrieved indicating the employee was aware of the location although it was not visible at the time of LPA Deaton's inspection. Although not readily, the Harris file was eventually produced.

Based on my review I believe that your dispute is valid. Therefore, the appeal to the 80044(c)(1) citation is granted and the citation will be dismissed.

I want to thank you for allowing me to address your concerns. If you have any questions regarding this letter, please do not hesitate to contact me at (916) 263-4810.

Page 1 of 2

Should you wish to further appeal this citation, please address your letter to:

Jean Chen
CCLD Program Administrator
Statewide Children's Residential Program
Community Care Licensing Division
744 P Street, M.S. T9-15-54
Sacramento, CA 95814

The results are as follows:

☒ Deficiency and/or Penalty Assessment Dismissed.
☐ Penalty Assessment Amount amended to $_____.
☐ Extension of correction due date approved to _____.
☐ Extension date denied.
☐ Request denied.

Sincerely,


Ia Lo
Regional Manager
Community Care Licensing Division

Page 2 of 2



STATE OF CALIFORNIA—HEALTH AND HUMAN SERVICES AGENCY
# DEPARTMENT OF SOCIAL SERVICES
744 P Street • Sacramento, CA 95814 • www.cdss.ca.gov



**KIM JOHNSON**
**DIRECTOR**

**GAVIN NEWSOM**
**GOVERNOR**

## Confidential

## <u>Executive Summary</u>

| | |
|---|---|
| **Date:** | April 24, 2020 |
| **To:** | **Daniel Allmon, Licensing Program Manager** |
| **Auditor:** | Jackie Juarez |
| **Facility:** | Mountain Circle – Susanville/Greenville |
| **Licensee:** | **Mountain Circle Family Services, Inc.** |
| **License #:** | 185090020 & 325002758 |
| **Facility Type:** | Transitional Housing Placement Program and Foster Family Agency |

**Background**

During the trust audit performed on Mountain Circle Family Services, Inc. other items became known to the auditor that were not related to the original complaint of embezzlement of Transitional Housing Program (THP) participants emancipation funds. These items included falsifying documents to receive Intensive Services Foster Care rates for foster parents and other client files; lack of qualified staff; misuse and misappropriation of funds identified in the audit report from the independent CPA and bank statements; lack of internal controls to protect restricted use funds; and lack of Board oversight.

A trust audit was performed by Jackie Juarez and it was determined that the emancipation funds were not embezzled or misappropriated, the result was they were not accounted for properly or distributed. **(See Trust Audit report)** During the course of the audit Jenifer Fleming, the Chief Financial Officer (CFO) for Mountain Circle was fired for embezzlement of approximately $60,658 per the police report. It appears that a new external Certified Public Accountant (CPA) SingletonAuman pc was hired to complete the annual audit and discovered misappropriation by the CFO. **(See audit report attached pg. 28)** It was

# EXHIBIT

# H

Control Number 25-CR-20190905163925

STATE OF CALIFORNIA - HEALTH AND HUMAN SERVICES AGENCY

CALIFORNIA DEPARTMENT OF SOCIAL SERVICES
COMMUNITY CARE LICENSING DIVISION

## DETAIL SUPPORTIVE INFORMATION

CCLD Regional Office, 850 COHASSET RD., SUITE 170
CHICO, CA 95926

Interview - CFO

This form is intended to document information that is relevant to the licensing file but generally not public information, such as collateral visits. This would include back-up information on deficiencies such as conditions contributing to the severity of violations, witnesses to the violations, or other observation from field notes. When used to support the Licensing Report (LIC809) the form should be completed, signed and dated shortly after the visit. This assures accuracy and completeness of the detail of the public report.

**CONFIDENTIAL**

| FACILITY NAME: | FACILITY NUMBER: | DATE(S) OF CONTACT: | COLLATERAL VISIT? |
|---|---|---|---|
| MOUNTAIN CIRCLE-SUSANVILLE | 185090019 | 09/12/2019 | No |

1  CFO: Jennifer Fleming, Chief Financial Officer
2  AT1: Patrick Deedon, Attorney who sealed files related to the employee dispute case
3  AD: Shauna Ressington, Administrator
4  AT2: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5
6  Licensing Program Analysts (LPA) Katherine Deaton and Nicole Mous met with CFO athe the Mountain Circle
7  Greenville office on 9/12/19.  LPA Deaton informed CFO there is a complaint investigation not related to the
8  Mountain Circle - Greenville facility number and that the LPAs needed access to employee records that are
9  being held at this location.  CFO provided access to all records except one sealed box that was sealed per AT1
10 as they are related to an employee dispute case.  CFO contacted AD to relay the LPAs request to access these
11 records.  AD stated she wanted the records subpoenaed, was contacting her attorneys, and wanted to be
12 present when the LPAs viewed the records.  LPA Deaton informed AD and CFO that CCL would like to be
13 reasonable in our requests and are happy to wait for AD.  In lieu of AD, AT2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34
35

LICENSING EVALUATOR NAME: Katherine Deaton

TELEPHONE: (530) 513-3672

LICENSING EVALUATOR SIGNATURE:

DATE: 09/12/2019

LIC812 (FAS) [PERSONAL/CONFIDENTIAL DEPENDING ON TYPE OF INFORMATION] - (11/82)

Page: 1 of 1

Control Number 25-CR-20190905163925

STATE OF CALIFORNIA - HEALTH AND HUMAN SERVICES AGENCY

CALIFORNIA DEPARTMENT OF SOCIAL SERVICES
COMMUNITY CARE LICENSING DIVISION

**DETAIL SUPPORTIVE INFORMATION**
Comprehensive Record Review

CCLD Regional Office, 939 COHASSET RD., SUITE 170
CHICO, CA 95926

This form is intended to document information that is relevant to the licensing file but generally not public information, such as collateral visits. This would include back-up information on deficiencies such as conditions contributing to the severity of violations, witnesses to the violations, or other observation from field notes. When used to support the Licensing Report (LIC809) the form should be completed, signed and dated shortly after the visit. This assures accuracy and completeness of the detail of the public report.
CONFIDENTIAL

| FACILITY NAME: | FACILITY NUMBER: | DATE(S) OF CONTACT: | COLLATERAL VISIT? |
|---|---|---|---|
| MOUNTAIN CIRCLE-SUSANVILLE | 185090019 | 09/12/2019 | No |

1  FC1 ▓▓▓▓▓▓▓▓▓▓
2  PE6: Michelle Noordhoff, Previous Employee from 2014 or 2015 - 12/2018 or 1/2019
3  PE7: ▓▓▓▓▓▓▓▓▓▓ Previous Employee Worked 5/2018 – 9/2018
4  PE11: Jamilyn Purvis, Previous Employee - 8/2017 as an intern then 4/2018 through 7/24/2018 as a paid
5  employee
6  SS: Seth Shepard, Previous Chief Operating Officer
7  AD: Shauna Rossington, Administrator
8  PE3: Sandra Jersey, Previous employee from 5/2017 - 5/2018
9  ▓▓▓▓▓▓▓▓▓▓▓ Foster Child
10 PE11: ▓▓▓▓▓▓▓▓ Previous Mountain Circle Chico employee
11 PE(▓▓▓▓▓▓▓), Previous Employee Worked 3/2018 - approximately 3/2019
12
13
14 Licensing Program Analyst (LPA) Katherine Deston obtained the following records. Hard copies of these
15 documents have been included in the complaint submission.
16 Foster youth admission documents, case notes, and archived home file records.  Previous employee job
17 applications, job descriptions, credentials, social work exception letters and contact information were also
18 obtained from the Greenville office.
19
20 12/9/19: FC1 Admit Form that lists PE6 as the Agency Social Worker assigned to his case.  Email
21 correspondence from PE7 to LPA Deston with attached Facebook with PE11.
22
23
24 12/10/19: Forwarded email correspondence from SS to PE6 dated 10/27/17 asking PE6 to complete Progress
25 Reports and resource family re-certifications.  Forwarded email correspondence from PE6 to SS dated 12/4/17
26 providing updates on Social Work caseload.  Forwarded email correspondence from AD to all staff stating PE3
27 had relapsed, could no longer be employed, and was not to be communicated with regarding work.  Forwarded
28 email correspondence from PE6 to LPA Leach dated 3/7/18 with previous FFA employee contact information.
29
30
31 12/11/19: FC2 Admit Form that lists PE4 as the Agency Social Worker assigned to his case.  Photo of PE11's
32 FFA business card stating she is a Social Worker.
33
34
35

| LICENSING EVALUATOR NAME: Katherine Deston | TELEPHONE: (530) 513-3672 |
|---|---|

LICENSING EVALUATOR SIGNATURE:

*Katherine Deston*      DATE: 12/11/2019

LIC812 (FAS) (PERSONAL/CONFIDENTIAL DEPENDING ON TYPE OF INFORMATION) - (11/05)      Page: 1 of 1

# EXHIBIT

# I

Compatibility Mode
... disabled to prevent problems when working with previous ... converting this file will enable these features, but may result in

Inspect Document
... types of changes people can make to this document.

Inspect Document
... Before publishing this file, be aware that it contains:
Document properties, author's name and related dates
... Custom XML data
... Content that cannot be checked for accessibility issues because of the current file

History
... Versions ... There are no previous versions.

Compare Document

| Properties | |
| --- | --- |
| Size | Not saved |
| Pages | 3 |
| Words | 459 |
| Total Editing Time | 4 Minutes |
| Title | Add a title |
| Tags | Add a tag |
| Comments | Add comments |
| Template | Normal |
| Status | Add text |
| Categories | Add a category |
| Subject | Specify the subject |
| Hyperlink Base | Add text |
| Company | Specify the company |

| Related Dates | |
| --- | --- |
| Last Modified | 8/4/2021 4:14 PM |
| Created | 8/4/2021 4:12 PM |
| Last Printed | 8/2/2022 3:48 PM |

| Related People | |
| --- | --- |
| Manager | Specify the manager |
| Author | RR Robert Boris, Add an author |
| Last Modified By | RB |

MOUNTAIN CIRCLE FAMILY SERVICES, INC, dba SIERRA NEVADA CONNECTIONS

### AGENDA–AUGUST 4, 2021

1. Call to order <u>Special Meeting</u> of the Board; roll call: Justin   Pamela   Bill   Jeff   Andy

2. Introduce Rob Berry-Consulting attorney on board procedure

3. Bret Cooks Report:

    a. Actions:

    b. Information:

    c. Status- County council?  Resolution/Rep Agreement

    d. Excuse Bret from meeting

4. Administrative bookkeeping:

    a. Nomination to Elect Chairman of Board  **Motion/Second/Vote**

    b. Establish board makeup: **Motion/Second/Vote**

        i. Jeff's removal without resolution

            1. Named in Exclusion Accusation

            2. Missed three meetings §4.5(c)(ii)

    c. **Motion/Second/Vote**

    d. Declare vacancy and accept nominations by Board at next meeting.

        **Motion/Second/Vote**

    e. Nominations shall be sent to Board Chairman before next meeting.

5. Presentation by Rob Berry-pending legal issues and Board responsibilities/liabilities

    a. Fiduciary Duty to client

    b. Confidentiality

    c. Acknowledgement by board members

6. Decision on retaining or terminating services of Bret Cook

    a. Termination at will of attorney relationships

MOUNTAIN CIRCLE FAMILY SERVICES, INC, dba SIERRA NEVADA CONNECTIONS

    b.  Preserve and return all records in his possession for the entire period of his representation.  As General Counsel, no documents are protected under Attorney/client, attorney work-product or confidentiality agreements."

7.  Decision on retaining or terminating Shauna Rossington:

    a.  Termination at Will

    b.  Termination for Cause

    c.  Administrative Leave/forced vacation

    d.  Resolution **Motion/Second/Vote**

    e.  Instructions-"Shauna shall be instructed by Angela Carpenter to:

        i.  Return all company property, in any form, no later than 24 hours from now.

        ii.  All documents shall be protected and preserved and delivered to company representative as soon as possible.  Any documents not within immediate personal possession shall be identified by location and contents.

        iii.  All care and diligence shall be employed to preserve the value and condition of all company property, including documents, assets, bank accounts, vehicles, real property, furniture, fixtures, or any other item acquired with company funds our any other means which accrues value, title or ownership to Company.  Any items disputed by any party shall be surrendered to company under protest, and will be secured by company until such time as any arising title dispute is legally resolved."

8.  Appointment of Interim Executive Director

    a.  Nominations

MOUNTAIN CIRCLE FAMILY SERVICES, INC, dba SIERRA NEVADA CONNECTIONS

     b.  Resolution: "I move to appoint _____ to the position of Interim Executive Director, to act with all of the authority and privilege the Executive Director is entitled to under the Bylaws." **Motion/Second/Vote**

9.  Other potential Employment issues:

     a.  List employees who might represent concerns for ongoing employment.

     b.  Resolution: Direct the Interim Executive Director to take whatever actions she deems necessary with regard to all remaining employee not the subject of direct board action today. **Motion/Second/Vote**

10. Potential Engagement of Rob Berry as interim General Counsel

     a.  Resolution: Appoint Rob Berry Interim General Counsel

     b.  **Motion/Second/Vote**

11. Other business needing board action?

     a.  Future Meetings

     b.  Future actions

          i.  Forensic Audit

          ii.  Inventory of Company assets

          iii.  Other?

12. Adjourn to (Date?)

# EXHIBIT

# J

# EXHIBIT 5

Notes from CA Unemployment Insurance Appeals Board

4/29/2022

Case No. 7108780

Shauna Rossington, Claimant – Appellant

I, Joy Amaro, Executive Director of Sierra Nevada Connections represented SNC as Ms. Rossington had appealed her unemployment claim. Hearing time and place was 4/29/2022 at 10:30am. Place was a telephone hearing.

I called in at 10:30am and registered. The judge returned my call and conferenced in Ms. Rossington. We were placed under oath. The judge had both the appellant and employer acknowledge that we were alone in our office/space and no one was in the room. I stated I was alone, and when Ms. Rossington stated she was alone, the judge questioned her because he had heard her whispering prior to being placed under oath. The judge questioned her twice. Ms. Rossington stated she was closing the door as there were children walking by her house.

I was asked for Ms. Rossington's date of hire, date of separation and ending annual salary. I did not have Ms. Rossington's employment file at my desk and could only answer the first two questions.

The judge asked me for details of how the actions came about. I told him that I was not employed at the time of this incident. I could tell him what I was informed. He remined me that I was under oath, and I said yes, I can only share what I was informed and what I was given in the form of documentation.

I relayed there was a special board meeting to discuss Ms. Rossington's employment, action was taken to put her on administrative leave.

Ms. Rossington stated that her termination was premeditated. I stated that her employment status was on the agenda and the board had different scenarios presented to them. The board moved to place the appellant on administrative leave. I referenced the text message that the appellant sent to the HR/Finance Director regarding her employment status, after a board member had resigned and left the meeting calling Ms. Rossington. The text message was time stamped at 9:05pm on August 4, 2021. Ms. Rossington asked is she was fired, and the HR Director responded, "no administrative leave". I then referenced the resignation email Ms. Rossington sent to the board of directors dated 8/5/2021, at 1:12am. I informed the judge that after the board meeting, the HR Director did not have time to prepare and communicate the results and complete the proper paperwork for Ms. Rossington to sign and acknowledge such actions and that it was on her own accord to resign.

Ms. Rossington stated this was premeditated since she was locked out of her email and the locks were changed. The judge asked me why this would have been done before the board vote. I stated that the agenda stated some sort of action was going to be taken, and what ever that action would be, the results would be the same with the email and the locks to safeguard the information and property of SNC.

Ms. Rossington wanted Andy Fee to be called as a witness, he was the board member that resigned and called her. The judge declined and said it wasn't necessary.

Written decision will be mailed regarding this case.

*Joy Amaro*

# Declaration of Joy Amaro

I, Joy Amaro, am currently serving as Executive Director, Mountain Circle Family Services. My employment in that capacity commenced in December of 2021.

I attended the April 29, 2022 Unemployment Insurance Appeal by Ms. Rossington.

I have reviewed the contemporaneous notes written and signed by me, listed as Exhibit 5.

I hereby testify and would so state if asked to testify as a witness, that the facts and information in these exhibits are true and correct, and based on information and belief, accurately record the events and actions as stated.

I declare under penalty of perjury under the laws of the state of California, that the foregoing is true and correct. Executed on May 31, 2022 in Chico, California.


_Joy Amaro_ _____          _5·31·2022_
Joy Amaro                                        Date
Executive Director
Mountain Circle Family Services

# EXHIBIT

# K

BYLAWS
OF

## MOUNTAIN CIRCLE FAMILY SERVICES, INC.

A California Nonprofit Public Benefit Corporation

### ARTICLE I.
### LOCATION OF OFFICES

The name of this corporation is **MOUNTAIN CIRCLE FAMILY SERVICES, INC.** It is a California nonprofit public benefit corporation with principal offices at 312 Crescent St., _____, California.

### ARTICLE II.
### PURPOSE

This corporation is a nonprofit public benefit corporation and is not organized for the private gain of any person. It is organized under the California Nonprofit Public Benefit Corporation Law for public and charitable purposes. The specific purposes of this corporation are:

To increase the self-esteem of children, facilitate the healthy development of family relationships and strengthen community support for said family; and

To provide placement alternatives, counseling education, and support to children and families; and

To engage in any other lawful activities permitted under the California Nonprofit Public Benefit Corporation Law. The recital of these purposes as contained in this paragraph is intended to be exclusive of any and all other purposes, this corporation being formed for such public and charitable purposes only.

### ARTICLE III.
### MEMBERSHIP

**3.1 Members.** The corporation shall have no members. Any action that would otherwise require approval by a majority of all members shall only require approval of the Board of Directors ("Board"). All rights that would otherwise vest in the members shall vest in the Board.

**3.2 Associates.** Nothing contained in Section 3.1 of these Bylaws shall be construed to limit the right of the corporation to refer to persons associated with the corporation as "members" even though such persons are not corporate members, and no such reference in or outside of these Bylaws shall constitute anyone being a member, within the meaning of Corp. Code § 5056. The corporation may confer by amendment of its Articles or of these Bylaws some or all of the rights

of a member, as set forth in the California Nonprofit Corporation Law [Corp. Code §§ 5000 et seq.], on any person or persons who do not have the right to vote for the election of Directors or on a disposition of substantially all of the assets of the corporation or on a merger or on a dissolution or on changes to the corporation's Articles or Bylaws, but no such person shall be a member within the meaning of Corp. Code § 5056.

## ARTICLE IV.
### DIRECTORS

**4.1. Powers.** Subject to limitations of the Articles and these Bylaws and of pertinent restrictions of the California Corporations Code, all the activities and affairs of the corporation shall be exercised by or under the direction of the Board of Directors. Without prejudice to these general powers, but subject to the same limitations, it is hereby expressly declared that the Board shall have the following powers in addition to the other powers enumerated in these Bylaws:

(a) to select and remove all the officers, agents and employees of the corporation, prescribe duties for them as may not be inconsistent with law, with the Articles of Incorporation, or with these Bylaws, fix the terms of their offices and their compensation, and in their discretion require from them security for faithful service;

(b) to make disbursements from the funds and properties of the corporation as are required to fulfill the purposes of this corporation as are more fully set out in the Articles of Incorporation and generally to conduct, manage, and control the activities and affairs of the corporation and to make rules and regulations not inconsistent with law, with the Articles of Incorporation, or with these Bylaws, as they may deem best;

(c) to adopt, make, and use a corporate seal and to alter the form of the seal from time to time as they may deem best;

(d) to borrow money and incur indebtedness for the purposes of the corporation and to execute and deliver, in the corporate name, promissory notes, bonds, debentures, deeds of trust, mortgages, pledges, hypothecations, or other evidences of debt and securities; and

(e) to the extent permitted by the exempt status of the organization, to carry on a business at a profit and apply any profit that results from the business activity to any activity in which it may legally engage.

Individual Directors are not authorized to give direction to any Corporation employee.

**4.2. Number of Directors.** The authorized number of Directors of the corporation shall be not less than five (5) and not more than seven (7), with the exact number to be determined from time to time by the Directors until changed by an amendment of the Articles of Incorporation or by an amendment to these Bylaws. The number may be changed by the vote or written assent of a majority of the directors then in office.



4.3. **Selection and Tenure of Office.** Directors shall be elected at the annual meeting of the Directors. Each Director shall serve for two years with the term beginning on the July 1st following initial election and until a successor has been elected and qualified. If any annual meeting is not held or the Directors are not elected at that meeting, the Directors may be elected at any special meeting of Directors held for that purpose. Directors may serve consecutive terms but must be reelected by a majority of the Board before the end of each term. Directors running for reelection are not eligible to vote in such elections.

*[OPTIONAL: staggered board, with percent of directors elected each year:]*
*[Percentage]* of the Directors shall be elected at each annual meeting of the Directors. Each Director shall serve for a period of two years and until a successor has been elected and qualified. If any annual meeting is not held, or the Directors are not elected at that meeting, the Directors may be elected at any special meeting of Directors held for that purpose.

*[OPTIONAL: No Director shall serve more than [number] full consecutive terms without a sabbatical of at least one year.]*

4.4. **Qualifications.** Each Director must believe without reservation in the purposes of the organization. In addition, each Director must have attended and fully participated in at least one official event of the corporation. Directors must sign a statement of intent indicating 1) intent to fulfill at least a two-year commitment, and 2) familiarity with the policies pertaining to Directors as set forth in these bylaws *and expectations established by traditional Board practice* [what does that mean?]. Directors cannot be employees of the Corporation. Relatives, spouses or domestic partners of Corporation employees are not eligible to serve as a Director.  *Efforts shall be made to find Directors to provide expertise to the Corporation and to enhance the Corporation's capabilities and representation of the community.*



4.5. **Vacancies.** Subject to the provisions of Corp. Code § 5226, any Director may resign effective on giving written notice to the Chair of the Board, the President, or the Secretary of the Board, unless the notice specifies a later time for the effectiveness of such resignation.

If the resignation is to take effect at some future time, a successor may be selected before that time, to take office when the resignation becomes effective.

Vacancies in the Board shall be filled in the same manner as the Director or Directors whose office is vacant was selected, provided that vacancies to be filled by election by Directors may be filed by a majority of the remaining Directors, although less than a quorum, or by a sole remaining Director. Each Director so elected shall hold office until the expiration of the term of the replaced Director and until a successor has been named and qualified.

A vacancy or vacancies in the Board shall be deemed to exist in case of the death, resignation, or removal of any Director, or if the authorized number of Directors is increased.

The Board may declare vacant the office of a Director who has been declared of unsound mind by a final order of court, or convicted of a felony, or been found by a final order or judgment of

any court to have breached any duty arising under the California Nonprofit Public Benefit Corporation Law. [Corp. Code §§ 5230 et seq.]

No reduction of the authorized number of Directors shall have the effect of removing any Director prior to the expiration of the Director's term of office.

**4.6. Removal of Directors.** A Director may be removed from office if any of the following has been found to have occurred:

    (a)    the Director misses two (2) or more consecutive board meetings or three (3) meetings in a calendar year without cause;

    (b)    the Director becomes physically incapacitated or his or her inability to serve is established in the minds of a majority of the Board;

    (c)    a conflict of interest is found to exist between the Director and the corporation;

    (d)    the Director is found to have engaged in activities that are directly contrary to the interests of the corporation; or

    (e)    the Director is found to be engaged in the misrepresentation of the corporation and its policies to outside third parties, either willfully, or on a repeated basis.

    (f)    A majority of Directors who meet the qualifications set forth in Section 4.4 determine that the Director has not continued to meet these qualifications.

*[Include any other removal provisions desired.]*

Before any removal occurs, the Director will be advised of the allegation and the basis for the allegation, and will be given an opportunity to present to the Board any contrary evidence, or explanation he or she may have. Removal must be by a majority vote of all the Directors.

**4.7. Place of Meetings.** Notwithstanding anything to the contrary provided in these Bylaws, any meeting (whether regular, special or adjourned) of the Board of Directors of the corporation may be held at any place within or without the State of California that has been designated for that purpose by resolution of the Board of Directors or by the written consent of all the members of the Board.

**4.8. Regular Meetings.** Regular meetings of the Board shall be held at least four times a year at such time and place as shall be designated by the Board on [] days notice in writing or other system or technology designed to record and communicate messages such as facsimile, electronic mail, or other electronic means.

[OPTIONAL: shall be held without call or notice on *[date]* of each year, at *[hour]* local time, at the offices of the corporation unless otherwise modified by the Board; provided, however, should

this day fall on a Saturday, Sunday, or holiday observed by the corporation, then the meeting shall be held at the same time on the next day thereafter ensuing that is a full business day.]

**4.9. Special Meetings.** Special meetings of the Board of Directors may be called at any time by order of the President, Chair of the Board, of any Vice President, of the Secretary, or of two or more of the Directors.

**4.10. Notice of Special Meetings.** Special meetings of the Board shall be held on 4 days notice by first class mail or a 48-hour notice given personally or by telephone, including a voice messaging system or other system or technology designed to record and communicate messages, telegraph, facsimile, electronic mail, or other electronic means. Any notice shall be addressed or delivered to each Director or at the Director's address as it is shown on the records of the corporation or as may have been given to the corporation by the Director for the purpose of notice or, if the address is not shown on the records or is not readily ascertainable, then at the place at which the meetings of the Directors are regularly held.

When circumstances demand immediate action, the Board, if a majority of members agree, may make a decision via fax or email. In such situations, all Directors must be contacted and given an opportunity to provide input.

**4.11. Quorum.** Except as otherwise provided in these Bylaws, a majority of the authorized number of Directors shall constitute a quorum except when a vacancy or vacancies prevents this majority, whereupon a majority of the Directors in office shall constitute a quorum, provided such majority shall constitute either one third of the authorized number of Directors or at least two Directors, whichever is larger, or unless the authorized number of Directors is only one. A majority of the Directors present, whether or not a quorum is present, may adjourn any meeting to another time and place. Except as the Articles of Incorporation, these Bylaws and the California Nonprofit Public Benefit Corporation Law may provide, the act or decision done or made by a majority of the Directors present at a meeting duly held at which a quorum is present shall be the act of the Board of Directors.

**4.12. Participation in Meetings by Conference Telephone.** Members of the Board may participate in a meeting through use of conference telephone, electronic video screen communications, or other communications equipment, as long as all members participating in the meeting can communicate with all of the other members concurrently, each member is provided the means of participating in all matters before the board, including the capacity to propose, or to interpose an objection, to a specific action to be taken, and the corporation adopts and implements some means of verifying that the person communicating by telephone, electronic video screen, or other communications equipment is a director entitled to participate in the board meeting, and that all statements, questions, actions, or votes were made by that director and not by another person not permitted to participate as a director.

**4.13. Waiver of Notice.** Notice of a meeting need not be given to any Director who signs a waiver of notice or a written consent to holding the meeting or an approval of the minutes of the meeting, whether before or after the meeting, or who attends the meeting without protesting,

prior to the meeting or at its commencement, the lack of notice. All waivers, consents, and approvals shall be filed with the corporate records or made a part of the minutes of the meetings.

**4.14. Adjournment.** A majority of the Directors present, whether or not a quorum is present, may adjourn any Directors' meeting to another time and place. Notice of the time and place of holding an adjourned meeting need not be given to absent Directors if the time and place be fixed at the meeting adjourned, except as provided in the next sentence. If the meeting is adjourned for more than 24 hours, notice of any adjournment to another time or place shall be given prior to the time of the adjourned meeting to the Directors who were not present at the time of the adjournment.

**4.15. Action Without Meeting.** Any action required or permitted to be taken by the Board may be taken without a meeting if all members of the Board individually or collectively consents in writing to the action. The consent or consents shall have the same effect as a unanimous vote of the Board and shall be filed with the minutes of proceedings of the Board.

**4:16. Rights of Inspection.** Every Director shall have the absolute right at any reasonable time to inspect and copy all books, records, and documents of every kind, and to inspect the physical properties of the corporation of which the person is a Director, for a purpose reasonably related to that person's interest as a Director.

**4.17. Official Board Committees.** Committees of the Board may be appointed by resolution passed by a majority of the whole Board. Committees shall be composed of two or more members of the Board, and shall have the powers of the Board as may be expressly delegated to it by resolution of the Board of Directors, except with respect to:

a)    the approval of any action for which the California Nonprofit Public Benefit Corporation Law also requires members' approval (must be approved by the Board as a whole);

(b)    the filling of vacancies on the Board or on any committee;

(c)    the fixing of compensation of the Directors for serving on the Board or on any committee;

(d)    the amendment or repeal of Bylaws or the adoption of new Bylaws;

(e)    the amendment or repeal of any resolution of the Board which by its express terms is not so amendable or repealable;

(f)    the appointment of other committees of the Board or the members thereof;

(g)    the expenditure of corporate funds to support a nominee for Director after there are more people nominated for Director than can be elected; or

(h)    the approval of any self-dealing transaction, as these transactions are defined in Corp. Code § 5233.

Any committee may be designated an Executive Committee or by another name as the Board shall specify. The Board shall have the power to prescribe the manner in which proceedings of any committee shall be conducted. In the absence of any prescription, the committee shall have the power to prescribe the manner in which its proceedings shall be conducted. Unless the Board or committee shall otherwise provide, the regular and special meetings and other actions of any committee shall be governed by the provision of this Article applicable to meetings and actions of the Board. Minutes shall be kept of each meeting of each committee.

**4.18. Audit Committee.** The corporation shall have an audit committee consisting of at least one (1) Director, and may include nonvoting advisors. Directors who are employees or officers of the corporation or who receive, directly or indirectly, any consulting, advisory, or other compensatory fees from the corporation (other than for service as director) may not serve on the audit committee. The audit committee shall perform the duties and adhere to the guidelines set forth in the corporation's audit committee charter as amended from time to time by the board. Such duties include, but are not limited to:

(1)    Assisting the board in choosing an independent auditor and recommending termination of the auditor, if necessary;

(2)    Negotiating the auditor's compensation;

(3)    Conferring with the auditor regarding the corporation's financial affairs; and

(4)    Reviewing and accepting or rejecting the audit.

Members of the audit committee shall not receive compensation for their services on the audit committee in excess of that provided to directors for their service on the board. If the corporation has a finance committee, a majority of the members of the audit committee may not concurrently serve as members of the finance committee, and the chair of the audit committee may not serve on the finance committee.

**4.19. Compensation Committee.** The corporation shall have a compensation committee consisting of at least three directors and no one who is not a director. Directors who are also employees of the corporation may not serve on the compensation committee. Pursuant to Government Code §12586(g) and the applicable provisions of federal law, the compensation committee shall review the compensation of the President, Executive Director, Treasurer/Chief Financial Officer, and such other officers of the Corporation or employees of the Corporation the compensation committee determines appropriate, annually and whenever a modification in compensation is proposed. The review shall include an evaluation of the performance of the officers/employees and an analysis of appropriate comparability data. Based on its review, the compensation committee shall recommend just and reasonable compensation amounts for the officers/employees to the board. At the request of the president or the board, the compensation

committee shall review any issue involving staff compensation and benefits, including but not limited to, housing, health, and retirement plans.

**4.20. Compensation and Expenses.** No Director shall profit financially by reason of his or her membership on the Board. Directors (as such) shall not receive compensation for their services as Directors. Directors, however, may receive reimbursement for expenses as may be fixed or determined by the Board.

*[EITHER, if Directors are not to be employed by the organization:]*
Directors shall not serve the organization in some other capacity for which compensation is paid.

*[OR, if some Directors provide services to the organization:]*
Not more than []% of the Directors may serve the organization in some other capacity for which compensation is paid.

**4.21. Investigations.** Individual Directors are not authorized to conduct independent investigations into any matter involving the Corporation.

[OPTIONAL: Contracts with Directors; Loans to Officers and Directors].

Contracts with Directors. No director of this corporation nor any other corporation, firm, association, or other entity in which one or more of this corporation's directors are directors or have a material financial interest, shall be interested, directly or indirectly, in any contract or transaction with this corporation unless (1) the material facts regarding that director's financial interest in such contract or transaction or regarding such common directorship, officership, or financial interest are fully disclosed in good faith and noted in the minutes, or are known to all members of the board prior to the board's consideration of such contract or transaction; (2) such contract or transaction is authorized in good faith by a majority of the board by a vote sufficient for that purpose without counting the votes of the interested directors; (3) before authorizing or approving the transaction, the board considers and in good faith decides after reasonable investigation that the corporation could not obtain a more advantageous arrangement with reasonable effort under the circumstances; and (4) the corporation for its own benefit enters into the transaction, which is fair and reasonable to the corporation at the time the transaction is entered into.

This Section does not apply to a transaction that is part of an educational or charitable program of this corporation if it (1) is approved or authorized by the corporation in good faith and without unjustified favoritism and (2) results in a benefit to one or more directors or their families because they are in the class of persons intended to be benefited by the educational or charitable program of this corporation.

Contracts with Directors. No director of this corporation nor any other corporation, firm, association, or other entity in which one or more of this corporation's directors are directors or have a material financial interest, shall be interested, directly or indirectly, in any contract or other transaction with this corporation unless (1) the material facts as to the transaction and such director's interest are fully disclosed or known to the members and such contract or transaction is

approved by the members in good faith, with any membership owned by any interested director not being entitled to vote thereon, or (2) the material facts regarding such director's financial interest in such contract or transaction or regarding such common directorship, officership, or financial interest are fully disclosed in good faith and are noted in the minutes or are known to all board members before consideration by the board of such contract or transaction, and such contract or transaction is authorized in good faith by a majority of the board by a vote sufficient for that purpose without counting the vote of the interested director.

Contracts with Directors. No director of this corporation nor any other corporation, firm, association, or other entity in which one or more of this corporation's directors are directors or have a material financial interest, shall be interested, directly or indirectly, in any contract or other transaction with this corporation unless (1) the transaction is approved or ratified in good faith by the members other than the directors, after notice and disclosure to the members of the material facts concerning the transaction and the director's interest in the transaction, or (2) (a) the material facts regarding such director's financial interest in such contract or transaction or regarding such common directorship, officership, or financial interest are fully disclosed in good faith and are noted in the minutes, or are known to all board members before consideration by the board of such contract or transaction; (b) such contract or transaction is authorized in good faith by a majority of the directors then in office, or if greater, by a vote sufficient for that purpose without counting the vote of the interested directors; (3) before authorizing or approving the transaction, the board considers and in good faith decides after reasonable investigation that the corporation could not obtain a more advantageous arrangement with reasonable effort under the circumstances, or the transaction was in furtherance of the corporation's religious purposes; and (4) this corporation enters into the transaction for its own benefit or for the benefit of the organization, and the transaction is fair and reasonable to this corporation or was in furtherance of its religious purposes at the time the transaction is entered into.

This Section does not apply to a transaction that is part of a public, charitable, or religious program of this corporation if it (1) is approved or authorized by the corporation in good faith and without unjustified favoritism and (2) results in a benefit to one or more directors or their families because they are in the class of persons intended to be benefited by the public, charitable, or religious program of this corporation.

Loans to Directors and Officers. This corporation shall not lend any money or property to or guarantee the obligation of any director or officer without the approval of the California Attorney General, provided, however, that the corporation may advance money to a director or officer of the corporation for expenses reasonably anticipated to be incurred in the performance of his or her duties if that director or officer would be entitled to reimbursement for such expenses by the corporation.

Loans to Directors and Officers. This corporation shall not lend any money or property to, or guarantee the obligation of, any director or officer of the corporation _ _[or of its parent, affiliate, or subsidiary]_ _ unless (1) the board decides that the loan or guaranty may reasonably be expected to benefit the corporation, and (2) before consummating the transaction or any part of it, the loan or guaranty is approved by either the members, without counting the vote of the

director or officer, if a member, or the vote of a majority of the directors then in office, without counting the vote of the director who is to receive the loan or guaranty.

## ARTICLE V.
## OFFICERS

**5.1. Officers.** The officers of the corporation shall be a Chair of the Board or a President or both, a Secretary, and a Chief Financial Officer. The corporation may also have, at the discretion of the Board of Directors, one or more Vice Presidents, one or more Assistant Secretaries and such other officers as may be appointed in accordance with the provisions of Section 5.3 of this Article. One person may hold two or more offices, except that neither the Secretary nor the Chief Financial Officer may serve concurrently as the President or the Chair of the Board.

**5.2. Election.** The officers of the corporation, except those officers as may be appointed in accordance with the provisions of Section 5.3 or Section 5.5 of this Article, shall be chosen annually by, and shall serve at the pleasure of, the Board of Directors, subject to the rights, if any, of an officer under any contract of employment. The election shall be at the first regular Board meeting of the fiscal year (July 1-June30). Each officer shall hold his or her office until he or she resigns, is removed, or becomes otherwise disqualified to serve, or until his or her successor is elected and qualified.

**5.3. Subordinate Officers.** The Board of Directors may appoint, and may empower the President to appoint, other officers as the business of the corporation may require, each of whom shall hold office for the period, have the authority, and perform those duties as are provided in the Bylaws or as the Board of Directors may from time to time determine.

**5.4. Removal and Resignation.** Any officer may be removed, either with or without cause, by a majority of the Directors at the time in office, at any regular or special meeting of the Board, or except in case of an officer chosen by the Board of Directors, by any officer on whom the power of removal may be conferred by the Board of Directors.

Any officer may resign at any time, without prejudice to the rights, if any, of the corporation under any contract to which the officer is a party, by giving written notice to the Board of Directors, or to the President, or to the Secretary of the corporation. Any resignation shall take effect at the date of the receipt of the notice or at any later time specified in the notice; and, unless otherwise specified in the notice, the acceptance of the resignation shall not be necessary to make it effective.

**5.5. Vacancies.** A vacancy in any office because of death, resignation, removal, disqualification, or any other cause shall be filled in the manner prescribed in the Bylaws for regular election or appointment to that office, provided that the vacancies shall be filled as they occur and not on an annual basis.

**5.6. Inability to Act.** In the case of absence or inability to act of any officer of the corporation and of any person authorized by these Bylaws to act in his or her place, the Board of Directors

may from time to time delegate the powers or duties of the officer to any other officer, or any director or other person whom the Board may select.

**5.7. Chair of the Board.** The Chair of the Board, if there shall be such an Officer, shall, if present, preside at all meetings of the Board of Directors, and exercise and perform those other powers and duties as may be from time to time assigned to him or her by the Board of Directors or prescribed by the Bylaws. If the corporation does not have a President, then the Chair shall also have the powers otherwise given to the President.

**5.8. President.** The President shall be the Chief Executive Officer of the corporation and shall, subject to the control of the Board of Directors, have general supervision, direction and control of the activities and Officers of the corporation. In the absence of the Chair of the Board, or if there is none, the President shall preside at all meetings of the Board of Directors. The President shall be ex-officio a member (although non-voting) of all the standing committees, including the Executive Committee, if any, and shall have the general powers and duties of management usually vested in the office of a President of a corporation, and shall have such other powers and duties as may be prescribed by the Board of Directors or the Bylaws.

**5.9. Vice President.** In the absence or disability of the President, the Vice Presidents, in order of their rank as fixed by the Board of Directors, or if not ranked, the Vice President designated by the Board of Directors, shall perform all the duties of the President, and when so acting shall have all the powers of, and be subject to all the restrictions on, the President. The Vice Presidents shall have other powers and perform other duties as from time to time may be prescribed for them respectively by the Board of Directors or the Bylaws.

**5.10. Secretary.** The Secretary shall keep, or cause to be kept, a book of minutes at the principal office or other place as the Board of Directors may order, of all meetings of the Board and its committees, with the time and place of holding, whether regular or special, and if special, how authorized, the notice of the meeting given, the names of those present at the Board and committees' meetings, and the proceedings of the meetings. The Secretary shall keep, or cause to be kept, at the principal office in the State of California and the original and a copy of the corporation's Articles and Bylaws, as amended to date.

The Secretary shall give, or cause to be given, notice of all meetings of the Board and any committees of the Board required by these Bylaws or by law to be given, shall keep the seal of the corporation in safe custody, and shall have other powers and perform other duties as prescribed by the Board.

**5.11. Treasurer and Chief Financial Officer.** The Treasurer shall be the Chief Financial Officer of the corporation and shall keep and maintain, or cause to be kept and maintained, adequate and correct accounts of the properties and business transactions of the corporation. The books of account shall at all reasonable times be open to inspection by any Director. The Treasurer shall deposit all monies and other valuables in the name and to the credit of the corporation with depositories designated by the Board of Directors. The Treasurer shall disburse the funds of the corporation as may be ordered by the Board of Directors, shall render to the President and the Directors, whenever they request it, an account of all of his or her transactions

and of the financial condition of the corporation, and shall have other powers and perform other duties as may be prescribed by the Board of Directors.

**5.12. Assistant Treasurer.** At the request of the Treasurer, or in his or her absence or disability, the Assistant Treasurer shall perform all the duties of the Treasurer, and when so acting, shall have all the powers of, and be subject to all the restrictions on, the Treasurer.

**5.13. Salaries.** The salaries of the Officers shall be fixed from time to time by the Board of Directors and no Officer shall be prevented from receiving this salary because the Officer is also a Director of the corporation.

## ARTICLE VI.
## OTHER PROVISIONS

**6.1. Endorsement of Documents: Contracts.** Subject to the provisions of applicable law, any note, mortgage, evidence of indebtedness, contract, conveyance, or other instrument in writing, and any assignment or endorsement thereof, executed or entered into between this corporation and any other person, when signed by any one of the Chair of the Board, the President or any Vice President, and any Secretary, Assistant Secretary, the Treasurer or any Assistant Treasurer of this corporation shall be valid and binding on this corporation in the absence of actual knowledge on the part of the other person that the signing Officers had no authority to execute the same.

The Board of Directors, except as otherwise provided in the Bylaws, may authorize any officer or officers, agent or agents, to enter into any contract or execute any instrument in the name of and on behalf of the corporation. This authority may be general or confined to specific instances. Unless so authorized by the Board of Directors, and except as provided in this Section, no officer, agent or employee shall have any power or authority to bind the corporation by any contract or agreement, or to pledge its credit, or to render it liable for any purpose or to any amount.

**6.2. Representation of Shares of Other Corporations.** The President or any other officer or officers authorized by the Board or the President are each authorized to vote, represent, and exercise on behalf of the corporation all rights incident to any and all shares of any other corporation or corporations standing in the name of the corporation. The authority in this section may be exercised either by any officer in person or by any other person authorized to do so in proxy or power of attorney duly executed by the officer.

**6.3. Construction and Definitions.** Unless the context otherwise requires, the general provisions, rules of construction, and definitions contained in the General Provisions of the California Nonprofit Corporation Law [Corp. Code §§ 5000 et seq.] and in the California Nonprofit Public Benefit Corporation Law [Corp. Code §§ 5110 et seq.] shall govern the construction of these Bylaws.

**6.4. Amendments.** These Bylaws may be amended or repealed in whole or in part, and new Bylaws adopted by the Board of Directors.

**6.5. Record of Amendments.** Whenever an amendment or new Bylaw is adopted, it shall be copied in the Book of Minutes with the original Bylaws, in the appropriate place. If any Bylaw is repealed, the fact of repeal with the date of the meeting at which the repeal was enacted or written assent was filed shall be stated in the Book.

## ARTICLE VII.
## INDEMNIFICATION OF AGENTS OF THE CORPORATION

**7.1. Definitions.** For purposes of this section, "agent" means any person who is or was a Director, Officer, employee, or other agent of this corporation, or is or was serving at the request of this corporation as a Director, Officer, employee, or agent of another foreign or domestic corporation, partnership, joint venture, trust, or other enterprise, or was a Director, Officer, employee, or agent of a foreign or domestic corporation that was a predecessor corporation of this corporation or of another enterprise at the request of the predecessor corporation; "proceeding" means any threatened, pending, or completed action or proceeding, whether civil, criminal, administrative, or investigative; and "expenses" includes, without limitation, attorney's fees and any expenses of establishing a right to indemnification under Section 7.4 or 7.5(c) of this Article.

**7.2. Indemnification in Actions by Third Parties.** This corporation shall have the power to indemnify any person who was or is a party, or is threatened to be made a party to any proceeding (other than an action by or in the right of this corporation to procure judgment in its favor, an action brought under Corp. Code § 5233, or an action brought by the Attorney General or a person granted relator status by the Attorney General for any breach of duty relating to assets held in charitable trust) because that person is or was an agent of this corporation, against expenses, judgments, fines, settlements, and other amounts actually and reasonably incurred in connection with the proceeding if the person acted in good faith and in a manner the person reasonably believed to be in the best interests of the corporation and, in the case of a criminal proceeding, had no reasonable cause to believe the conduct of the person was unlawful. The termination of any proceeding by judgment, order, settlement, conviction, or on a plea of nolo contendere or its equivalent shall not, of itself, create a presumption that the person did not act in good faith and in a manner which the person reasonably believed to be in the best interests of this corporation or that the person had reasonable cause to believe that the person's conduct was unlawful.

**7.3. Indemnification in Actions by or in the Right of the Corporation.** This corporation shall have the power to indemnify any person who was or is a party, or is threatened to be made a party, to any threatened, pending or completed action by or in the right of this corporation or brought under Corp. Code § 5233, or an action brought by the Attorney General or a person granted relator status by the Attorney General for breach of duty relating to assets held in charitable trust, to procure a judgment in its favor because that person is or was an agent of this corporation, against expenses actually and reasonably incurred by the person in connection with the defense or settlement of the action if the person acted in good faith, in a manner the person believed to be in the best interests of this corporation and with the care, including reasonable

inquiry, as an ordinarily prudent person in a like position would use under similar circumstances. No indemnification shall be made under this Section 7.3:

    (a)  in respect of any claim, issue, or matter as to which the person shall have been adjudged to be liable to this corporation in the performance of the person's duty to this corporation, unless and only to the extent that the court in which the proceeding is or was pending shall determine on application that, in view of all the circumstances of the case, the person is fairly and reasonably entitled to indemnity for the expenses which the court shall determine;

    (b)  of amounts paid in settling or otherwise disposing of a threatened or pending action, with or without court approval; or

    (c)  of expenses incurred in defending a threatened or pending action that is settled or otherwise disposed of without court approval, unless it is settled with the approval of the Attorney General.

**7.4. Indemnification Against Expenses.** To the extent that an agent of this corporation has been successful on the merits in defense of any proceeding referred to in Section 7.2 or 7.3 of this Article in defense of any claim, issue or matter therein, the agent shall be indemnified against expenses actually and reasonably incurred by the agent in connection therewith.

**7.5. Required Indemnification.** Except as provided in Section 7.4 of this Article, indemnification under this Article shall be made by this corporation only if authorized in the specific case, on a determination that indemnification of the agent is proper in the circumstances because the agent has met the applicable standard of conduct set forth in Section 7.2 or 7.3, by:

    (a) a majority vote of a quorum consisting of Directors who are not parties to the proceeding;

    (b) approval of the members (Corp. Code § 5034), with the persons to be indemnified not being entitled to vote thereon; or

    (c) the court in which the proceeding is or was pending, on application made by this corporation or the agent, attorney or other person rendering services in connection with the defense, whether or not the application by the agent, attorney, or other person is opposed by this corporation.

**7.6. Advance of Expenses.** Expenses incurred in defending any proceeding may be advanced by this corporation prior to the final disposition of the proceeding on receipt of an undertaking by or on behalf of the agent to repay the amount unless it shall be determined ultimately that the agent is entitled to be indemnified as authorized in this Article.

**7.7. Other Indemnification.** No provision made by the corporation to indemnify its or its subsidiary's Directors or Officers for the defense of any proceeding, whether contained in the Articles, Bylaws, a resolution of Directors, an agreement or otherwise, shall be valid unless

consistent with this Article. Nothing contained in this Article shall affect any right to indemnification to which persons other than the Directors and Officers may be entitled by contract or otherwise.

**7.8. Forms of Indemnification Not Permitted.** No indemnification or advance shall be made under this Article, except as provided in Sections 7.4 or 7.5(c) in any circumstances where it appears:

(a) that it would be inconsistent with a provision of the Articles of Incorporation, these Bylaws, a resolution of the Directors or an agreement in effect at the time of the accrual of the alleged cause of action asserted in the proceeding in which the expenses were incurred or other amounts were paid, which prohibits or otherwise limits indemnification; or

(b) that it would be inconsistent with any condition expressly imposed by a court in approving a settlement.

**7.9. Insurance.** The corporation shall have the power to purchase and maintain insurance on behalf of any agent of the corporation against any liability asserted against or incurred by the agent in the capacity as an agent or arising out of the agent's status as an agent whether or not the corporation would have the power to indemnify the agent against the liability under the provisions of this Article; provided, however, that this corporation shall have no power to purchase and maintain insurance to indemnify any agent of the corporation for a violation of Corp. Code § 5233.

**7.10. Nonapplicability to Fiduciaries of Employee Benefit Plans.** This Article does not apply to any proceeding against any trustee, investment manager, or other fiduciary of an employee benefit plan in the person's capacity as such, even though the person may also be an agent of the corporation as defined in Section 7.1 of this Article. The corporation shall have power to indemnify the trustee, investment manager or other fiduciary to the extent permitted by Corp. Code § 207(f).

### ARTICLE VIII.
### RECEIPT, INVESTMENT, AND DISBURSEMENT OF FUNDS

8.1. The corporation shall receive all monies, other properties, or both monies and properties, transferred to it for the purposes for which the corporation was formed (as shown by the Articles of Incorporation). However, nothing contained herein shall require the Board of Directors to accept or receive any money or property of any kind if it shall determine in its discretion that receipt of the money or property is contrary to the expressed purposes of the corporation as shown by these Articles.

8.2. The corporation shall hold, manage, and disburse any funds or properties received by it from any source in a manner that is consistent with the expressed purposes of this corporation.

8.3. No disbursement of corporation money or property shall be made until it is first approved by the President, Treasurer, or the Directors of the corporation. However, the Directors shall have

the authority to appropriate specific sums to fulfill the objects and purposes for which the corporation was formed and to direct the officers of the corporation from time to time to make disbursements to implement the appropriations.

8.4. All checks, drafts, demands for money and notes of the corporation, and all written contracts of the corporation shall be signed by the officer or officers, agent or agents, as the Board of Directors may from time to time by resolution designate.

## ARTICLE IX.
## CORPORATE RECORDS AND REPORTS

9.1. Records. The corporation shall maintain adequate and correct accounts, books and records of its business and properties. All these books, records, and accounts shall be kept at its principal place of business in the State of California, as fixed by the Board of Directors from time to time.

9.2. Inspection of Books and Records. Every Director shall have the absolute right at any reasonable time to inspect all books, records, documents of every kind, and the physical properties of the corporation, and also of its subsidiary organizations, if any.

9.3. Certification and Inspection of Bylaws. The original or a copy of these Bylaws, as amended or otherwise altered to date, certified by the Secretary, shall be open to inspection by the Directors of the corporation at all reasonable times during office hours.

## ARTICLE X.
## DISSOLUTION

On dissolution of this corporation, the Board of Directors shall cause the assets herein to be distributed to another corporation with purposes similar to that identified in the Articles of Incorporation, and Article 2 of these Bylaws.

## CERTIFICATE OF SECRETARY

I, the undersigned, being the Secretary of MOUNTAIN CIRCLE FAMILY SERVICES, INC., hereby certify that the above Bylaws consisting of *[number]* pages were adopted as the Bylaws of this corporation pursuant to the unanimous vote of the Directors in a regularly called meeting, effective *[date]*. These Bylaws are, as of the date of this certification, the duly adopted and existing Bylaws of this corporation.

IN WITNESS WHEREOF, I have set my hand this *[date]*.

_____



# State of California
## Secretary of State

I, BRUCE McPHERSON, Secretary of State of the State of California, hereby certify:

That the attached transcript of ___2___ page(s) has been compared with the record on file in this office, of which it purports to be a copy, and that it is full, true and correct.



**IN WITNESS WHEREOF,** I execute this certificate and affix the Great Seal of the State of California this day of

JUN 3 0 2005

**BRUCE McPHERSON**
Secretary of State

Sec/State Form CE-107 (REV 03/31/05)

Exhibit  A

## "RESTATED" ARTICLES OF INCORPORATION

### OF

### MOUNTAIN CIRCLE FAMILY SERVICES, INC.

ONE:  The name of this corporation is MOUNTAIN CIRCLE FAMILY
SERVICES, INC.

TWO:  This Corporation is a nonprofit public benefit corporation and is not for the organized
private gain of any person.  It is organized under the Nonprofit Public Benefit
Corporation Law for "charitable and public" purposes.  The specific purposes for
which this corporation is organized are to: 1) promote the self esteem of children,
facilitate the healthy development of family relationships and strengthen
community support for said family.
2) To provide placement alternatives, counseling, education and support to
children and their families.

THREE:  This corporation is organized and operated exclusively for charitable
purposes within the meaning of Section 501 ( c ) (3) of  the Internal Revenue
Code.  Notwithstanding any other provision of these Articles, the corporation
shall not carry on any other activities not permitted to be carried on by a
corporation exempt from federal income tax under Section 501  ( c ) (3) of the
Internal Revenue Code or by a corporation contributions to which are deductible
under Section 170 ( c ) (2) of the Internal Revenue Code.  No Substantial part of
the activities of this corporation shall consist of carrying on propaganda, or
otherwise attempting to influence legislation, and the corporation shall not
participate or intervene in any political campaign (including the publishing or
distribution of statements) on behalf of any candidate for public office.

FOUR:  The property of this corporation is irrevocably dedicated to charitable
purposes and no part of the net income or assets of the organization shall ever
inure to the benefit of any Director, officer or member thereof or to the benefit of
any private person.
On the dissolution or winding up of the corporation, its assets remaining after
payment of, or provision for payment of, all debts and liabilities of this
corporation, shall be distributed to a nonprofit fund, foundation, or corporation
which is organized and operated exclusively for charitable purposes and which
has established its tax-exempt status under Section 501 ( c ) (3) of the Internal
Revenue Code.



A0630279

**ENDORSED - FILED**
in the office of the Secretary of State
of the State of California

JUN 1 4 2005

### RESTATED ARTICLES OF INCORPORATION

The undersigned certify that:

1. They are the **president** and the **secretary,** respectively, of Mountain Circle
a California Corporation.

2. The Articles of Incorporation of this corporation are amended and restated to
read as follows:
                    See Exhibit A Attached hereto and incorporated
             Herein by reference.

3. The foregoing amendment and restatement of Articles of Incorporation has
been duly approved by the board of directors.

4. The foregoing amendment and restatement of Articles of Incorporation has
been duly approved by the required vote of the members.

We further declare under penalty of perjury under the laws of the State of
California that the matters set forth in this certificate are true and correct of our
own knowledge.

DATE: _6-1-05_____

_____
Susan A. Weber, President

_____
Tommy Miles, Secretary

1

# EXHIBIT

# L



Mountain Circle Family Services, Inc

DBA Sierra Nevada Connections

2020-04

## RESOUTION OF THE BOARD OF DIRECTORS OF MOUNTAIN CIRCLE FAMILY SERVICES, INC. DBA SIERRA NEVADA CONNECTIONS

A motion was put forth to the Board of Directors via email on the 28th day of September, 2020, which is a ratified procedure per the By Laws for Mountain Circle Family Services, Inc.

Upon motion, second and unanimous vote of said Board of Directors, the following resolution was duly and regularly passed:

RESOLVED, that Bret Cook, Esq, who has been attorney on retainer for Mountain Circle Family Services, Inc., for 10 years, is authorized to communicate with Community Care Licensing regarding licensing matters on behalf of the Board of Directors for Mountain Circle Family Services, Inc, DBA Sierra Nevada Connections.

Passed and approved on September 28, 2020.

I, Stacy Saez, duly appointed Chairperson of Mountain Circle Family Services, Inc., DBA Sierra Nevada Connections do hereby certify that the above that the above is a true and correct copy of resolution passed and approved by Mountain Circle Family Services, Inc., DBA Sierra Nevada Connections Board of Directors.

# EXHIBIT

# M

Bret

[Quoted text hidden]


[Quoted text hidden]

---

**Robert Berry** <rberry@rlberrylaw.com>                                    Tue, Oct 18, 2022 at 9:35 AM
To: Angie Carprenter MCFS <acarpenter@sierranc.org>



**From:** bretcook@frontiernet.net <bretcook@frontiernet.net>
**Sent:** Thursday, August 5, 2021 8:27 PM
**To:** Robert Berry <rberry@rlberrylaw.com>
**Subject:** Re: New Counsel


Rob:


Here are the pending matters:

- The most pressing is the accusation. I strongly encourage you to reach out to the consulting attorney, Linda Kollar. She is an admin law specialist and was recommended to Mountain Circle by the ED of Environmental Alternatives. She strongly feels that there is a duty to defend and that Mountain Circle (MC) should make sure the board members are aware of the importance of (1) consulting with an attorney of their choice and (2) filing a Notice of Defense. She is aware of the other administrative proceedings I referenced in the board meeting. She can give you her take on Pam's question of how the individual actions affect the agency. You heard mine yesterday. I did send an email to the affected past board members with a copy of the accusation and accompanying paperwork, but I was intending to send a follow up. I'll forward you the email I sent to them. Linda Kollar's contact info:

Linda Randlett Kollar, HOOPER, LUNDY & BOOKMAN, P.C., DIRECT: +1 310.551.8194, MAIN: +1 310.551.8111, MOBILE: +1 310.592.1546 lkollar@health-law.com


- There are several pending administrative appeals:
    - Three different appeals covering most if not all of the subjects of the accusation. Those were appealed twice and the appeals are currently pending in front of Jean Chen, CCLD Administrator. A decision was due in late July (July 19). If a ruling comes, a decision will need to be made whether or not to pursue a writ. If a decision does not come, at some point a writ should be considered for the failure to rule.
    - There is an appeal from an LIC 809 dated 4/16/21 that is pending. Margo Castaneda, Sacramento Regional Administrator, informed me her decision would be delayed due to a surgery. CCLD is supposed to have a response in 60 business days.
    - There is a recent appeal to Margo Castaneda, Sacramento Regional Administrator, from a LIC 9099 served on 6/3/2021. It is dated in January but not delivered until June. That is pending. The complaint covers many of the same subjects as not only the earlier three appeals now pending to the CCLD Administrator, but also the accusation.
    - As you can see, CCLD has been repeatedly raising the same issues. I have objected to that repetition and it could be a defense in the pending accusation. MC should also consider whether the pursuit of the accusation is inconsistent with the pursuit of the above appeals to the extent they overlap.
    - If you want any clarification of my opinion on the appeals, let me know.

# EXHIBIT

# N

# EXHIBIT 1

### Mountain Circle Family Services, Inc.
### dba Sierra Nevada Connections

## Board of Director Minutes
### August 4, 2021
### via Zoom

This meeting was scheduled at the request of Bret Cook to update the board on the recent action by CDSS and to discuss the defense deadline.

The meeting came to order at 6:30 PM.

Roll Call

Board Members:
**Present**
Justin Miller, Bill Powers, Pamela Crespin, Andy Fee
**Absent**
Jeff Titcomb

A quorum was established.
No objections to notice were raised.

Guests:
Bret Cook (General Counsel), Rob Berry (Attorney), and Angie Carpenter (Financial/HR Director)
Angie agreed to act as Secretary for this meeting.

**(M) = Motion, (S) = Second, P = Pass, F = Fail**



**Presentation by Bret Cook:**



Andy suggested that if Shauna resigns with a stipulation to drop the charges on the other past board members as a plea, maybe we can fund them if the license still goes after them.





███████ (M) to accept the Chair's proposal for Bret to drop off the zoom call, to move into a closed session, and for Rob to remain present. ██ (S), P UNANIMOUS

The Board entered into a closed session.

### Closed Session:
After discussion of a proposed Agenda for the closed session, the Board took the following action:

**Discussion of Shauna Rossington:**

After discussion by the Board, the following action was taken:

Bill (M) Shauna is to be put on administrative leave indefinitely. Pam (S), P UNANIMOUS



**Other Personnel matters:**

The discussion turned to the status of other employees, the management of operational integrity in light of the pending actions by CDSS, and the need to minimize further risk to the Agency. After careful deliberation, the Board took the following action:



**General Counsel:**

Pam (M) to appoint Rob Berry interim General Counsel. Bill (S), P UNANIMOUS

Meeting adjourned at 9:02 PM.

Approved by Board: (date)   8/16/2021

Justin Miller-Chair:

Angie Carpenter-Secretary

# EXHIBIT 2

### Mountain Circle Family Services, Inc.
### dba Sierra Nevada Connections

## Board of Director **NOTES**
### August 4, 2021
### via Zoom
### CONFIDENTIAL NOTES: CLOSED SESSION

**Board Members:**
**Present** (three (3) required for a quorum)
Justin Miller, Bill Powers, Pamela Crespin, Andy Fee
**Absent**
Jeff Titcomb

**Guests:**
Bret Cook (General Counsel), Rob Berry (Attorney), and Angie Carpenter (Financial/HR Director)

**(M) = Motion, (S) = Second, P = Pass, F = Fail**

This meeting was scheduled at the request of Bret Cook to update the board on the recent action by licensing and to discuss the defense deadline.

The meeting started at 6:30 PM.







Andy suggested that if Shauna resigns with a stipulation to drop the charges on the other past board members as a plea, maybe we can fund them if the license still goes after them.





asked Rob to address the board.

4. Rob explained the duties of confidentiality regarding Board deliberations and the potential ramification for breaching that confidence. He then asked each board member to verbally acknowledge that they understood their obligations as outlined. Each Director made an affirmative response.

MCFS Board NOTES 08-04-2021                                                    3 of 5



Andy asked the Board when should we ask Shauna to come on to share what she wants to do or do we want to fire her? Bret said she might resign.



Andy said asking Shauna to step down while this is going on seems reasonable.

████ suggested placing Shauna on administrative leave, suspended from any function, not terminated, forced vacation. The details would have to be worked out, but that is his recommended approach.

███ (M) Shauna is to be put on administrative leave indefinitely ████ (S). P UNANIMOUS



Andy advises the board he's resigning immediately. Chair asked that he send a letter to facilitate filling the vacancy.

Andy then excused himself from the meeting.



Meeting adjourned at 9:02 PM.

Approved by Board: (date)     _____

Justin Miller-Chair:          _____

Angie Carpenter-Secretary     _____

MCFS Board NOTES 08-04-2021                              5 of 5

# EXHIBIT 3

Mountain Circle Family Services, Inc.
dba Sierra Nevada Connections

## Board of Director Minutes
### August 6, 2021
### via Zoom (Recorded)

This meeting was scheduled for office and legal updates and actions needed.

The meeting came to order at 3:04 PM.

Roll Call

Board Members:
**Present** (three (2) required for a quorum)
Justin Miller & Bill Powers
**Absent**
Pamela Crespin (arranged absent)

No objections to notice were raised.

Guests:
Rob Berry (General Counsel), Angie Carpenter (Secretary Nonmember & Financial/HR Director),
Kate Van Dolsen (Interim Executive Director)

(M) = Motion, (S) = Second, P = Pass, F = Fail







(M) to accept Shauna's resignation as Executive Director. ▓▓▓ (S), P UNANIMOUS

MCFS Board Minutes 08-06-2021                                              2 of 3

Case 2:23-cv-00423-KJM-DMC   Document 12   Filed 03/29/23   Page 213 of 260

Approved by Board: (date)    8/16/2021

Justin Miller-Chair:

Angie Carpenter-Secretary

# Declaration of Justin Miller

I, Justin Miller, am currently serving as Chairman of the Board, Mountain Circle Family Services, and was serving in that capacity on August 4th, 2021.

I have reviewed the Agenda of August 4th, the confidential notes regarding the closed session meeting of the Board on that date, and the Minutes of August 6th, Exhibits 4, 5 and 6 respectively.

I hereby testify, and would so state if asked to testify as a witness, based on information and belief, the facts and information in these exhibits are true and correct, and accurately record the events and actions as stated.

I declare under penalty of perjury under the laws of the state of California, that the foregoing is true and correct. Executed on May 31, 2022 in Chico, California.


_____                    5/30/22
Justin Miller                                                           Date
Chairman of the Board
Mountain Circle Family Services

# EXHIBIT

# O



## SAR REPORT

Date: 08/06/2021

Subject: Alex's HP Laptop

Situation:

On the morning of 08/06/2021 we were unable to access the computers from the recent terminated employees because the passwords were changed again.

Action:

I opened Alex's (terminated employee) laptop and saw she did not sign out of her personal email, so I scanned it hoping to find some passwords so we can access some of the computers, software's, and social media sites, when I came across an email that was concerning.

Result:

I immediately brought to Kate and Angie's attention. Per their instructions I printed it and called Tripath to come in and help us prevent them from hacking our computers.

Shannon Dlong

# Gmail

Alex Heth-Rossington <arossingtonuja@gmail.com>

---

## Class action lawsuit
1 message

---

**Shauna Rossington** <drshaunalr@gmail.com>          Fri, Aug 6, 2021 at 6:19 AM
To: bretcook@frontiernet.net, arossingtonuja@gmail.com, "josephmcoddington@gmail.com"
<josephmcoddington@gmail.com>, "sethpshepard@gmail.com" <sethpshepard@gmail.com>

GM :),

I thought I would start a group email.

I was willing to walk away, but the pure malice firing of Alex, Val, Kelly, and Joe has me angered as well as you Bret. They, the board and Kate, just cut the heart out of the agency, and so mother bear is, well let's say game on.

If one thing that all the past has taught me, employees have way too many rights in CA and if they think they know more than me...again game on.

The treatment of firing Alex and Val in the office is beyond words, asking Alex to leave because she is crying and making people feel uncomfortable and forcing her to come back after hours to finish detangling her whole life from the agency and then to hear Kate say, to another employee, she is still there? For Alex to come back and find the office ransacked and to be watched as if she has the ability to sabotage the agency on her way out the door.

I get firing Alex and Aiden, I mean I don't. No one has given more than Alex and Aiden? Mr. I don't have a clue what is going on, but I sit here and scan papers and work on computers. But Val, Joe and Kelly? I am thinking Kate must have told the staff that somehow there was something unethical that we did on the Bear Growl fundraiser to justify this to everyone, because that is who got fired.

Anyhow, this is what I know, we throw a class action labor board lawsuit at them with charges of anything, go to mediation, and walk away with something for all our hard work.

This is my game plan

Wait 30 days because I know that they will not pay me the 6 weeks of sabbatical pay that is written into my contract with the board. I then file a complaint with the labor board, of which we won't settle and then we file the class action lawsuit. Hmmmm, wonder where I learned to do this? And we throw the kitchen sink at them.

This I know.. Justin went out and hired an attorney without a board resolution, There was definitely back door conversations, illegal, he developed an agenda that was sent to the board 30 minutes before the board meeting with no authority, there was no board president. He had zero power or authority to develop the agenda. The agenda was not adopted or approved. Additionally, I was never brought in for a conversation. I found out something was up by being cut off from my email. I learn that they were going to put me on administrative leave only to hire an HR attorney to void my contract with the board to take away my vacation time on the books and then they would fire me. So my resignation was a forced resignation. And then through complete spite and malice they fire 4 other people without a conversation. Alex or Joe have never had a write up, nor any discussion about there being issues. Kelly was leaving the next day this for sure shows malice. Val has had a few write ups but it was 2 years ago.

Bret, did they vote to remove you as the attorney on retainer for the organization? Or did they just tell you to leave?

We all file for a year of loss wages and we will probably settle at half of this.

I spoke with Seth yesterday and he says he is pretty sure Gene would do pro bono on this.

I am the reason the corporation has 700,000 in the bank and they don't get to steal that from me and they don't get to steal the marathon. Maybe we can also, when negotiating that the corporation hand over the race to us,we all  know that if they try and pull this off it will be an epic failure and 10 years of my hard work, alex and Val, is for sure gone. The rest of the agency, is a whatever... Families will always be ok, they can just roll to other agencies.

They do not get to think they are smarter and stronger than us. Licensing isn't a battle that I can really win, but this... this we can win. And if nothing else, create havoc. Welcome to the big boys club Kate....Sorry, but as I said, take me out, I

would have been upset that the board handled it this way, but honestly glad to be gone as long as they gave me my 10 months of vacation. BTW, Pam specifically said that she has never seen an employee have this much vacation time on the books and she knows because she has a Ph.D. How many times had I brought up my vacation time on the books to the board and no one ever had an issue with it? I picked Pam up off the floor when Feather River College fired her for supposed lies. And I mean literally, she almost had a mental health breakdown and I was there and held her hand and supported her and help to get her back on track.

You messed with my children, and people that I care about deeply  and hurt people that have been so dedicated to the mission of the organization. Game on....the agency is truly weak right now so a labor suit in 30 days....She has no idea... I know she sat there with the board and named who else who should be fired. The board didn't even know that I had hired Kelly or Aiden. They would have known Joe's name and Alex's, but I am not sure they even knew who Val was. So , this was for sure without a shadow of a doubt a Kate decision.

Again, game on... sorry for the rant...

**SIERRA NEVADA**
*connections*

*The attached email was shared to attorney & BoD.*
*✗*

SAR REPORT

Date: 08/06/2021

Subject: Alex's HP Laptop

Situation:

On the morning of 08/06/2021 we were unable to access the computers from the recent terminated employees because the passwords were changed again.

Action:

I opened Alex's (terminated employee) laptop and saw she did not sign out of her personal email, so I scanned it hoping to find some passwords so we can access some of the computers, software's, and social media sites, when I came across an email that was concerning.

Result:

I immediately brought to Kate and Angie's attention. Pei Tripath to come in and help us prevent them from hackin

*Hack event SAR*

*Shannon D Long*



**Gmail**

Alex Heth-Rossington <arossingtonuja@gmail.com>

---

## Class action lawsuit

1 message

---

**Shauna Rossington** <drshaunalr@gmail.com>
To: bretcook@frontiernet.net, arossingtonuja@gmail.com, "josephmcoddington@gmail.com" <josephmcoddington@gmail.com>, "sethpshepard@gmail.com" <sethpshepard@gmail.com>

Fri, Aug 6, 2021 at 6:19 AM

GM :),

I thought I would start a group email.

I was willing to walk away, but the pure malice firing of Alex, Val, Kelly, and Joe has me angered as well as you Bret. They, the board and Kate, just cut the heart out of the agency, and so mother bear is, well let's say game on.

If one thing that all the past has taught me, employees have way too many rights in CA and if they think they know more than me...again game on.

The treatment of firing Alex and Val in the office is beyond words, asking Alex to leave because she is crying and making people feel uncomfortable and forcing her to come back after hours to finish detangling her whole life from the agency and then to hear Kate say, to another employee, she is still there? For Alex to come back and find the office ransacked and to be watched as if she has the ability to sabotage the agency on her way out the door.

I get firing Alex and Aiden, I mean I don't. No one has given more than Alex and Aiden? Mr. I don't have a clue what is going on, but I sit here and scan papers and work on computers. But Val, Joe and Kelly? I am thinking Kate must have told the staff that somehow there was something unethical that we did on the Bear Growl fundraiser to justify this to everyone, because that is who got fired.

Anyhow, this is what I know, we throw a class action labor board lawsuit at them with charges of anything, go to mediation, and walk away with something for all our hard work.

This is my game plan

Wait 30 days because I know that they will not pay me the 6 weeks of sab the board. I then file a complaint with the labor board, of which we won't s Hmmmm, wonder where I learned to do this? And we throw the kitchen si

*Threat to "Create Havoc"*

This I know.. Justin went out and hired an attorney without a board resolut conversations, illegal, he developed an agenda that was sent to the board authority, there was no board president. He had zero power or authority tc adopted or approved. Additionally, I was never brought in for a conversatic off from my email. I learn that they were going to put me on administrative contract with the board to take away my vacation time on the books and the a forced resignation. And then through complete spite and malice they fire Joe have never had a write up, nor any discussion about there being issues shows malice. Val has had a few write ups but it was 2 years ago.

Bret, did they vote to remove you as the attorney on retainer for the organiza

We all file for a year of loss wages and we will probably settle at half of this.

I spoke with Seth yesterday and he says he is pretty sure Gene would do pro bono on this.

I am the reason the corporation has 700,000 in the bank and they don't get to steal that from me and they don't get to steal the marathon. Maybe we can also, when negotiating that the corporation hand over the race to us, we all know that if they try and pull this off it will be an epic failure and 10 years of my hard work, alex and Val, is for sure gone. The rest of the agency, is a whatever... Families will always be ok, they can just roll to other agencies.

They do not get to think they are smarter and stronger than us. Licensing isn't a battle that I can really win, but this... this we can win. And if nothing else, create havoc. Welcome to the big boys club Kate....Sorry, but as I said, take me out, I

 Gmail                                    Alex Heth-Rossington <arossingtonuja@gmail.com>

## Cybercrime
1 message

**Robert Berry** <rberry@rlberrylaw.com>                                    Mon, Aug 9, 2021 at 1:35 PM
To: drshaunalr@gmail.com, josephmcoddington@gmail.com, arossingtonuja@gmail.com, aiden.rossin~~~ ~ ~mail.com,
sethshepard@gmail.com

Shauna, et al:

*My Letter about Warning Hacking*

### Hacking
Hacking is defined as accessing a computer or personal ~~~~~~~~~~~~~~~~~~~ ssion.
Several companies like Target, British Airways, and T-M~~~~~~~~~~~~~~~ ~s. In
these cases, hackers accessed millions of customers' credi ~~~~~~~~~~~
Under 18 U.S.C. Section 1030, hacking is a federal crim ~~~~~~~~~~~~~ ison
sentence for up to one year and face a $100,000 fine. A felo
and up to $250,000 in fines.

### Theft of Sensitive Data or Intellectual Property
The Computer Fraud and Abuse Act protects information like c ~~~~mer or employee information, trade
secrets, source codes, and other pieces of data stored by a business. It is considered theft of sensitive data
when someone copies information, often on a flash drive, with the intent to sell it or use it to compete.
Intellectual property, on the other hand, involves copyrighted material like movies, music, and book. It can
also include blueprints or designs for company products. Under 18 U.S.C. Section 2319, stealing
intellectual property could result in ten years in prison and up to $2,500 in fines. Taking sensitive data,
however, falls under 18 U.S.C. Section 1030.

We are in possession of documentary evidence that the named recipients of this email have been and are
currently engage in various cybercrimes, in addition to other activities punishable by both civil and criminal
penalties.

You have apparently interfered with he email communications capacity of Mountain Circle Family Services,
causing an interruption in their ability to provide services to their clients. You have caused irreparable harm,
and will be prosecuted to the full extent of the law.

I have filed a police report identify the names and addresses of each of you. I suggest you reverse all actions
taken in retaliation against the Agency immediately. Failure to do so will compound the ongoing offenses
and penalties. You will all be listed as co-conspirators in this criminal activity, and will be subject to
enforcement action.

 Gmail

**Shauna Rossington <drshaunalr@gmail.com>**

# Please Respond ASAP

**Seth Shepard** <sshepard@chittocklaw.com>                    Wed, Aug 11, 2021 at 3:53 PM
To: Shauna Rossington <drshaunalr@gmail.com>, aiden.rossington@gmail.com, Joe Coddington
<josephmcoddington@gmail.com>, Alex Heth-Rossington <arossingtonuja@gmail.com>, Valerie Peters
<valeriemp0501@gmail.com>

Hello Everyone,

I am sending this to all of you as we are currently in communication with Mr. Robert Berry who has been presented to our
office as General Counsel for Mountain Circle Family Services, Inc., dba Sierra Nevada Connections.

Seth Shepard
Law Clerk
Law Offices of Eugene B. Chittock
100 South Lassen Street
Susanville, CA 96130
**(530) 257-9351**
sshepard@chittocklaw.com

Statement of Confidentiality

This message is intended for the use of the individual or entity to which it is addressed and may contain information that
is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not the
intended recipient, you are hereby notified that any printing, copying, dissemination, distribution, disclosure or forwarding
of this communication is strictly prohibited. If you have received this communication in error, please contact the sender
immediately and delete it from your system. Thank You.

# EXHIBIT

# P

Time line of Accused Cyber Hacking

**8/9/21** at

1:25 PM – Shauna Rossington send's email to Angie and Kate requesting them to stop tampering with her personal passwords.  Email bounces back as undeliverable.

1:35 PM – Email from Robert Berry of Cyber Hacking – First email any of the Plaintiffs had gotten from Berry.

2:15 PM – Chico Police arrive at the residence of Shauna and Aiden Rossington

4:04 PM emails are now delivered to Kate Van Dolson and Angie Carpenter

5:05 PM Robert Berry email Shauna Rossington and states to have no more contact with employees.

7:13 PM Shauna Rossington acknowledged Robert Berry request and states to contact Gene Chittock

On **8/11/23** Eugene Chittock and Seth Shepard receive communication from Robert Berry.

 Gmail                                    Shauna Rossington <drshaunalr@gmail.com>

## Destroying personal information
18 messages

**Shauna Rossington** <drshaunalr@gmail.com>                    Mon, Aug 9, 2021 at 1:25 PM
To: acarpenter@sierranc.org, kvandolsen@sierranc.org, echittock@chittocklaw.com
Bcc: sethpshepard@gmail.com

I know that  you deleted my whole Ineeded file and erased my job applications off my indeed profile.  I also know that you
have changed my username and password on my psychology today.com page.  These two issues were discovered today,
8/9/21 at 1:20pm.  I have in a previous email requested that personal emails be forwarded to me as I try to sever my 20+
year history with this organization.  This request is fair and reasonable.  All other personal sites that may still be
remembered on the work computer, I do not give you permission to enter and change any information.  This is a violation
of my privacy rights.

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>              Mon, Aug 9, 2021 at 1:25 PM
To: drshaunalr@gmail.com



## Address not found

Your message wasn't delivered to **acarpenter@sierranc.org**
because the address couldn't be found, or is unable to receive
mail.

**LEARN MORE**

The response was:

```
550 5.1.1 The email account that you tried to reach does not exist. Please try double-checking
the recipient's email address for typos or unnecessary spaces. Learn more at
https://support.google.com/mail/?p=NoSuchUser q104sor3479750uaq.49 - gsmtp
```

Final-Recipient: rfc822; acarpenter@sierranc.org
Action: failed
Status: 5.1.1
Diagnostic-Code: smtp; 550-5.1.1 The email account that you tried to reach does not exist. Please try
550-5.1.1 double-checking the recipient's email address for typos or
550-5.1.1 unnecessary spaces. Learn more at
550 5.1.1 https://support.google.com/mail/?p=NoSuchUser q104sor3479750uaq.49 - gsmtp
Last-Attempt-Date: Mon, 09 Aug 2021 13:25:27 -0700 (PDT)

———— Forwarded message ————
From: Shauna Rossington <drshaunalr@gmail.com>
To: acarpenter@sierranc.org, kvandolsen@sierranc.org, echittock@chittocklaw.com
Cc:
Bcc:
Date: Mon, 9 Aug 2021 13:25:16 -0700
Subject: Destroying personal information

I know that you deleted my whole Ineeded file and erased my job applications off my indeed profile. I also know that you have changed my username and password on my psychology today.com page. These two issues were discovered today, 8/9/21 at 1:20pm. I have in a previous email requested that personal emails be forwarded to me as I try to sever my 20+ year history with this organization. This request is fair and reasonable. All other personal sites that may still be remembered on the work computer, I do not give you permission to enter and change any information. This is a violation of my privacy rights.

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>        Mon, Aug 9, 2021 at 1:25 PM
To: drshaunalr@gmail.com



## Address not found

Your message wasn't delivered to **kvandolsen@sierranc.org** because the address couldn't be found, or is unable to receive mail.

**LEARN MORE**

The response was:

550 5.1.1 The email account that you tried to reach does not exist. Please try double-checking the recipient's email address for typos or unnecessary spaces. Learn more at https://support.google.com/mail/?p=NoSuchUser q104sor3479750uaq.49 - gsmtp

Final-Recipient: rfc822; kvandolsen@sierranc.org
Action: failed
Status: 5.1.1
Diagnostic-Code: smtp; 550-5.1.1 The email account that you tried to reach does not exist. Please try
550-5.1.1 double-checking the recipient's email address for typos or
550-5.1.1 unnecessary spaces. Learn more at
550 5.1.1 https://support.google.com/mail/?p=NoSuchUser q104sor3479750uaq.49 - gsmtp
Last-Attempt-Date: Mon, 09 Aug 2021 13:25:27 -0700 (PDT)

———— Forwarded message ————
From: Shauna Rossington <drshaunalr@gmail.com>
To: acarpenter@sierranc.org, kvandolsen@sierranc.org, echittock@chittocklaw.com
Cc:
Bcc:

 Gmail

Shauna Rossington <drshaunalr@gmail.com>

---

## Cybercrime

---

**Robert Berry** <rberry@rlberrylaw.com>                                    Mon, Aug 9, 2021 at 1:35 PM
To: drshaunalr@gmail.com, josephmcoddington@gmail.com, arossingtonuja@gmail.com, aiden.rossington@gmail.com, sethshepard@gmail.com

Shauna, et al:

**Hacking**

Hacking is defined as accessing a computer or personal data on a computer without the owner's permission. Several companies like Target, British Airways, and T-Mobile were all hacked in the last couple of years. In these cases, hackers accessed millions of customers' credit and debit cards, personal data, and more. Under 18 U.S.C. Section 1030, hacking is a federal crime. Hacking as a misdemeanor could incur a prison sentence for up to one year and face a $100,000 fine. A felony conviction can result in ten years in prison and up to $250,000 in fines.

**Theft of Sensitive Data or Intellectual Property**

The Computer Fraud and Abuse Act protects information like customer or employee information, trade secrets, source codes, and other pieces of data stored by a business. It is considered theft of sensitive data when someone copies information, often on a flash drive, with the intent to sell it or use it to compete. Intellectual property, on the other hand, involves copyrighted material like movies, music, and book. It can also include blueprints or designs for company products. Under 18 U.S.C. Section 2319, stealing intellectual property could result in ten years in prison and up to $2,500 in fines. Taking sensitive data, however, falls under 18 U.S.C. Section 1030.

We are in possession of documentary evidence that the named recipients of this email have been and are currently engage in various cybercrimes, in addition to other activities punishable by both civil and criminal penalties.

You have apparently interfered with he email communications capacity of Mountain Circle Family Services, causing an interruption in their ability to provide services to their clients. You have caused irreparable harm, and will be prosecuted to the full extent of the law.

I have filed a police report identify the names and addresses of each of you.  I suggest you reverse all actions taken in retaliation against the Agency immediately.  Failure to do so will compound the ongoing offenses and penalties.  You will all be listed as co-conspirators in this criminal activity, and will be subject to enforcement action.

This is a promise. Save yourself some expense and trouble, and reverse all actions taken by you against the interests of the Agency immediately.


Robert L. Berry

ATTORNEY AND COUNSELOR AT LAW

BOX 4941 CHICO, CA 95927

ROB@RLBERRYLAW.COM

(831) 334 – 4066


Notice:  This communication (including any attachments) may contain privileged or confidential information intended for a specific individual and purpose, and is protected by law.  If you are not the intended recipient, you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, or distribution of this communication, or the taking of any action based on it, is strictly prohibited.

 Gmail

**Shauna Rossington <drshaunalr@gmail.com>**

---

## Destroying personal information

**Shauna Rossington** <drshaunalr@gmail.com>    Mon, Aug 9, 2021 at 4:04 PM
To: kvandolsen@sierranc.org, acarpenter@sierranc.org

   Nice touch sending the cops to my door, if you two really think that any of us have the ability to cyber hack, you are out of control. I want to get paid and I want my stuff back and this can be over.
   From: **Shauna Rossington** <drshaunalr@gmail.com>
   Date: Mon, Aug 9, 2021 at 1:25 PM
   Subject: Destroying personal information
   To: <acarpenter@sierranc.org>, <kvandolsen@sierranc.org>, <echittock@chittocklaw.com>


   I know that you deleted my whole Ineeded file and erased my job applications off my indeed profile. I also know that you have changed my username and password on my psychology today.com page. These two issues were discovered today, 8/9/21 at 1:20pm. I have in a previous email requested that personal emails be forwarded to me as I try to sever my 20+ year history with this organization. This request is fair and reasonable. All other personal sites that may still be remembered on the work computer, I do not give you permission to enter and change any information. This is a violation of my privacy rights.

 Gmail

## Contact

**Robert Berry** <rberry@rlberrylaw.com>
To: drshaunalr@gmail.com

Mon, Aug 9, 2021 at 5:05 PM

Shauna,

Under the circumstances, I want you to cease and desist from any further contact with any employees, clients, agencies, or other contact where Mountain Circle Family Services is concerned.

If you have any questions, concerns, demands, etc., contact me. I will take your inquiries from here on out. Do not communicate directly with the Agency. If you insist on disobeying this demand, I will seek to restrain you by court order.

Robert L. Berry

ATTORNEY AND COUNSELOR AT LAW

BOX 4941 CHICO, CA 95927

ROB@RLBERRYLAW.COM

(831) 334 – 4066

Notice: This communication (including any attachments) may contain privileged or confidential information intended for a specific individual and purpose, and is protected by law. If you are not the intended recipient, you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, or distribution of this communication, or the taking of any action based on it, is strictly prohibited.

 **Gmail**

Shauna Rossington <drshaunair@gmail.com>

---

## Contact

---

**Shauna Rossington** <drshaunair@gmail.com>                                    Mon, Aug 9, 2021 at 7:13 PM
To: Robert Berry <rberry@rlberrylaw.com>, echittock@chittocklaw.com

Please do not contact me directly or email me again.  Please communicate through my council, Gene Chittock.

[Quoted text hidden]

On 8-11-21 Robert Berry emails
Eugene Chittock and Seth Shepard
therefore

# EXHIBIT Q

8:37

**< Voicemail**                                    Delete All

# Blocked

**+1 (831) 334-4066**              8/8/21
Santa Cruz, CA                        00:11 

~~August 6, 2021 at 2:06 PM~~

0:00                                              −0:28

▶                                    

## Transcription

"Miss _____ this is Rob Barry a I
think you know who I a.m. I'm
general counsel if you could call me
back and I'm not asking I need you
to call me back immediately it is
currently five minutes after two my
number is 831-334-4066 if you are
represented by counsel have your
counsel call me back immediately at
this number this is urgent thank you
very much..."


Favorites


Recents


Contacts


Keypad


Voicemail

# EXHIBIT

# R

 Gmail                                    **Shauna Rossington <drshaunalr@gmail.com>**

---

# Cybercrime

---

**Robert Berry** <rberry@rlberrylaw.com>                              Mon, Aug 9, 2021 at 1:35 PM
To: drshaunalr@gmail.com, josephmcoddington@gmail.com, arossingtonuja@gmail.com, aiden.rossington@gmail.com,
sethshepard@gmail.com

Shauna, et al:

### Hacking
Hacking is defined as accessing a computer or personal data on a computer without the owner's permission.
Several companies like Target, British Airways, and T-Mobile were all hacked in the last couple of years. In
these cases, hackers accessed millions of customers' credit and debit cards, personal data, and more.
Under 18 U.S.C. Section 1030, hacking is a federal crime. Hacking as a misdemeanor could incur a prison
sentence for up to one year and face a $100,000 fine. A felony conviction can result in ten years in prison and
up to $250,000 in fines.

### Theft of Sensitive Data or Intellectual Property
The Computer Fraud and Abuse Act protects information like customer or employee information, trade
secrets, source codes, and other pieces of data stored by a business. It is considered theft of sensitive data
when someone copies information, often on a flash drive, with the intent to sell it or use it to compete.
Intellectual property, on the other hand, involves copyrighted material like movies, music, and book. It can
also include blueprints or designs for company products. Under 18 U.S.C. Section 2319, stealing
intellectual property could result in ten years in prison and up to $2,500 in fines. Taking sensitive data,
however, falls under 18 U.S.C. Section 1030.

We are in possession of documentary evidence that the named recipients of this email have been and are
currently engage in various cybercrimes, in addition to other activities punishable by both civil and criminal
penalties.

You have apparently interfered with he email communications capacity of Mountain Circle Family Services,
causing an interruption in their ability to provide services to their clients. You have caused irreparable harm,
and will be prosecuted to the full extent of the law.

I have filed a police report identify the names and addresses of each of you. I suggest you reverse all actions
taken in retaliation against the Agency immediately. Failure to do so will compound the ongoing offenses
and penalties. You will all be listed as co-conspirators in this criminal activity, and will be subject to
enforcement action.

This is a [illegible overlapping text] against the interests of the Agency immediately.


Robert L. Berry

ATTORNEY AND COUNSELOR AT LAW

BOX 4941 CHICO, CA 95927

ROB@RLBERRYLAW.COM

(831) 334 – 4066


Notice:  This communication (including any attachments) may contain privileged or confidential information
intended for a specific individual and purpose, and is protected by law.  If you are not the intended
recipient, you should delete this communication and/or shred the materials and any attachments and are hereby
notified that any disclosure, copying, or distribution of this communication, or the taking of any action
based on it, is strictly prohibited.

# EXHIBIT

# S

# ROBERT L. BERRY

ATTORNEY AND COUNSELOR AT LAW
P.O. BOX 4941, CHICO, CA 95928
ROB@RLBERRYLAW.COM

Wednesday, October 5, 2 22

Shauna Rossington
2754 Dolphin Bend
Chico, CA  05073

Re:  Document requests

Dear Ms. Rossington:

MCFS/SNC is in receipt of your letters of September 28 and October 5, 2022.

MCFS is under no obligation to release to you or the public its corporate records, including proceedings of the Board, minutes of their actions, or other documentation.

However, you may obtain access to certain information via the discovery process afforded to a claimant in civil litigation under California Civil Procedure.

Therefore, MCFS considers this matter closed, and will engage in no further correspondence on this subject.

If you are represented by counsel, please have your attorney contact me in the future.


Respectfully and sincerely yours,



Robert Berry

# EXHIBIT

# T

## Re: Hearing on Calendar to Reschedule Case Management Conference

**Patricia Savage** <psavage@slrlawfirm.com>
To: Shauna Rossington <drshaunalr@gmail.com>
Cc: Chris Young <cyoung@slrlawfirm.com>, Max Lennig <mlennig@slrlawfirm.com>, Front Office <frontoffice@slrlawfirm.com>

Confidential Settlement Agreement subject to all Evidentiary Privileges.


Shauna:


It's very complicated.


The insurance company NIAC is involved and the two lawyers who represented your former employer at the labor commissioner hearing, are the same lawyers who are involved in defending


They have removed your case to federal court and are going to ask the federal court to dismiss your case outright.


I haven't reviewed your complaint closely, but apparently you identified in some part of the complaint a federal law or question, which gives them the right to remove the case.  If mention of the superior court here in Butte County which is probably a better place for you to be.


You will probably be required to amend your complaint to keep it alive, and then potentially have it remanded back down to the state court.  Super complicated stuff and they are banking on th out.


Thanks for being willing to work with me with regards to the subpoenas. If you want to go ahead with those, then let's make the deposition location my conference room and during regular bus think it will work for the employees you have subpoenaed.


I spoke with the representative for MC yesterday, who is starting to wobble about wanting this to settle. My take and recommendation is that, if you are willing to accept $43,500 which is half o check and I will advise the board to pay you ASAP and the cross complaint will go away. The board will listen to me if I tell them to settle.  What I don't want to see happen is for that opportuni head that they want to keep all of this litigation alive.  The suggestion, if we don't settle, is that we take your deposition and discover if you have assets which we can attach if we are successf it needs to or that it should go that far.  I am a big proponent of settlement in every case because the longer this goes on the more complicated and costly it gets for everyone. But the insuranc and MC won't either, if they shut their doors.


I think you should force the insurance company to mediate a settlement, accept ⅓ of the labor award and we can forget about the cross. That way you have money now, before the money dis will have to pay you out also, assuming you can keep the complaint for wrongful termination alive.


If you'd like to drop by my office and discuss the above, let me know when.


I can meet you Saturday morning if you'd like to drop by.


Respectfully.

[Quoted text hidden]
[Quoted text hidden]

  [Quoted text hidden]




**Shauna Rossington** <drshaunalr@gmail.com>


to Patricia, cyoung@slrhlaw.com


[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

# EXHIBIT

# U

## EMPLOYMENT AGREEMENT

THIS AGREEMENT is effective as of the ⌐ day of *November* 11, by and between MOUNTAIN CIRCLE FAMILY SERVICES, INC., a California nonprofit corporation ("Corporation"). and SHAUNA ROSSINGTON, "Executive Director."

### RECITALS:

WHEREAS, Employee has served in various capacities in the foster care system and has through her experience acquired special skills, abilities and knowledge regarding foster care agencies and operations and applicable governmental regulations;

WHEREAS, Corporation and EMPLOYEE (the "parties") want EMPLOYEE to be employed as Corporation's Executive Director;

NOW THEREFORE, in consideration of the mutual promises and covenants set forth below, the parties hereby agree as follows:

1.    Employment as Executive Director. Corporation hereby agrees to employ EMPLOYEE as its Executive Director.  In such capacity, EMPLOYEE shall serve as President of the Corporation.

2.    Authority, Duties and Responsibilities. Employee shall be the general manager and executive director for Employer with full power and authority to manage and conduct all of the business of Employer, subject to the Articles of Incorporation, Bylaws, resolutions and policies of the Corporation and subject to review by the Board of Directors. Employee shall not, however, take any of the following actions on behalf of Employer without the prior approval of the Board of Directors:

A.    Execute any contract or make any commitment for the sale or donation of Employer's assets significantly outside the normal day-to-day activities of the Corporation. ;

B.    Execute any lease of corporate assets;

C.    Exercise any discretionary authority over the management of any employee welfare or pension benefit plan, or arrange the disposition of assets of any such plan.

D.    Any action required to be approved or taken by the Board of Directors under California law governing non-profit corporations;

E.    Any action required to be approved or taken by the Board of Directors under federal law in order to maintain tax exempt status

Employee's responsibilities shall include but not be limited to:

- Program development and implementation and effective operation of the agency in conformity with recognized standards.
- Oversee administration of program, including the hiring and dismissing of staff.
- Set fiscal guidelines and oversee all financial transactions/budget.
- Hold regular staff meetings to discuss plans and policies, as well as review casework management and goals.
- Develop Foster Parent Training, both pre-service and in-service.

Employment Contract 11/11                                                                 2

- Evaluate training needs for the staff and arrange for attendance in conferences, trainings and other meetings which assist in professional growth and development.
- Attend all Board Meetings making financial and program reports to the Board of Directors.
- Contribute to the development and implementation of specialized program services, i.e. Life skills & Therapy in the Wilderness.
- Promote positive public relations.
- Ensure the sustainability of the corporation
- Manage the expansion of the corporation's activities

The employment relationship between the parties shall be governed by the general employment policies and practices of Employer, as they may be amended from time to time, including but not limited to those relating to protecting confidential information and assignment of inventions, and those pertaining to legal compliance and business ethics; provided, however, that when the terms of this Agreement differ from or conflict with Employer's general employment policies or practices, this Agreement shall control. EMPLOYEE shall be provided with a private office, administrative/secretarial support, and such other facilities and services as are suitable to the character of her position and necessary for the performance of her duties during the term of this Agreement.

3.    Term. This Agreement shall begin on May 1, 2011. It shall continue until the first anniversary date and shall automatically renew thereafter, on a year-to-year basis, unless (a) terminated by delivery of written notice by either party at least ninety (90) days prior to the first anniversary date or any subsequent anniversary date; or (b) terminated pursuant to Paragraph 10 below.

4.    Base Salary, Performance Review, Tuition.

A.    Base Salary. For all services rendered, Corporation shall pay EMPLOYEE an initial base salary at the annual rate of EIGHTY Thousand Dollars ($80,000.00) per year, payable in accordance with Corporation's normal payroll procedure. Employer shall have the right to deduct or withhold from the compensation due to EMPLOYEE any and all sums required by law to be deducted or withheld, including without limitation, federal income and Social Security taxes and all state or local taxes now applicable or that may be enacted and become applicable in the future.

EMPLOYEE's salary shall be adjusted annually on May 1st not less than 2% nor more than 4% based upon the "California CPI, All Urban Consumers," utilizing the current year for that index ending in April.

Regardless of the above provisions, EMPLOYEE's salary, bonuses, and benefits shall not exceed what is deemed just and reasonable under Govt. Code 12586(g).

        B.     Performance Review.  EMPLOYEE's performance shall be reviewed every other year by the Board of Directors based upon management objectives that are provided in writing to EMPLOYEE at the beginning of the period under review.  Based upon such review, and taking into account the financial condition of Corporation as well as any other factors it deems necessary and appropriate, the Board of Directors in its sole discretion may increase (but not decrease) EMPLOYEE's base salary effective as of January 1, 2012 and as of January 1st of any subsequent years this Agreement remains in effect.  In considering any appropriate increase in salary, Employer shall consider factors including but not limited to: (1) EMPLOYEE'S performance; (2) Inflation factors; (3) grant funding received by Employer; and (4) overall funding available.

        C.     Tuition.  Employee has applied for and has been accepted into the Doctor of Business Administration ("Course of Study") at Capella University ("Program") beginning on October, 2010 and ending on June, 2016.  Employer shall pay Employee's loans directly related to tuition  as they become due and payable subject to funds being available as long as the Employee is in the Employ of the Employer, subject to repayment as set forth below.

        1. Repayment Event.  If (a) Employment of the Employee terminates prior to the completion of the Program due to resignation or dismissal for cause or (b) Employee does not satisfactorily complete any portion of the Course of Study or (c) Employee withdraws from or is expelled from the Program, Employer's obligation to make any further tuition payments shall immediately cease, and Employee shall, at Employer's option, repay to the Employer all Tuition Payments paid by the Employer up to that point in time.

        2. Set Off.  Employee authorizes and directs Employer to set-off any and all amounts owing to Employer under this Agreement against any amount owing by the Employer to the Employee, including but not limited to salary, wages, bonuses, commissions, vacation pay, termination pay and severance pay, but not including any expense reports.

        3. Indemnity.  The Employee hereby indemnifies and saves harmless the Employer from and against any and all suits, claims, actions, damages and other losses which the Employer suffers or incurs as a result of any governmental taxing authority assessing the reimbursement of the Tuition Payments hereunder as a benefit to the Employee.

5.     Benefits:

Employment Contract 11/11                                                                                                  4

      A.    Regular Staff Fringe Benefits. EMPLOYEE shall participate in and be entitled to all the benefits normally provided to Corporation's employees, which presently includes: group medical, hospitalization and dental insurance; group term life insurance (including accidental death and dismemberment coverage); annual vacation and sick leave; and any other regular benefits that Corporation may provide for its employees. All such benefits shall be provided on the same terms and conditions as generally apply to all other Corporation employees under these plans.

      B.    Automobile Allowance. During the employment term, Employer shall furnish to Employee a late model AWD automobile, , which automobile shall be owned by Employer. The terms and conditions of Employee's use of that automobile and the extent to which Employer shall defray the costs of its operation shall be the same as those pertaining to automobiles presently being furnished other executive and managerial personnel of Employer.

      C.    Sabattical. EMPLOYEE shall be entitled to take a six week sabbatical with pay upon reasonable notice to Employer.

    6.    Outside Employment and Professional Activities. EMPLOYEE shall devote substantially all of her time, attention and energies on a full-time basis to the performance of her duties as Executive Director of Corporation. EMPLOYEE shall not engage in any outside employment for money without the prior written consent of Corporation (which consent may be withheld by Corporation in its discretion for any reason if such outside employment may interfere with EMPLOYEE's responsibilities under this Agreement). However, EMPLOYEE is encouraged to continue her participation in outside professional associations relevant to her position (and Corporation shall pay for membership dues, professional publications, meeting registration fees and reasonable travel expenses for these activities in addition to the normal staff fringe benefits provided under Paragraph 5 above).

    Employee represents that she has no other outstanding commitments inconsistent with any of the terms of this Agreement or the services to be rendered under it. Employee may engage in reasonable amounts of time for outside charitable, educational, or other professional activities provided that these activities do not materially interfere with Employee's performance of her duties as required by this Agreement.

    7.    Business Expenses. In order to enable EMPLOYEE to perform his or her duties as Executive Director of Corporation effectively and efficiently, Corporation shall reimburse EMPLOYEE for all reasonable business expenses incurred by EMPLOYEE that are directly related to his or her Corporation responsibilities (including travel, lodging, meals and other business expenses). All such

expenses shall be reimbursed promptly upon submission of appropriate receipts and documentation in accordance with Corporation's regular policy for reimbursing business expenses

8.    Insurance and Indemnification.  EMPLOYEE shall be covered under the Directors and Officers/ Professional Liability Insurance policy purchased by Corporation to the same extent as Corporation's other directors, officers, employees and volunteers.  To the extent not covered by said policy or any other insurance, Corporation shall indemnify, hold harmless and defend EMPLOYEE against any claims arising out of his position with Corporation as provided in Corporation's Articles of Incorporation and Bylaws (subject to the laws of the State of California).

9.    Personnel.  EMPLOYEE shall be administratively responsible for hiring, promoting and discharging all Corporation personnel.  EMPLOYEE also shall be responsible for the establishment of all personnel policies in consultation with the Board of Directors.

10.    Termination.

A.    Termination of Employment; Termination Date.  The date on which Employee's employment by Employer is deemed to have ceased, as defined in the provisions below, is referred to as the "Termination Date."

B.    Termination Without Cause; Termination Payment.  EMPLOYEE's employment with Employer shall be "at-will."  No cause shall be required to terminate EMPLOYEE.  However, Employer shall give EMPLOYEE 90 days' prior written notice of termination.  If EMPLOYEE's employment is terminated under this Paragraph, Employee shall receive payment for all accrued salary, vacation time, and benefits under benefit plans of Employer through the Termination Date, which for purposes of this Paragraph shall be the date specified in the notice from Employer.  Provided that Employee executes a general release in favor of Employer in a form acceptable to Employer prior to the Termination Date, Employer shall also pay to Employee as severance pay an amount equal to 12 months of her then base salary, less standard withholdings for tax and Social Security, Medicare, and state disability tax purposes, payable over a 12-month term in monthly prorata payments commencing after the effective date of the release.  To the extent Employer's group health policy allows, EMPLOYEE's health insurance shall be paid during the time severance pay is paid to EMPLOYEE.  Except as otherwise provided in this Paragraph, all benefits provided by Employer to EMPLOYEE under this Agreement or otherwise shall cease as of the Termination Date.

C.    Termination of Employment by Employee. In the event of substantial diminution in Employee's duties, authority, pay, or responsibilities without performance or financial justification, Employee may terminate his or her employment; provided, however, that Employee shall give Employer 30 days' written notice before any such termination, specifying the nature of the circumstance allegedly justifying such termination by Employee, and Employer shall have until the end of such 30-day period to cure such circumstances in all material respects. The Termination Date under this Paragraph 10(C) shall be the day after the 30-day cure period expires if Employer fails to cure those circumstances in all material respects by the expiration of that cure period. Employee shall be entitled to the severance payments and benefits as set forth in Paragraph 10(B) above if terminated under this Paragraph 10(C).

D.    Termination on Resignation.  Employee may voluntarily terminate her employment with Employer at any time on 90 days' prior written notice.  If Employee's employment is terminated under this Paragraph 10(F), Employee shall receive payment for all accrued salary, vacation time, and benefits under Employer's benefit plans through the Termination Date, which for purposes of this Section 10(D) shall be the date on which the 90 days referred to above expires.  Employer shall have no further obligation to pay compensation of any kind (including without limitation any bonus or portion of a bonus that may otherwise have become due and payable to Employee with respect to the year in which the Termination Date occurs, which for these purposes shall be the date specified in Employer's notice) or severance payment of any kind, or to make any payment in lieu of notice. All benefits provided by Employer to Employee under this Agreement or otherwise shall cease on the Termination Date.

E.    Termination on Retirement. This agreement shall be terminated by Employee's voluntary retirement, which retirement shall be effective on the last day of any fiscal year, provided that day occurs after Employee's 60th birthday, and provided six  months' prior written notice of the retirement shall have been given by Employee to Employer.

F.    Termination Because of Disability.  Employer may terminate Employee's employment if Employee suffers a disability that renders Employee unable, as determined in good faith by the Board, to perform the essential functions of the position, even with reasonable accommodation, for four months in any 12-month period. If Employee's employment is terminated under this  Paragraph 10(F), Employee shall receive payment for all accrued salary, vacation time, and benefits under Employer's benefit plans through the Termination Date, which for purposes of this Section 10(F) shall be a date specified by the Board.  Employer shall also pay to Employee (a) as severance pay, an amount equal to six months of her then base salary, less standard withholdings for tax and Social Security purposes, payable over a six-month term in monthly prorata payments commencing on the Termination

Date. After the Termination Date, Employer shall not pay to Employee any other compensation or payment of any kind, or severance, or payment in lieu of notice. All benefits provided under Section 10(F) shall be extended, at Employee's election and cost, to the extent permitted by Employer's insurance policies and benefit plans. for six months after Employee's Termination Date, except as required by law (e.g., COBRA health insurance continuation election). Except as set forth in the preceding sentence, all benefits provided by Employer to Employee under this Agreement or otherwise shall cease on the Termination Date.

G.      Termination on Death. If Employee dies during the initial term or during any renewal term of this Agreement, this Agreement shall be terminated on the last day of the calendar month of her death, subject to the provisions of this agreement concerning compensation in event of death. Employer shall pay to Employee's estate the accrued portion of Employee's salary and vacation time and benefits that Employee is then entitled to receive under Employer's benefit plans through the Termination Date (which for purposes of this Paragraph 10(G) shall be the date of Employee's death), less standard withholdings for tax and Social Security purposes. Employer shall have no obligation to make any other payment, including severance or other compensation, of any kind (including, without limitation, any bonus or portion of a bonus that may otherwise have become due and payable to Employee with respect to the year in which the Termination Date occurs). All other benefits provided by Employer to Employee under this Agreement or otherwise shall cease on the Termination Date.

H.      Agreement Survives Combination or Dissolution. This agreement shall not be terminated by Employer's voluntary or involuntary dissolution or by any merger in which Employer is not the surviving or resulting corporation, or on any transfer of all or substantially all of Employer's assets. In the event of any such merger or transfer of assets, the provisions of this Agreement shall be binding on and inure to the benefit of the surviving business entity or the business entity to which such assets shall be transferred.

I.      Rights and Obligations After Notice of Termination. If Employee gives notice of termination of this Agreement, or if it becomes known that this Agreement will otherwise terminate in accordance with its provisions, Employer may, in its sole discretion and subject to its other obligations under this Agreement. relieve Employee of her duties under this Agreement and assign Employee other reasonable duties and responsibilities to be performed until the termination becomes effective.

L.      Duty of Cooperation After Termination. Employee agrees to cooperate with Employer. during the term of this Agreement, and thereafter (including following the Employee's

termination of employment for any reason) by being reasonably available to testify at the request of the Employer or any subsidiary or affiliate in any action, suit, or proceeding, whether civil, criminal, administrative, or investigative, and to assist Employer, or any subsidiary or affiliate, in any such action, suit, or proceeding, by providing information and meeting and consulting with the Board of Directors or their representatives or counsel, or representatives of or counsel to Employer, or any subsidiary or affiliate, as reasonably requested. Employer agrees to reimburse Employee for all expenses actually incurred in connection with his provision of testimony or assistance (including attorney fees incurred in connection therewith) on submission of appropriate documentation to Employer.

      11.    Assignment and Successors. This Agreement shall be binding upon the parties hereto, their heirs, executors, administrators, successors and permitted assigns. EMPLOYEE acknowledges that this is a personal services agreement and that he may not assign any of his duties hereunder without the consent of Corporation (which may be withheld by Corporation in its discretion for any reason). In the event of a merger, consolidation or reorganization involving Corporation, this Agreement shall continue in force and become an obligation of Corporation's successor(s).

      12.    Intellectual Property and Confidentiality. EMPLOYEE recognizes and agrees that all copyrights, trademarks and other intellectual property rights to created works arising in any way from EMPLOYEE's employment by Corporation are the sole and exclusive property of Corporation to the extent allowed under 35 U.S.C. §§ 102 & 200 - 212, 37 C.F.R. Part 501, and 38 C.F.R. §§ 1.650 - 1.663, and EMPLOYEE agrees not to assert any such rights against Corporation or any third parties. Upon termination of this Agreement by either party for any reason, EMPLOYEE will relinquish to Corporation all documents, books, manuals, lists, records, publications or other writings and data, keys, credit cards, equipment, or other articles that came into EMPLOYEE's possession in connection with EMPLOYEE's employment by Corporation, and to maintain no copies or duplicates without the written approval of Corporation, so long as such information is not otherwise made public by a third party and except as otherwise required by law. EMPLOYEE will maintain in confidence during and subsequent to his employment any information about Corporation or its members which is marked as confidential information or which might reasonably be expected by EMPLOYEE to be regarded by Corporation or its members as confidential.

      13.    Additional Covenant Not to Hire Corporation Employees. In the event this Agreement is terminated for any reason, EMPLOYEE agrees not to solicit or hire for a period of one (1) year after the date of termination, any person who was an employee of Corporation on the date of EMPLOYEE's

termination or on any date within the period three months prior to EMPLOYEE's termination, without Corporation's written consent, which may be withheld by Corporation in its discretion for any reason.

14.   Dispute Resolution and Binding Arbitration.  Employee and Employer agree that any dispute that arises out of or relates to Employee's employment with Employer, including but not limited to any dispute against any present or former officer, director, employee, agent, attorney, or insurer of the Employer, the dispute shall be submitted to binding arbitration pursuant to the Federal Arbitration Act using the procedural rules for the resolution of employment disputes of the American Arbitration Association then in effect. Employee and Employer agree that any claim shall be brought in the individual capacity of the Employee or Employer, and not as a representative of any class. Nothing in this section shall prevent Employee from filing or maintaining a charge with the United States Equal Employment Opportunity Commission or the National Labor Relations Board. The arbitration shall take place in Plumas County, California, and both Employee and Employer agree to submit to the jurisdiction of the arbitrator selected in accordance with American Arbitration Association rules and procedures. Except as set forth in Section 10(C), Employee and Employer agree that this arbitration procedure will be the exclusive means of redress for any disputes relating to or arising from Employee's employment with Employer, including disputes over rights provided by federal, state, or local statutes, regulations, ordinances, and common law, including all laws that prohibit discrimination based on any protected classification. The parties each expressly waive the right to a jury trial, and agree that the arbitrator's award shall be final and binding on the parties, provided that any award shall be reviewable by a court of law for to the fullest extent allowed by law, including for any error of law by the arbitrator. The arbitrator shall have discretion to award monetary and other damages, or to award no damages, and to fashion any other relief the arbitrator deems appropriate, but only to the extent consistent with law. The parties expressly agree that the arbitrator shall have discretion to award the prevailing party reasonable costs and attorney fees incurred in bringing or defending an action under this Section Paragraph, to the fullest extent allowed by law at the time of the arbitration.

15.   Notices.  Any notices to be given hereunder by either party to the other shall be in writing and may be delivered either personally, by mail (registered or certified postage prepaid, with return receipt requested) by any other appropriate means by which there is proof of delivery. A Notice shall be considered delivered on the date received by the party to whom it is addressed.

16.   Waiver.  The waiver of either party of any term or condition of this Agreement shall not constitute a waiver of any other term or condition of this Agreement.

17.     Governing Law.  This Agreement shall be governed by the laws of the State of California. All causes of action arising from or related to this Agreement, including any claims for tortious breaches of duties emanating from the Agreement or the employment relationship it creates, shall be governed by the laws of the State of California.  All questions concerning the construction, validity, and interpretation of this Agreement will be governed by the internal law, and not the law of conflicts, of the State of California.

18.     Partial Invalidity.  If any provision in this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions nevertheless shall continue in full force without being impaired or invalidated in any manner.

19.     Successors and Assigns. This Agreement is intended to bind and inure to the benefit of and be enforceable by Employee and Employer, and their respective successors and assigns, except that Employee may not assign any of her rights or duties under this Agreement without Employer's prior written consent.

20.     No Third Party Rights Conferred.  Except for Employee's estate under Paragraph 10 and affiliates of Employer under Paragraph 10, nothing in this Agreement, express or implied, is intended to confer on any third person any rights or remedies under or because of this Agreement. There are no third party beneficiaries of this Agreement.

21.     Entire Agreement; Modifications.  This Agreement supersedes any and all other agreements, either oral or in writing, between the parties hereto with respect to the employment of EMPLOYEE by Corporation.  Each party to this Agreement acknowledges that no representations, inducements, promises or agreements orally or otherwise, have been made by the other party, or anyone acting on behalf of the other party, except as explicitly provided in this Agreement, and that any other alleged agreement, statement or promise shall be invalid and without effect.  Any modification of this Agreement will be effective only if it is in writing and is signed by the party to be charged.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of _____, 2011.

SHAUNA ROSSINGTON

Employment Contract 11/11                                                      11

MOUNTAIN CIRCLE FAMILY SERVICES, INC

By: _____
SUE WEBER
Chair of the Board

# EXHIBIT

# V

Facebook Post and Link
**https://www.facebook.com/standupchico/videos/674583634079765/**

**The case of the runaway councilmember and the guy who has repeatedly sued the city of Chico.**

We were surprised to see Vice Mayor Kasey Reynolds having a beer with Rob Berry, who has repeatedly sued the city to prevent projects like Simplicity Village, a tiny home community that was slated for the outskirts of town and would have housed 50+ elderly and disabled homeless people. **Rob has also repeatedly harassed local women**, including reporters like Karen Laslo. **http://chicosol.org/shoving-blocking-news-reporters/** and former ER reporter Natalie Hanson. In fact, Rob's nefarious schemes and awful behavior have been so appalling that most councilmembers, even those he has supported, will no longer interact directly with him to avoid the appearance of impropriety.

We have long known that many of Kasey's initiatives were drafted by Rob – such as the ridiculous "Quality of Life" ordinance she brought forward, an ordinance that failed to define "quality of life" and created financial incentives for people to sue the city. That proposal was so egregious that even the other conservative councilmembers were aghast that such a poorly written and ill-defined ordinance was being suggested, as was the Chico ER. **https://www.chicoer.com/.../lets-keep-our-quality-of.../**

With all this in mind, we approached the duo, who had been joined by a third man who was not a public figure, and politely offered him the opportunity to step back from the table for a moment so we could take a picture of Rob and Kasey together. And with that, Kasey ran away. You may imagine we are exaggerating, but no, Ms. Reynolds, apparently panicked at being in a picture with a man who has done so much damage to the city, jumped up, and quite literally ran away. Meanwhile, Rob, typical of his bullying behavior towards women, tried to knock the phone out of a woman's hand. [See video posted of Berry knocking phone insert added]

A moment later, Councilmember Reynolds ran back inside, scooped up the purse she had forgotten in her panic to avoid being pictured with Rob, and literally ran out the door of the establishment. Presumably, someone else picked up the tab.

Ms. Reynolds' tenure on the council has been marked by civil rights violations, wacky/dangerous ideas, and even a letter to a federal judge saying she hadn't read the lawsuit

settlement before signing it. The last thing we need is an elected official who takes her marching orders from a litigious petifogger who harasses and assaults women.

Chico deserves better. A councilmember who doesn't collaborate with people that make a living suing the city, and who will read legal documents before signing them is the least we should be able to expect. Vote for Morgan Kennedy for District 2

Learn more and see the post that Kasey wrote admitting she hadn't read the settlement before signing it here: **https://www.standupforchico.com/.../9zx9gkxnpxbzkdfzfef96...**

**See less**

# EXHIBIT W

 Gmail

**Alex Heth-Rossington <arossingtonuja@gmail.com>**

---

## Class action lawsuit
1 message

**Shauna Rossington <drshaunalr@gmail.com>**  Fri, Aug 6, 2021 at 6:19 AM
To: bretcook@frontiemet.net, arossingtonuja@gmail.com, "josephmcoddington@gmail.com"
<josephmcoddington@gmail.com>, "sethpshepard@gmail.com" <sethpshepard@gmail.com>

GM :),

I thought I would start a group email.

I was willing to walk away, but the pure malice firing of Alex, Val, Kelly, and Joe has me angered as well as you Bret. They, the board and Kate, just cut the heart out of the agency, and so mother bear is, well let's say game on.

If one thing that all the past has taught me, employees have way too many rights in CA and if they think they know more than me...again game on.

The treatment of firing Alex and Val in the office is beyond words, asking Alex to leave because she is crying and making people feel uncomfortable and forcing her to come back after hours to finish detangling her whole life from the agency and then to hear Kate say, to another employee, she is still there? For Alex to come back and find the office ransacked and to be watched as if she has the ability to sabotage the agency on her way out the door.

I get firing Alex and Aiden, I mean I don't. No one has given more than Alex and Aiden? Mr. I don't have a clue what is going on, but I sit here and scan papers and work on computers. But Val, Joe and Kelly? I am thinking Kate must have told the staff that somehow there was something unethical that we did on the Bear Growl fundraiser to justify this to everyone, because that is who got fired.

Anyhow, this is what I know, we throw a class action labor board lawsuit at them with charges of anything, go to mediation, and walk away with something for all our hard work.

This is my game plan

Wait 30 days because I know that they will not pay me the 6 weeks of sabbatical pay that is written into my contract with the board. I then file a complaint with the labor board, of which we won't settle and then we file the class action lawsuit. Hmmmm, wonder where I learned to do this? And we throw the kitchen sink at them.

This I know.. Justin went out and hired an attorney without a board resolution, There was definitely back door conversations, illegal, he developed an agenda that was sent to the board 30 minutes before the board meeting with no authority, there was no board president. He had zero power or authority to develop the agenda. The agenda was not adopted or approved. Additionally, I was never brought in for a conversation. I found out something was up by being cut off from my email. I learn that they were going to put me on administrative leave only to hire an HR attorney to void my contract with the board to take away my vacation time on the books and then they would fire me. So my resignation was a forced resignation. And then through complete spite and malice they fire 4 other people without a conversation. Alex or Joe have never had a write up, nor any discussion about there being issues. Kelly was leaving the next day this for sure shows malice. Val has had a few write ups but it was 2 years ago.

Bret, did they vote to remove you as the attorney on retainer for the organization? Or did they just tell you to leave?

We all file for a year of loss wages and we will probably settle at half of this.

I spoke with Seth yesterday and he says he is pretty sure Gene would do pro bono on this.

I am the reason the corporation has 700,000 in the bank and they don't get to steal that from me and they don't get to steal the marathon. Maybe we can also, when negotiating that the corporation hand over the race to us,we all  know that if they try and pull this off it will be an epic failure and 10 years of my hard work, alex and Val, is for sure gone. The rest of the agency, is a whatever... Families will always be ok, they can just roll to other agencies.

They do not get to think they are smarter and stronger than us. Licensing isn't a battle that I can really win, but this... this we can win. And if nothing else, create havoc. Welcome to the big boys club Kate....Sorry, but as I said, take me out, I

NAME, ADDRESS AND TELEPHONE NUMBER OF ATTORNEY(S)
Shauna Rossington, 2754 Dolphin Bend, Chico, CA 95973
530-588-5511, In Pro Per
Alex Rossington, E 6th Ave., Chico, CA 95926
530-375-0441, In Pro Per
Aiden Rossington, 2754 Dolphin Bend, Chico, CA 95973
530-616-0623, In Pro Per

Joseph Coddington,
604 E Elm St, Chico, 14662
928-712-2682 In Pro Per
Valerie Peters, 464 E 6th St,
Chico, CA 95926, 530-219-5993, In Pro Per

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Shauna Rossington, Alex Rossington, Aiden Rossington, Joseph Coddington, Valerie Peters<br><br>PLAINTIFF(S),<br><br>v.<br>Mountain Circle Family SErvices, Inc., dba Sierra Nevada Connections<br><br>DEFENDANT(S). | **CASE NUMBER**<br><br>2:23-CV-00423-KJM-DMC<br><br><br>**PROOF OF SERVICE - ACKNOWLEDGMENT OF SERVICE** |

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Butte                                                          , State of California, and not a party to the above-entitled cause. On March 28                          , 2023             , I served a true copy of MOTION AND MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHO by personally delivering it to the person (s) indicated below in the manner as provided in FRCivP 5(b); by depositing it in the United States Mail in a sealed envelope with the postage thereon fully prepaid to the following: (list names and addresses for person(s) served. Attach additional pages if necessary.) See Attached Services list.

Place of Mailing: 1692 Mangrove Ave., Chico, CA 95926

Executed on March 28                     , 20 23          at Chico                                          , California

Please check one of these boxes if service is made by mail:

☐ I hereby certify that I am a member of the Bar of the United States District Court, Central District of California.

☐ I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

☒ I hereby certify under the penalty of perjury that the foregoing is true and correct.

_____
*Signature of Person Making Service*

## ACKNOWLEDGEMENT OF SERVICE

I, _____, received a true copy of the within document on _____.

_____          _____
*Signature*                                                    *Party Served*

*Counsel for Defendants Mountain Circle Family Services, Inc., d/b/a Sierra Nevada Connections, Justin Miller, Pamela Crespin, Katherine Van Dolsen, Angie Carpenter, Shannon Doung, Bill Powers, and Kacey Reynolds, with respect to the claims of Shauna Rossington UI*

Kathleen Carter
Heather E. Stern
650 Town Center Drive, Suite 700
MESSNER REEVES LLP
Coast Mesa, California 92626
Tel: (94) 612-9128
Fascimile: (949) 438-2304
kcarter@messner.com
hstern@messner.com
VIA U.S. MAIL

*Counsel for Defendant Mountain Circle Family Services, Inc., d/b/a Sierra Nevada Connections, Justin Miller, Pamela Crespin, Katherine Van Dolsen, Angie Carpenter, Shannon , and Robin Miller, with , Bill Powers, Kacey Reynolds, with respect to the claims of Alex Rossington, Aiden Rossington, Joseph Coddington, and Valerie Peters*

Patrick L. Deedon
Sonja M. Dahl
MAIRE & DEEDON
2851 Park Marina Drive, Suite 300
Redding, CA 96001-2813
Tel: (530) 246-6050
Facsimile (530) 246-6060
pdeedon@marie-law.com
sdahl@marie-law.com
VIA U.S. MAIL

*Counsel for Defendant Mountain Circle Family Services, Inc., d/b/a Sierra Nevada Connections, Robert Berry with respect to the claims of Shauna Rossington, Alex Rossington, Aiden Rossington, Joseph Coddington, and Valerie Peters*

Daniel V. Kohls
Hanson, Kohls, Sommer & Jacob, LLP
1520 Eureka Road, Suite 100
Roseville, CA 95661
Tel: (916) 781-2550
Email: dkohls@hasenkohls.com
VIA U.S. MAIL

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, Executed on March 28, 2023, at Chico, California.

---

CV-40            PROOF OF SERVICE – ACKNOWLEDGMENT OF SERVICE